**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**Harlow N. Higinbotham**,<br><br>Debtor. | Chapter 11<br><br>Bankruptcy No. 18-31185<br><br>Honorable LaShonda A. Hunt |

## NOTICE OF MOTION

**Please take notice** that, on **November 15, 2018, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable LaShonda A. Hunt, United States Bankruptcy Judge for the Northern District of Illinois, in Courtroom 719 of the United States Courthouse, at 219 South Dearborn Street, Chicago, Illinois, to present the **Motion of Wipaporn Teekhungam and the Parties' Minor Children for Relief from Stay and Motion to Excuse the Receiver's Compliance with § 543**, a copy of which is included herewith and served upon you, at which time and place you may appear.

| | |
|---|---|
| Dated: November 9, 2018 | **Wipaporn Teekhungam**, **A.H**, a minor, **A.H.**, a minor, and **A.H.**, a minor<br><br>By: /s/ Jeffrey K. Paulsen<br>One of Their Attorneys |

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:   (847) 239-7248
Fax:   (847) 574-8233
Email: wfactor@wfactorlaw.com
        dkebner@deborahebnerlaw.com
        jpaulsen@wfactorlaw.com

{00127986}

## CERTIFICATE OF SERVICE

I, Jeffrey K. Paulsen, an attorney, hereby certify that on November 9, 2018, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below and by U.S. mail on all other persons identified on the Service List.

/s/ Jeffrey K. Paulsen

## SERVICE LIST

**Registrants**
(Service via ECF)

| | |
|---|---|
| Deborah K. Ebner | dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com, lizd@deborahebnerlaw.com |
| William J. Factor | wfactor@wfactorlaw.com, wfactorlaw@gmail.com, bharlow@wfactorlaw.com, wfactor@ecf.inforuptcy.com, wfactormyecfmail@gmail.com, factorwr43923@notify.bestcase.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Jeffrey K. Paulsen | jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com, jpaulsen@ecf.inforuptcy.com |
| Gregory K. Stern | greg@gregstern.com, steve_horvath@ilnb.uscourts.gov |

**Non-Registrants**
(Service via FedEx Overnight)

Harlow N. Higinbotham
RD No. 2
2002 East Cass St.
Joliet, IL 60432

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham**, | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

**MOTION OF WIPAPORN TEEKHUNGAM AND THE PARTIES'
MINOR CHILDREN FOR RELIEF FROM STAY AND MOTION
TO EXCUSE THE RECEIVER'S COMPLIANCE WITH § 543**

When a debtor files bankruptcy to evade child support obligations, the automatic stay should be terminated to allow the state court to enforce the obligations, and a court-appointed receiver should be excused from the Bankruptcy Code's restrictions on custodians. Here, Harlow N. Higinbotham (the "Debtor") filed this bankruptcy within hours of the state court directing a receiver to pay $1,979,972.09 in retroactive child support out of the Debtor's assets. The stay should be terminated to allow the state court proceeding to continue, and the receiver should be excused from turning over property to the Debtor and from restrictions on the use of that property.

### 1. BACKGROUND.

The Debtor filed this case on November 5, 2018, within hours of a judge in the Domestic Relations Division of the Circuit Court of Cook County directing a duly appointed state court receiver to turn over and pay $1,979,972.09 in retroactive child support out of the Debtor's assets. By filing this case, the Debtor became a debtor in possession and, as such, becomes a fiduciary for the benefit of his creditors. The Debtor, however, has gone to great lengths to avoid paying what he owes to Wipaporn Teekhungam and the three minor children that the Debtor and Teekhungam had together. Given this history, the Debtor is not fit to perform his

{00127986}

statutorily required fiduciary function. At a minimum, the Debtor cannot be permitted to use § 362 and § 543 as a shield to prevent payment of child support to his minor children.

## 1.1. The Debtor and Teekhungam decide to have a family.

The Debtor and Teekhungam began a relationship in Bangkok, Thailand in 2001, when the Debtor was 53 and Teekhungam, 23. The Debtor was a Harvard graduate and received his masters from the University of Chicago, and Teekhungam was of a working-class Thai heritage. The two then had an approximately 10-year relationship, meeting an average of three to four times a year when the Debtor would visit Thailand.

At some point, the Debtor entered into a Thai religious marriage ceremony with Teekhungam, although because the Debtor did not register the marriage it was not considered valid in Thailand. The parties also decided to have children together and underwent IVF treatment using the Debtor's sperm and Teekhungam's eggs. On November 5, 2008, Teekhungam gave birth to the parties' triplet sons. To acknowledge his parentage, the Debtor sent his passport to Thailand, and he insisted that the three boys be given his family names and that they receive United States citizenship.

Via e-mails, the Debtor had promised Teekhungam many things to induce her to have children with him, including that he would buy her a house, send the children to the best private schools, and provide all three with trust funds for their college educations. He promised to support them generously, and he did until he stopped. The Debtor sent Teekhungam funds to purchase a house, a commercial building, and some vacant land. Additionally, he also gave her the use of his credit card.

## 1.2. The Debtor stops supporting his children and engages in a nearly decade-long legal battle to avoid his obligations.

Sometime in 2009, the Debtor appeared to have a change of heart. He stopped supporting his children, forcing Teekhungam to file a lawsuit against him in Thailand for child support. On December 21, 2010, the Thai court found the Debtor to be the father of the children, as a DNA test confirmed his parentage, and ordered the Debtor to pay a monthly sum for the support of his children, the equivalent of $500 per month for each of the then-two-year-old triplets. A translated version of the Thai court's order is attached as Exhibit A. The Debtor appealed the Thai court decision all the way to the Supreme Court of Thailand, which affirmed the decision of the lower courts.

The Debtor did not comply with the Thai order and refused to pay any child support, forcing Teekhungam to petition to register her judgment with the Circuit Court in Cook County, where the Debtor was a resident, for enforcement purposes (among other requests). In August 2012, the Debtor moved to dismiss the petition, arguing the Thai judgment was not entitled to comity. The state court rejected that argument, and the Thai judgment was duly registered on March 18, 2013. The Debtor appealed that order but, on December 2, 2016, the state appellate court affirmed the lower court's decision.

Despite the registration of the judgment, the Debtor still refused to honor his obligations. He would often pay late, he at least once "forgot," and once the check was even made out to "Aladdin." This behavior forced Teekhungam to file a petition for rule to show cause on August 1, 2016.

Teekhungam also continuously sought to modify the child support amount in Illinois, as the Thai award was insufficient for support of the three minor children. Shortly after that issue was ripe in Illinois, the Debtor filed suit in England against Teekhungam (where she now resides having married a British citizen), claiming she

had violated an agreement between the parties to keep their relationship private.[1] Despite rulings in both Illinois and Thailand that he was the father of the children, the Debtor continued to deny parentage. The English court ruled against the Debtor, who then appealed. In a lengthy and detailed decision, English appellate court ruled against the Debtor and denied his appeal. The Debtor attempted to appeal that decision, too, but the appeal was denied on or about November 5, 2018.[2]

Meanwhile, the state court case in Chicago proceeded. On its own motion, the state court appointed Michael I. Bender as Guardian ad Litem (the "GAL"). The GAL traveled to England to interview the children and Teekhungam, to observe their living conditions, and to determine the needs of the children. Upon receiving the GAL report, the court learned of the difficult condition of the children. Later, the Debtor's attorney sought to exclude the GAL from a hearing because the GAL would be a witness, so the court appointed Howard Rosenfeld as attorney for the children.

In June 2018, the state court held a trial on modifying the child support amount. **When asked if there was a limit to the amount of funds that he would spend litigating this case in order to preclude having to support his**

---

[1] In the frivolous privacy action, the Debtor alleged that Teekhungam invaded his privacy by creating a Facebook page containing pictures of the Debtor and the children and some of his biographical information, which she made as a "digital diary." The Facebook page was seen by only four people before it was taken down (three of which were either the Debtor or his attorneys). If the Debtor was successful in prosecuting his claim he stood to win only £12,500, but, on information and belief, he spent more than $200,000 pursuing the suit in an effort to deprive Teekhungam and the children of any financial security.

[2] The Debtor also funded other litigation against Teekhungam. The Debtor's wife, Susan Higinbotham sued Teekhungam and the Debtor under some "dissipation theory" in Thailand, claiming that Susan and the Debtor needed the money. The Debtor paid Susan's legal fees as well as his own. Susan also filed petition to intervene in Illinois, which she later withdrew, but she still battled discovery and testimony nonetheless.

**sons, the Debtor answered in the negative. In the last day of testimony, he indicated that he would continue to litigate this issue until "he receives justice," which the court took to mean his not being obligated to support his sons**.

On July 20, 2018, upon Teekhungam's petition, the trial court ordered the Debtor to place $1,750,000 in a trust on behalf of the minor children for their support and general welfare, including payment of the children's and Teekhungam's legal fees. *See* Order (attached as Ex. B). The Court notified the Debtor that failure to comply with its order within five days could result in her appointing a receiver to ensure the order was followed.

The Debtor failed to tender the required funds by July 25, 2018, so the Court appointed Neal H. Levin of Freeborn & Peters as receiver. *See* Am. Order Appointing Receiver (attached as Ex. C). The Debtor filed three separate interlocutory appeals challenging the creation of the children's trust and appointment of the receiver, all of which were consolidated and are currently pending.

The trial court also found that, due to the Debtor's advanced age, his obsessive tendency to deny his parentage of the triplets, and his refusal to pay support until compelled, should the court fail to establish a 503(g) trust not only would the Debtor make no provisions for these children in the event of his demise (thereby engendering further litigation in the probate court) but he would take active steps to ensure that the triplets were omitted as his descendants under the original terms of those trusts.

At trial, Teekhungam was credible, but not sophisticated or knowledgeable and so she deferred to her husband, which led the court to an understanding about why, as a very young woman, she would fall victim to a much older wealthy man like the Debtor. The Debtor was not credible. For instance, notwithstanding the

facts proven and affirmed in the Thai courts he incessantly claimed that the triplets were not his children. In addition, he claimed on his Financial Affidavit dated October 26, 2017, that Teekhungam had fraudulently referred to herself as his "wife" when he had himself referred to her as his "own true wife" and that the children were legitimated after a fraudulently obtained court order in Thailand. The Debtor chose not to present himself to the Thai court, but was represented by attorneys. His original claims were "he had not had a sexual relationship with [Teekhungam] during her fertility period," followed by his total denial that he had participated in the IVF procedure and a claim that his sperm had been switched in the clinic and that the DNA test was somehow faulty. He participated through counsel all the way to the Thai Supreme Court, and never sought another DNA test.

On September 14, 2018, the Debtor was ordered to pay Teekhungam the sum of $11,000 per month as and for child support for each of the parties' three children through each child's minority (with the age of majority being 20 years of age). See Judgment (attached as Ex. D). Child support was retroactive to April 1, 2013. Within 21 days of the order, 503(g) trusts were to be set up for each child, with the Debtor depositing $1,500,000 into each of the trusts. The funds would be used for child support, actual private medical and dental insurance payments, and extracurricular activities. The trust corpus amounts were slightly less that the full amount the Debtor would be required to pay over the years, but interest was to accrue in a sufficient amount to cover the differences.

On November 5, 2018, the trial court affirmed the total amount of retroactive support the Debtor owed was $1,979,972.09 (which credited the Debtor for all payments made after April 2013) and ordered the receiver to collect and turn over the funds to Teekhungam. See Order (attached as Ex. E). Hours later, the Debtor filed for bankruptcy.

### 1.3. The Debtor attempts to hide his assets from Teekhungam and his children.

At that Illinois trial on modification of child support, it was revealed by the Debtor's testimony and exhibits admitted into evidence that the Debtor is engaged in a pattern of hiding assets. Among other things, he transferred a mansion into tenancy by the entirety in an apparent attempt to keep Teekhungam and his children from using it to satisfy their child support judgment. The Debtor also executed several promissory notes totaling more than $10 million in his wife's favor, and he transferred substantially of his assets to her for "legal advice and service" even though she is not a lawyer. But the Debtor never made payments on this alleged debt or actually transferred any assets except that he "paid" $520,000 to an entity named Higinbotham Capital for interest owed on one note at 15%.

The Debtor also caused amendments to be executed changing the definition of descendants in several trusts of which he was the beneficiary and trustee. The trust amendments provided for the remaining corpus to go to his "legitimate" descendants thereby excluding his triplet sons. In addition, the Debtor testified that he had, at the age of 71, a child with his current wife, aged 66, so that he would have a descendant as beneficiary of these trusts.

## 2. DISCUSSION.

Ordinarily, the automatic stay stops most actions against a debtor or his property and pre-bankruptcy custodians are required to turn over property to the debtor. 11 U.S.C. §§ 362(a), 543. The automatic stay, however, does not apply to most child support proceedings, and to the extent it does, the stay should be terminated to allow child support obligations to be enforced. And, to protect creditors, the receiver should be excused from turning over property to the Debtor and should be permitted to disburse funds as directed by the state court.

## 2.1. The automatic stay should be terminated to allow the state court to establish and enforce its child support orders.

The Bankruptcy Code's automatic stay is not immutable—there are numerous family law exceptions. The stay does not stop the continuation of civil actions to establish paternity or to establish or modify an order for domestic support obligations (including child support). 11 U.S.C. §§ 362(b)(2)(A)(i)–(ii); 101(14A). Nor does it stop the collection of a domestic support obligation from property that is not property of the estate, or from income that is property of the estate. *Id.* § 362(b)(2)(B),(C).

A creditor also is entitled to relief from the automatic stay "for cause." 11 U.S.C. § 362(d). The debtor has the burden to show that cause does not exist. *Id.* § 362(g). "Cause … has no clear definition and is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (*quoting In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)). Relief from stay is appropriate "when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Id.* (*quoting Matthews v. Rosene*, 739 F.2de 249, 251 (7th Cir. 1984)).

Bankruptcy courts lift the automatic stay in favor of family law proceedings for many reasons, with a primary concern arising from the general reluctance of federal courts to get involved in domestic relations matters. *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."). Bankruptcy courts also recognize they are not legally competent to determine the state-law rights of the parties to a family law matter. *In re Sparks*, 181 B.R. 341, 343 (Bankr. N.D. Ill. 1995) (directing the state court to adjudicate the issues presented in dissolution proceedings).

Under one test for determining whether cause exists, the court evaluates whether:

      a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

      b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and

      c) the creditor has a probability of prevailing on the merits.

*Id.* (*quoting In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)) (internal alteration marks omitted).

### 2.1.1. *The Debtor and the estate will not be harmed because the Debtor must pay Teekhungam and the children in full on an accelerated basis anyway.*

In this case, the debtor and the estate will not be harmed at all if the stay is terminated to allow the child support case to proceed. First, many aspects of the case are already statutorily excepted from the stay: establishing or modifying the support order, collecting from non-estate property, and collecting from the Debtor's income. Proceeding without stay relief, however, would likely lead to disputes over what exactly the state court can and cannot do. By terminating the stay as to Teekhungam and the children, the state court can afford complete relief between the parties.

Second, the Debtor will have to pay the domestic support obligation to Teekhungam and the children anyway, so there is no harm in allowing them to collect it involuntarily now. The Debtor must pay all support payments that come due during the course of the bankruptcy case, or else the case is subject to conversion or dismissal, 11 U.S.C. § 1112(a)(4), and any chapter 11 plan cannot be confirmed, *id.* § 1129(a)(14). Also, because Teekhungam and the children would not accept any other treatment, the Debtor must pay any pre-petition support claim in full on the chapter 11 plan's effective date. *Id.* § 1129(b)(9)(B), 507(a)(1)(A). Given these requirements, the estate is not harmed in any real way if Teekhungam and the children are allowed to collect their claim now instead of later. If anything, the

estate benefits because a significant claim is resolved without the need to incur attorney fees trying to push through an unconfirmable plan.

### 2.1.2. Teekhungam and the children would continue to suffer if the stay is not modified.

Teekhungam and the children live a working-class life with very little income or assets. Since at least 2009, they have been trying to force the Debtor to pay the support he owes them. The Debtor has fought them at every step, up and down the court systems in Thailand, England, and Illinois. The Debtor, who is extremely well-funded, has spent more than $1.75 million on legal fees in his effort to avoid his obligations, and he recently testified that there is no amount of money he wouldn't spend to avoid paying it to Teekhungam and the children. If the stay remains in place, Teekhungam and the children will not have the resources to continue to fight for what they are owed.

### 2.1.3. Teekhungam and the children have already prevailed on the merits of their claims.

The state court has already ruled that the Debtor owes $11,000 per month per child in support payments, that the Debtor must set up a $1.5 million trust for each child, and that the Debtor owes $1,979,972.09 in retroactive support. On November 5, 2018, the receiver was directed to collect the retroactive support from the Debtor's assets. At this point, all that remains is to implement the state court's rulings.

Because the Debtor and the estate would not be harmed at all if the stay is lifted, while Teekhungam and the children would suffer greatly despite already prevailing on the merits, cause exists to terminate the automatic stay.

## 2.2. The Court should waive the 14-day stay.

An "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the

entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001. Courts routinely waive the 14-day stay of execution on stay relief motions, particularly when good cause is shown. In this case, the battle to obtain and enforce the child support obligations has been long and hard, and there is no reason to further delay payment of those obligations.

### 2.3. Because it is in the creditors' best interest, the Court should excuse the receiver from complying with § 543.

Once a debtor files bankruptcy, a pre-bankruptcy custodian of the debtor's property ordinarily may not make any disbursements of that property except as is necessary to preserve the property. 11 U.S.C. § 543(a). The custodian is also required to deliver the property to the debtor and account for it. *Id.* § 543(b). A court may, however, excuse compliance with both requirements when the interests of creditors are better served by the custodian remaining in place. *Id.* § 543(d)(1).

In this case, the interests of creditors are better served if the receiver retains possession, custody, or control of the Debtor's property and makes the distributions authorized by the state court. The state court appointed the receiver in the first place because the Debtor refused to comply with an order requiring him to put $1.75 million in a trust for Teekhungam and the children. There is no indication that the Debtor will act any differently here.

In addition, Teekhungam and her children uncovered evidence suggesting that the Debtor was engaged in an effort to hide assets from his creditors. For example, the Debtor transferred his house into tenancy by the entireties, purported to transfer some financial accounts into tenancy by the entireties, transferred shares in a cooperative building to his wife, and executed several promissory notes in his wife's favor.

**Wherefore**, Teekhungam and the children respectfully request that the Court terminate the automatic stay as to the child support proceeding, excuse the receiver

from turning over assets in his possession, custody, or control, and grant such further relief as is appropriate in the circumstances.

| | |
|---|---|
| Dated: November 9, 2018 | Respectfully submitted, |
| | **Wipaporn Teekhungam**, **A.H**, a minor, **A.H.**, a minor, and **A.H.**, a minor |
| | By: /s/ Jeffrey K. Paulsen<br>One of Their Attorneys |

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com
         dkebner@deborahebnerlaw.com
         jpaulsen@wfactorlaw.com