## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham**, | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

## REPLY IN SUPPORT OF THE MOTION OF WIPAPORN TEEKHUNGAM AND THE PARTIES' MINOR CHILDREN FOR RELIEF FROM STAY AND MOTION TO EXCUSE THE RECEIVER'S COMPLIANCE WITH § 543

Harlow N. Higinbotham (the "Debtor") admits that the purpose of this bankruptcy is to avoid paying child support to Wipaporn Teekhungam and the parties' minor children while he continues his years-long litigation campaign. This alone establishes that he filed this case in bad faith, which is cause for granting Teekhungam and the children stay relief. The Debtor also fails to show that any of the *Fernstrom* factors weigh in his favor. The stay should therefore be modified to allow Teekhungam and the children to continue the state court child support proceeding in all respects.

## 1. DISCUSSION.

### 1.1. Stay relief should be granted because the Debtor filed this case in bad faith.

In his response to the motion for stay relief that Teekhungam and the children filed, the Debtor brazenly admits that that the goal of this case is to stay enforcement of the child support obligations while he appeals the September 14 judgment. Resp., ECF No. 26, at ¶¶ 3, 24. This admission raises a new basis for granting stay relief to Teekhungam and the children: the Debtor filed this case in bad faith.

Filing a bankruptcy petition in bad faith is cause for relief from the automatic stay. *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 737–38 (6th Cir. 1994); *In re Dixie Broadcasting, Inc.*, 871 F.2d 1023, 1026 (11th Cir. 1989); *In re Little Creek Development Co.*, 779 F.2d 1068, 1071–73 (5th Cir. 1986).

A case is filed in bad faith when the debtor files a bankruptcy petition to get a free stay pending appeal of a judgment he has the ability to satisfy. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828–29 (9th Cir. 1994). "If the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, then the debtor has not filed the Chapter 11 in good faith." *In re Liptak*, 304 B.R. 820, 836–37 (Bankr. N.D. Ill. 2004). *See also In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015) (affirming dismissal of chapter 7 case for cause based on "an unjustified refusal to pay one's debts"); *In re Garzon*, 2018 Bankr. LEXIS 3818, at *13–14 (Bankr. N.D. Ill. Dec. 3, 2018) (finding bad faith when debtor filed chapter 13 case "to gain the benefit of the automatic stay, postpone payment of the debt to his ex-wife, and, if he plays his bankruptcy cards right, never pay the debt at all").

Obtaining the protection of the automatic stay cannot be the only purpose of a bankruptcy case. *Garzon*, 2018 Bankr. LEXIS 3818, at *13–14 (*citing In re Tabor*, 583 B.R. 155, 183 (Bankr. N.D. Ill. 2018)); *In re Carrera*, 2016 Bankr. LEXIS 3020, at *22 (B.A.P. 9th Cir. Aug. 16, 2016), *aff'd sub nom. In re Vizconde*, 715 Fed. Appx. 630 (9th Cir. Nov. 29, 2017) (affirming a bankruptcy court's sanctions under Rule 9011 where a case was filed "'just to buy time to cut a deal,' which the court noted was 'not a proper purpose for filing a bankruptcy case'"); *In re Prometheus Health Imaging, Inc.*, 2015 Bankr. LEXIS 3743, at *15 (B.A.P. 9th Cir. Nov. 2, 2015) ("abuse of the automatic stay or use of other litigation tactics unrelated to reorganization can constitute bad faith").

The Debtor confesses that that he filed this case to stay enforcement of the child support obligations while he appeals the September 14 judgment. Resp., ECF No. 26, at ¶¶ 3, 24. The Debtor has sufficient resources to pay the child support obligations now, but he is choosing not to do so. Instead, he is seeking to use this Court to stay the most recent judgment—a stay explicitly denied to him under Illinois law, as discussed below—and to put off paying his support obligations indefinitely.

The Debtor claims he does not have enough non-exempt assets to pay the support obligations. That is doubtful,[1] but whether something is exempt or not matters only when a creditor seeks to collect a judgment involuntarily. The Debtor is free to use any asset, exempt or not, to pay what he owes. When considering whether a case is filed in bad faith, the Debtor's full ability to pay should be considered.

The Debtor could have paid the child support obligations but instead filed this case for the purpose of preventing enforcement of the obligations. This is a bad faith case, so this Court should grant stay relief to Teekhungam and the children.

**1.2.    Stay relief should be granted because the balancing of the harms under *Fernstrom* favors Teekhungam and the minor children.**

The Debtor also fails to show any reason why the stay should not be lifted under *Fernstrom*. He does not identify any reorganization in prospect that could be harmed or any other irreparable harm if the stay is lifted. His offer to pay some of

---

[1] Among other things, the Debtor appears to have underreported the value of at least some of his assets. On Schedule A/B, he claims that his Northern Trust account no. 6357 is worth $5.3 million, but on Schedule D, he says it is worth $10.6 million. ECF No. 21, at 6, 21. It is not clear at this point what other assets he has undervalued. At trial in state court, the Debtor admitted that he "diluted" some assets listed in his financial affidavit by reporting only 10% of the value, claiming that his wife owned 90% of them. *See* Tr. (excerpts attached as Ex. A), 233:8–38:3, June 22, 2018.

what he owes will not alleviate the harms that Teekhungam and the children face if the stay is maintained. And he cannot show that Teekhungam and the children will not succeed in state court, as they have already done so.

### 1.2.1. *The Debtor will not be harmed if the stay is modified to allow the support proceeding to continue.*

The Debtor attempts to articulate several ways in which he would be harmed if stay relief is granted. Each of those harms, however, is illusory.

#### 1.2.1.1 The Debtor has no real ability to reorganize, so granting stay relief now will not impair any reorganization.

The Debtor claims that stay relief will harm him because he does not have enough "non-exempt liquid assets" to pay Teekhungam and the children in full. Resp., ECF No. 26, ¶ 21. His claim that he cannot pay the support claim in full, if true, is fatal to his cause: he must do so on the effective date of any plan. 11 U.S.C. §§ 1129(b)(9)(B), 507(a)(1)(A). By the Debtor's own admission, then, this case is going nowhere, and relief from stay now will not prejudice any reorganization.

It is no consolation that the Debtor has sources of income he did not incorporate into Schedules I and J. Resp., ECF No. 26, ¶ 25. The Debtor claims that these sources generated $277,080.84 in the first 10 months of 2018. *Id.* But even if the Debtor could legally confirm a plan that pays Teekhungam and the children over time, and assuming that he pays 100% of this income to Teekhungam and the children and that this income remains stable, it would still take more than 19 years to pay them in full. The Debtor is 71 years old. There is no assurance that he will live for another 19 years, and he will have to retire at some point, drastically reducing his income. In any event, Teekhungam and the children will not agree to payment over time, so this issue is academic.

The Debtor claims that he will incur capital gains taxes if the state court receiver liquidates the Debtor's assets. *Id.* ¶ 21. But taxes are a fact of life, and they

will be incurred whenever the assets are liquidated. Whether that is now or later will not affect this reorganization in any material way. The Debtor suggests he can avoid the taxes by incurring debt, but that comes with its own problems, including that any DIP financing lender will likely want priority over existing creditors. *See* 11 U.S.C. § 364(d).

### 1.2.1.2  There is never a stay pending appeal of a support judgment, so the Debtor is not harmed by its absence in this case.

The Debtor mainly complains about "the procedural 'limbo' in which the State Court has placed Debtor" by allowing enforcement but not appeal of the $1.9 million retroactive support judgment against him. Resp., ECF No. 26, ¶¶ 16–20. He would have this Court place Teekhungam and the children in limbo in his stead, preventing them from enforcing the judgment while he appeals it. Doing so, however, would subvert the statutory directives relating to enforcement of support judgments.

"An order requiring maintenance or support of … a minor child or children ... shall not be suspended or the enforcement thereof stayed pending the filing and resolution of post-judgment motions or an appeal." 750 Ill. Comp. Stat. 5/413(a). A party is therefore foreclosed from seeking a stay pending appeal of any order or judgment of child support. *In re Marriage of Ackerley*, 775 N.E.2d 1045, 1061 (Ill. App. Ct. 2002).

The Debtor's "harm" is nothing more than the normal operation of the Illinois courts. A child support judgment must be enforced notwithstanding any appeal. Once the state court completes the other matters before it, the Debtor will be able to appeal the judgment in the ordinary course. This bankruptcy case is not about preventing harm to the Debtor or his estate, but circumventing well-established state law governing support orders.

The Debtor's procedural gamesmanship is further demonstrated by his statement that the pending state-court sanctions motions "should be resolved

through the claims process in the Chapter 11 case." Resp., ECF No. 26, ¶ 27. The

motions seek sanctions for the Debtor's false statements on a financial affidavit

submitted to the state court and for his violation of a protective order entered by the

state court. *See* Mot. for Sanctions (attached as Ex. B); Mot. to Vacate (attached as

Ex. C), at 5–8. This is exactly the type of issue that should be resolved by the state

court, in front of which the bad behavior took place:

> A litigant should not be allowed to delay the imposition of
> sanctions indefinitely by the expedient of declaring
> bankruptcy. Allowing him to do so would not only
> increase the number of bankruptcy filings but also create
> incentives for unprofessional conduct in litigation by firms
> or individuals teetering on the edge of the bankruptcy
> abyss.

*Alpern v. Leib*, 11 F.3d 689, 690 (7th Cir. 1993) (finding Rule 11 motions excepted

from automatic stay under police-power exception of § 362(b)(4)).

As in *Alpern*, the sanctions motions seek sanctions as punishment for the

Debtor's improper actions before the court. The Debtor should not be able to use the

stay to shield himself against from consequences of his bad behavior.

### 1.2.1.3 Attorney's fees will continue to accrue regardless of whether Teekhungam and the children are granted stay relief.

The Debtor also complains that he "will be harmed and prejudiced by the

continued accrual of attorney fees." Resp., ECF No. 26, ¶ 23. But the Debtor wants

to pursue his appeals of the state court's rulings. To do that, he will need stay relief

himself. *In re Ace Track Co.*, 556 B.R. 887, 906 (Bankr. N.D. Ill. 2016). Teekhungam

and the children (and the Debtor) will need to pay attorneys to work on those

appeals, which will likely be substantially more expensive than simply having the

receiver enforce a judgment from the Debtor's assets.

If anything, it is the Debtor himself who is increasing legal costs: by filing the

bankruptcy, he has added another layer of lawyers for which he must ultimately

pay. And he could, of course, just pay what he owes and not incur any additional

attorneys' fees. This is not a harm that will result from stay relief, and it should not be considered under *Fernstrom*.[2]

### 1.2.1.4  The Debtor will not be prejudiced by paying the judgment now instead of later.

The Debtor claims that "to the extent that the appellate court reverses and/or reduces the support obligations set forth in the Judgment, it would be more than unlikely that he would be able to recover any overpayment …." Resp., ECF No. 26, ¶ 22. This sort of speculative harm is not the type of harm courts consider.

The types of harm to a debtor to be considered are whether the suit will impair the debtor's ability to formulate a reorganization plan or otherwise do the debtor irreparable harm. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991). Harms that are merely speculative should not be considered. *See El Puerto de Liverpool S.A. de C.V. v. Servi Mundo Llantero U.S.A. (In re Kmart Corp.)*, 285 B.R. 679, 691 (Bankr. N.D. Ill. 2002) (declining to extend stay to third party under *Fernstrom* because supposed interference to reorganization was "speculative, at best"). In a related context, applications for a stay pending appeal, courts have held that to establish irreparable harm, "the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Mich. Coal. of Radioactive Material Users Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Here, the Debtor claims he will be harmed because an appellate court might rule at least partially in his favor on an appeal that he has not filed yet. This is

---

[2] The Debtor also claims that the fees incurred "will result in the rapid diminution of the remaining corpus of the 503(g) Trust." Resp., ECF No. 26, ¶ 23. But the Trust is not property of the Debtor or of the estate, so its supposed diminution is not a harm to the Debtor. In fact, part of the point of the Trust is to ensure that there are funds for Teekhungam and the children to pay attorneys to respond to the Debtor's aggressive litigation strategy.

entirely speculative. As explained above, the Illinois legislature has determined
that child support orders should not be stayed during such speculative appeals. In
fact, as explained below, it is bad faith to file a bankruptcy case to stay a judgment
one could pay, and this independently justifies relief from the automatic stay.

Even if the Debtor's supposed harm was cognizable under *Fernstrom*, it is not
based on any real facts. The Debtor claims that Teekhungam and the children may
leave the United Kingdom soon and return to Thailand. But that does not mean
that he will not recover any overpayment. At least $4.5 million of the funds will be
held in trust, to be disbursed only when necessary for monthly support, medical
expenses, and extracurricular activities, with any residual amount returned to the
Debtor. The money will not just disappear. For the past-due support, the Debtor
assumes without evidence that Teekhungam and the children will be as
intransigent and contumacious as he is. Teekhungam and the children may
voluntarily return any overpayment. If they do not, he can avail himself of the usual
legal tools. The international dimension should prove no obstacle: the Debtor has
proved himself a vigorous international litigator, having pursued cases related to
the parties' dispute throughout the American, English, and Thai judicial systems.

Nor would an overpayment affect the Debtor's "reorganization." The Debtor's
second largest supposed creditor is his wife, whom he claims to owe $13.5 million.
But the state court already found that the Debtor's debt to his wife was a result of
an "illusory" course of conduct, and that he created it only "in an effort to reduce his
ability to pay child support." Judgment (attached as Ex. D), at 13. The Debtor is
essentially arguing that if he overpays Teekhungam and the children now, he will
not be able to use it to pay other debts that do not really exist. This is not
"irreparable harm" that the automatic stay is designed to prevent.

1.2.2. *Teekhungam and the children will be harmed if they are forced to wait indefinitely to enforce the child support obligaitons.*

The Debtor claims that Teekhungam and the children will not be harmed because they are already receiving more than they need and because he has offered to pay a portion of what he owes to them. Resp., ECF No. 26, ¶¶ 28–29. Neither of these assertions have merit.

First, the Debtor's reference to a "wish list" budget is not an accurate characterization. In a child support proceeding, parties are required to produce financial information so the court can determine what support is needed and what can be paid. As part of this process, Teekhungam and the children produced two budgets. One was their actual, minimal, and then-available income and expenses (which included government assistance). The other was based on their best projection—based on incomplete information from the Debtor—of the standard of living they would have enjoyed had the Debtor honored his parental obligations from the start and had the parties remained together, which is one of the many factors a court can consider when setting child support. 750 Ill. Comp. Stat. 5/505(a)(2). This was not a "wish list" but a projection of the gaps that child support would fill. The state court held a trial in which the parties and the court further evaluated the Debtor's finances, and it based its ultimate support determination on the evidence presented there.[3]

Second, the Debtor's offer to pay only part of what he owes does not eliminate the harm that Teekhungam and the children face. The Debtor is 71 years old and may not live much longer. Based on his prior conduct and statements, it appears

---

[3] The appropriateness, and arguable conservatism, of the state court's determination of $11,000 per month per child, is demonstrated by the Debtor's admission that he spends at least $20,000 for an infant's childcare alone. ECF No. 21, at 30.

that he will continue to litigate until he dies in an effort to defeat Teekhungam and the children. The state court made explicit findings on this subject after trial:

> Harlow is extraordinarily, if not vexatiously, litigious. He has appealed the decision finding him to be the father of these children to the Supreme Court of Thailand. He has sued Wipaporn in England concerning a Facebook page that she had up for a couple of months and took down. (He claimed it was an invasion of his privacy). When he lost that case he filed an appeal and he has recently lost that appeal and testified that he has deposited $25,000 with an attorney to take that matter up to the next higher court in Great Britain. When the Illinois court registered the Thai decision for the purposes of enforcing the child support, he appealed that matter. He also lost that appeal.

> During the current litigation, he has appealed two separate issues and has asked the Supreme Court of Illinois for a supervisory order. When asked if there was a limit to the amount of funds that he would spend litigating this case in order to preclude having to support his sons, he answered in the negative. In the last day of testimony, he indicated that he would continue to litigate this issue until "he receives justice" which the court took to mean his not being obligated to support his sons.

> Harlow has caused amendments to be executed changing the definition of descendants in several trusts of which he is the beneficiary and trustee. Said trusts provide for the remaining corpus to go to his "legitimate" descendants thereby excluding his triplet sons.

> In addition, Harlow testified that he has, at the age of 71, had a child with his current wife (Susan is 66) so that he would have a descendent as beneficiary of these trust.

> Harlow has commenced an "illusory" course of conduct designed to remove all of his assets from himself and transfer them to his wife, Susan. He has produced several promissory notes one of which transfers all of his assets to Susan in exchange for "legal advice and service" she has rendered to him. Susan is not an attorney. Although the

promissory notes are years old, he has done nothing to actually transfer funds to Susan. He has only created those notes in an effort to reduce his ability to pay child support.

It is common for a payor to be required to pay for life insurance in an amount sufficient to provide for the support and education of his/her minor child. Considering the age of the Respondent and the amounts that would have to be covered, it would be prohibitively expens[ive] to require him to provide such a policy.

The court finds that due to his advanced age and his obsessive tendency to deny his parentage of the triplets and refuse to pay support, that should the court fail to establish a 503(g) trust not only would he make no provisions for these children in the event of his demise (thereby engendering further litigation in the probate court) but, would take active steps to insure that the triplets were omitted as his descendants under the original terms of those trusts.

Ex. D, at 13–14.

Also, "[w]here the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the say to allow the litigation to proceed." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 737 (7th Cir. 1991). This is because "the further along the litigation, the more unfair it is to force the plaintiff suing the debtor-defendant to duplicate all of its efforts in the bankruptcy court." *Id.* (internal quotation marks omitted). Here, the state court proceedings are far advanced, and there is no reason that Teekhungam and the children should have to start over in this Court.

Given the Debtor's age, litigiousness, and repeated refusal to honor court orders, as well as the advanced stage of the support proceeding, Teekhungam and the children will be harmed unless they can fully enforce their support claims.

### 1.2.3. *Teekhungam and the children have already succeeded in the state court.*

The Debtor argues that Teekhungam and the children are not likely to succeed on the support proceeding because he hopes that supposed "reversible errors" will be addressed on appeal. Resp., ECF No. 26, ¶ 32. This misunderstands the nature of the inquiry that this Court must undertake.

In evaluating whether to modify the stay, the court must evaluate whether "the creditor has a probability of prevailing on the merits." *Fernstrom*, 938 F.2d at 735. The Court is not asked to determine whether the creditor or the debtor is more likely to win, but if the creditor has any probability of winning. "Hearings to determine whether the stay should be lifted are meant to be summary in character." *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). Courts should evaluate only whether the creditor has a "colorable claim." *Id.* at 1234 (discussing stay relief in the context of lack of equity under § 362(d)(2). Indeed, in *Fernstrom* itself, the Seventh Circuit found this factor satisfied when the creditor's claim was "not frivolous." 938 F.2d at 737 ("We note only that the fact that one of Fernstrom's insurers made an initial payment on IBM's claim suggests that IBM's suit is not frivolous.").

Here, Teekhungam and the children far exceed the Seventh Circuit's low threshold: they already won before the state court. The fact that a court of the State of Illinois ruled in their favor after a trial establishes that they have at a bare minimum a colorable claim and a probability of prevailing on the merits. The state court system, and not this Court, can and should decide whether there are any reversible errors.[4]

---

[4] Teekhungam and the children do not concede that state court made any errors. Among other things, the state court explained the basis for its jurisdiction and how the support amount was calculated. Ex. D, at 5–7, 8–11.

Balancing all relevant factors, the equities weigh in favor of granting
Teekhungam and the children relief from stay to continue all aspects of the support
proceeding, including enforcement of child support obligations against the Debtor's
property.

**Wherefore**, Teekhungam and the children respectfully request that the Court
terminate the automatic stay as to the child support proceeding and grant such
further relief as is appropriate in the circumstances.

Dated: December 7, 2018                    Respectfully submitted,

                                           **Wipaporn Teekhungam, A.H**, a
                                           minor, **A.H.**, a minor, and **A.H.**, a
                                           minor

                                           By: /s/ Jeffrey K. Paulsen
                                           One of Their Attorneys

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:     (847) 239-7248
Fax:     (847) 574-8233
Email: wfactor@wfactorlaw.com
        dkebner@deborahebnerlaw.com
        jpaulsen@wfactorlaw.com

## CERTIFICATE OF SERVICE

I, Jeffrey K. Paulsen, an attorney, hereby certify that on December 7, 2018, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Reply* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below and by U.S. mail on all other persons identified on the Service List.

/s/ Jeffrey K. Paulsen

## SERVICE LIST

**Registrants**
(Service via ECF)

| | |
|---|---|
| Bianca E. Ciarroni | bciarroni@freeborn.com, bkdocketing@freeborn.com |
| Michael K. Desmond | mdesmond@fslegal.com, dorisbay@fslegal.com |
| Deborah K. Ebner | dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com, lizd@deborahebnerlaw.com |
| William J. Factor | wfactor@wfactorlaw.com, wfactorlaw@gmail.com, bharlow@wfactorlaw.com, wfactor@ecf.inforuptcy.com, wfactormyecfmail@gmail.com, factorwr43923@notify.bestcase.com |
| Shira R. Isenberg | sisenberg@freeborn.com, bkdocketing@freeborn.com. jhazdra@ecf.inforuptcy.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Jeffrey K. Paulsen | jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com, jpaulsen@ecf.inforuptcy.com |
| Nathan Q. Rugg | Nathan.Rugg@bfkn.com, jean.montgomery@bfkn.com |
| Gregory K. Stern | greg@gregstern.com, steve_horvath@ilnb.uscourts.gov |

{00129321}      —14—

**Non-Registrants**
(Service via U.S. Mail)

Harlow N. Higinbotham
RD No. 2
2002 East Cass St.
Joliet, IL 60432

American Express
PO Box 981537
El Paso, TX 79998

Beerman LLP
161 N. Clark St.
Suite 3000
Chicago, IL 60601

Casale Reporting Service Inc.
33 N. Dearborn St.
Suite 1506
Chicago, IL 60602

Chase Card
PO Box 15298
Wilmington, DE 19850

Citicards
PO Box 6241
Sioux Falls, SD 57117

Discover Financial Services LLC
PO Box 15316
Wilmington, DE 19850

E.D. Higinbotham Trust
1500 N. Lake Shore Dr.
Unit 13-C
Chicago, IL 60610

Fox Rothschild LLP
321 N. Clark St.
Suite 800
Chicago, IL 60654

H.N. Higinbotham Trust
1500 N. Lake Shore Dr.
Unit 13-C
Chicago, IL 60610

McDermott Will & Emery
444 W. Lake St.
Suite 4000
Chicago, IL 60606

Susan S. Higinbotham
RD No. 2
2002 E. Cass St.
Joliet, IL 60432

Tileke & Gibbins
1011 Rama 3 Road
Chongnonsi, Yannawa
Bangkok, Thailand 10120

Wentzel Law Offices
77 W. Washington St.
Suite 2100
Chicago, IL 60602