# EXHIBIT A

```
 1   STATE OF ILLINOIS  )
                        )  SS:
 2   COUNTY OF C O O K  )

 3      IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION
 4
      IN RE THE PARENTAGE OF:         )
 5                                    )
      WIPAPORN TEEKHUNGAM a/k/a,      )
 6    CHIRATHIP TEEKHUNGAM,           )
      Individually, and on behalf of  )
 7    ANUCHIT a/k/a HARLOW            )
      HIGINBOTHAM, ATHIRAT a/k/a      )
 8    HENRY HIGINBOTHAM, and          )
      ANUSIT a/k/a WILLIAM            )
 9    HIGINBOTHAM, Minors,            )
                                      )
10                  Petitioners,      )
                                      )
11         vs.                        )   No. 11 D 6475
                                      )
12    HARLOW HIGINBOTHAM,             )
                                      )
13                  Respondent.       )

14

15           REPORT OF PROCEEDINGS had at the hearing

16   in the above-entitled cause before the

17   Honorable Jeanne Cleveland Bernstein, Judge of

18   said Court, in Room 3007, Richard J. Daley Center,

19   50 West Washington Street, Chicago, Illinois, on

20   the 22nd day of June, 2018, at 12:09 p.m.

21

22

23

24
```

```
 1    APPEARANCES:

 2
          ALLEN & GLASSMAN, CHTD.
 3        BY: GEMMA ALLEN, ESQ.
              MICHAEL J. LEVY, ESQ.
 4            150 North Michigan Avenue
              Suite 3600
 5            Chicago, Illinois 60601
              tel: 312.853.3000
 6            fax: 312.853.0309
              gemmaallen@allenglassman.com
 7            michaellevy@allenglassman.com,

 8                Appeared on behalf of
                  Wipaporn Teekhungam;
 9

10        ROSENFELD HAFRON SHAPIRO
          BY: KATHRYN D. FARMER, ESQ.
11            221 North LaSalle Street
              Suite 1763
12            Chicago, Illinois 60601
              tel: 312.
13            fax: 312.
              kfarmer@hrosenfeld@rhsflawfirm.com
14            hrosenfeld@rhsflawfirm.com,

15                Appeared on behalf of Anuchit
                  Higinbotham, Athirat Higinbotham,
16                and Anusit Higinbotham;

17
          THE LAW OFFICE OF MICHAEL IAN BENDER
18        BY: MICHAEL IAN BENDER, ESQ.
              70 West Madison Street
19            Suite 2222
              Chicago, Illinois 60602
20            tel: 312-236-1500
              benderlaw@comcast.net
21
                  Guardian ad Litem;
22

23

24
```

```
 1   APPEARANCES: (Continued)

 2
         BEERMANN PRITIKIN MIRABELLI SWERDLOVE LLP
 3       BY: MATTHEW D. ELSTER, ESQ.
             ENRICO MIRABELLI, ESQ.
 4           161 North Clark Street
             Suite 2600
 5           Chicago, Illinois 60601
             tel: 312.621.9700
 6           fax: 312.621.0909
             mdelster@beermannlaw.com
 7           emirabelli@beermanlaw.com

 8              -- and --

 9       WENTZEL LAW
         BY: DAVID F. WENTZEL, ESQ.
10           77 West Washington Street
             Suite 2100
11           Chicago, Illinois 60602
             tel:  312.697.0500
12           dwentzel@wentzellaw.com,

13              Appeared on behalf of the Respondent;

14
         KATZ & STEFANI LLC
15       BY: SHAWN D. BERSSON, ESQ.
             222 North LaSalle Street
16           Suite 2150
             Chicago, Illinois 60601
17           tel: 312.364.9000
             fax: 312.364.9035
18           sbersson@katzstefani.com,

19              Appeared on behalf of
                Susan Higinbotham.
20

21

22

23

24
```

1                         **I   N   D   E   X**

2                            **EXAMINATIONS**
     **WITNESS**                                              **PAGE**
3    MICHAEL BENDER
         Direct Examination By Ms. Allen         44
4        Cross-Examination By Mr. Mirabelli      71
         Redirect Examination By Ms. Allen       170
5
      HARLOW NILES HIGINBOTHAM
6        Cross-Examination By Ms. Allen          177

7
                          **E X H I B I T S**
8
     **NUMBER**              **FIRST**                  **ADMITTED**
9                         **REFERENCE**
      No. 1                    70
10    No. 3                    228
      Group No. 4              227
11    No. 9                    240
      No. 10                   243
12    No. 11                   244
      No. 12                   255
13    No. 13                   256
      No. 14                   264
14    No. 15                   238
      No. 16                   211
15    No. 17                   232
      No. 19                   232
16    No. 20                   231
      No. 21                   234
17    No. 22                   230
      No. 23                   230
18    No. 24                   233
      No. 25                   267
19    No. 31                   269
      No. 33                   208
20    No. 35                   186
      No. 36                   188
21    No. 63                   271

22

23

24

*Pages Intentionally Omitted*

Case 18-31185    Doc 32-1    Filed 12/07/18    Entered 12/07/18 16:18:15    Desc Exhibit
A - Transcript    Page 6 of 13

1    There's a stock plan. Maybe I missed that. It was

2    321,000. That's not a stock options. That's

3    something else.

4         Q.    But it is a stock plan, right?

5         A.    Yes, it is.

6         Q.    And that's not on your affidavit?

7         A.    It appears to have been omitted.

8         Q.    And then turning your attention to

9    Exhibit 24 would you identify that, please?

10        A.    It's a Morgan Stanley account.

11        Q.    And, again, I think it runs 15 through

12   18; is that right?

13        A.    Right.

14        Q.    And at the ending balance on that as of

15   March 31st of 2018?

16        A.    I see 290,000 amount.

17        Q.    And would you turn your attention --

18   that's 290,000, right?

19        A.    Yes.

20        Q.    Turning your attention to your affidavit

21   at Page 7, under investment accounts and

22   securities, Morgan Stanley No. 2 under the B

23   category --

24        A.    Yes.

1    Q.    -- it shows your value at $27,000 for
2 that account, sir?
3    A.    Yes. That's 10 percent amount.
4    Q.    And why would you value it at
5 10 percent?
6    A.    Because I -- I represented that Susan,
7 my wife, owns the other 90 percent.
8    Q.    And how would you say she owns the other
9 90 percent?
10    A.    Well, that's through an agreement
11 between she and me regarding a substantial amount
12 of -- a loan outstanding to her and other gifts
13 that I have made to her.
14    Q.    So this is your calculation that she
15 owns 90 percent of this asset?
16    A.    Yes. It's a rough estimate. I used
17 10 percent as an indication of a portion that was
18 still my value.
19    Q.    And did you do the same, sir, with
20 regard to the UBS Financial Services?
21    A.    Yes, I did.
22    Q.    And that is -- that was Exhibit 21?
23    A.    Correct.
24    Q.    So you took the number and attributed 10

1  percent to you and the rest to her; is that right?

2      A.    That's correct, yes.

3      Q.    And then with regard to the Northern

4  Trust securities, which is Exhibit -- So, I think

5  we have two statements for Northern Trust.  Let's

6  look at No. 8, which is The Northern Trust

7  statement for May of '18, what is the balance in

8  the account, sir, as of May of '18 both the total

9  value of the assets and the net of margin value?

10     A.    It looks as though the total value as of

11 May 31st is 11 million.  Margin is 5 million,

12 leaving 6 net.

13           THE COURT:  Margin was how much.

14           THE WITNESS:  5 million.

15           THE COURT:  5 million?

16           THE WITNESS:  Yeah.

17 BY MS. ALLEN:

18     Q.    And so the margin of the equity value is

19 the way they characterize it, ending value, which

20 includes dividends correctly is $6,012,782; is that

21 right?

22     A.    What -- 600- --

23     Q.    6,012,782.

24     A.    Yes, including accrued dividends, yes.

1    Q.    And turning your attention to your financial affidavit again, which is Exhibit 3, and the asset page on Page 7, you say your 10 percent is $560,000; is that right?

5    A.    That's correct. That would have been as of October whatever the date of the affidavit.

7    Q.    I understand.

8    A.    Yes.

9    Q.    So it was 10 percent at that time.

So you'd be using 10 percent of 6 million --

12    A.    Yes.

13    Q.    -- for you?

14    A.    Yeah, so designated.

15    Q.    And then turning your attention to Page 6 of your affidavit where you list debts, No. 3 is Northern Trust securities, $5 million; is that right?

19    A.    Yes.

20    Q.    Is that the margin?

21    A.    That's the margin, yes.

22    Q.    But you never showed the full asset; do you?

24    A.    No. I guess the -- depending on how you

1    want to do the accounting, we could do a gross
2    asset and show the net here.  But I simply put in
3    the amount of debt that I owe is 5 million.
4         Q.    And you are an economist, sir?
5         A.    I'm an economist, not an accountant,
6    yes.
7         Q.    So you neglected to put down the gross
8    asset?
9         A.    Well, I -- the amount that I reported on
10   the other schedule was net of that, for that
11   particular account.
12        Q.    And it was double net because you also
13   allegedly deducted the amount that you think
14   belongs to Susan?
15        A.    Well, certainly, that's correct, yes.
16        Q.    You also have some stock that you know
17   sir, in an entity called Frontier?
18        A.    What page are you on?
19        Q.    It's on Page 7, under B.  You show Marsh
20   & McLennan stocks, Chevron Corporation, and
21   Frontier Corporation; is that right?
22        A.    Yes.
23        Q.    And are those whole numbers or are these
24   diluted numbers?  You think you own these entirely?

1   A.   Yeah.  These have not been diluted by
2   the 10 -- by the 90 percent.  These are the whole
3   amounts.
4   Q.   And with the exception of the Fidelity
5   stock that you did not include, this affidavit
6   would show all of your requirement and investment
7   accounts at least as to their identity; is that
8   correct?
9   A.   Yes, to the best of my knowledge as I
10  hit here.
11  Q.   And then I'm going to turn your
12  attention to Exhibit 15, if you would, Bates stamp
13  1856 and going forward, right?
14  A.   (No response.)
15  Q.   And I'm going to cross-reference you for
16  a minute to the valuable collectibles referenced at
17  Page 8 of your affidavit which says to be
18  determined?
19       Are these some of the valuables?
20  A.   Yes.  That would be correct.  These are
21  the sum of the valuables, more prominent ones.
22  Q.   And have you acquired other valuables
23  since then, since this affidavit?
24  A.   Not much since the affidavit, no, no.

*Pages Intentionally Omitted*