# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham**, | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

**SUPPLEMENTAL BRIEF IN SUPPORT OF THE MOTION OF WIPAPORN TEEKHUNGAM AND THE PARTIES' MINOR CHILDREN FOR RELIEF FROM STAY AND MOTION TO EXCUSE THE RECEIVER'S COMPLIANCE WITH § 543**

Two sources of evidence that this Court expressed interest in reviewing—the "notes" signed by Harlow N. Higinbotham (the "Debtor") in favor of his wife, Susan Higinbotham, and the transcript from the Debtor's § 341 meeting—further demonstrate that stay relief should be granted.

### 1. DISCUSSION.

#### 1.1. The "notes" signed by the Debtor in favor of his wife and the Debtor's testimony at the § 341 meeting show that he is not fit to be a fiduciary to his creditors.

A debtor-in-possession owes a fiduciary duty to his creditors. *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999). The documents attached to this brief—those detailing the alleged transactions between the Debtor and his wife, as well as the § 341 meeting transcript—show that the Debtor is not fit to carry out his fiduciary duties.

As the state court explicitly found after trial, the Debtor engaged in "an 'illusory' course of conduct designed to remove all of his assets from himself and transfer them to his wife, Susan" as part of "an effort to reduce his ability to pay child support." Judgment (attached to Reply (ECF No. 32) as Ex. D), at 13. The Debtor at first attempted to keep Teekhungam and the children a secret from Ms.

{00130487}

Higinbotham, but she found out about them around September 6, 2009. *See* Tr. of 341 Meeting (attached as Ex. A), at 62:25–63:3. Shortly after that, the Debtor and Ms. Higinbotham started a scheme to move assets out of the Debtor's name and into hers and to manufacture fake debts to Ms. Higinbotham. This scheme continued through the years as the Debtor waged his legal battle to avoid his obligations to Teekhungam and the children.

In a "promissory note" dated September 27, 2009, the Debtor promised to pay Ms. Higinbotham $4 million, at 15% interest, on demand, collateralized by "all of my art, stamps, coins, jewelry, and other tangible assets owned by me as well as 10,000 shares of ITW and future bonus income." Promissory Note (attached as Ex. B).[1]

The Debtor and Ms. Higinbotham later signed a handwritten document dated April 10, 2011, regarding "Formal Agreement on Division of Marital Assets." Document dated Apr. 10, 2011 (attached as Ex. C). In that document, the Debtor

> affirm[ed] the following:
>
> 1. A grant which is irrevocable of a 100% interest in the IRA at Fidelity which today is valued at approximately $1.28 million.
>
> 2. I pledge a cash gift of sufficient amount to bring the Higinbotham Capital account to $1.0 million, with interest commencing April 11, 2011 at a rate of 7.5%.
>
> 3. On payment, this will extinguish the $4 million outstanding note.
>
> 4. All future expenditures related to legal matters familiar to both of us will be matched in terms of cash payments to Susan and included as marital assets.

---

[1] Although Exhibits B to G indicate that they are "Confidential—Subject to Protective Order," the state court protective order was vacated on August 23, 2018.

> 5. All of the above payments to Susan will be Susan's sole exclusive property and not part of the marital estate.

*Id.*

The Debtor also signed a handwritten document dated April 13, 2011, regarding "Promissory Note to Susan Higinbotham dated on or about 9/15." Document dated Apr. 13, 2011 (attached as Ex. D). In that document, the Debtor "freely affirm[ed] that I owe Susan Higinbotham $4 million and unpaid interest at $50,000 per month since inception." *Id.*

The Debtor and Ms. Higinbotham also signed a handwritten document dated September 16, 2011. Document dated Sep. 16, 2011 (attached as Ex. E). In that document, the Debtor stated, "I hereby grant to Susan S. Higinbotham, my wife, all of my worldly possessions, in consideration of her countless hours of devotion to me and our family and her commitment to our marriage now and forever." *Id.*

The Debtor also signed a handwritten document dated April 8, 2013, regarding "Contract for Advice on Legal Matters." Document dated Apr. 8, 2013 (attached as Ex. F). Ms. Higinbotham is not a lawyer. In the document, the Debtor states:

> This will acknowledge the services that you have been rendering to me on various legal matters of great import to my reputation and future. In addition to the thousands of hours that you have invested in dealing with and managing my attorneys in the US and Thailand, you have provided key insights and invaluable guidance. In compensation for these services rendered, I hereby provide to you this promissory note for ten million US dollars (US $10,000,000) to be paid out of my current and future resources and funds.

*Id.* The $10 million was a "a number [Ms. Higinbotham] suggested and [the Debtor] agreed with." Ex. A, at 24:21–24. No money changed hands. *Id.* at 24:25–25:4.

The Debtor also provided what purports to be an accounting of the $4 million promissory note. *See* Spreadsheet (attached as Ex. G). The spreadsheet, though,

does not match the other documents that the Debtor provided, further calling into question the whole series of transactions. The spreadsheet tracks "principal increases" on the note, although the note itself does not provide for principal increases. The spreadsheet also tracks principal increases and "interest payments" between September 27, 2009, to April 5, 2018, even though the note was purportedly extinguished on or about April 10, 2011. The Debtor's "affirmation" of the note on April 13, 2011, does not account for the payments that the spreadsheet indicates that he made before that date. The spreadsheet does not mention the $10 million note at all.

Based on the spreadsheet, the Debtor used the "notes" to transfer more than $2.7 million to Ms. Higinbotham over the past nine years. Of that, he transferred about $2.2 million after supposedly transferring "all his worldly possessions" to her in September 2011.

The Debtor continued his charade in the state court proceeding, where he submitted a financial affidavit that was supposed to fully disclose all his assets. The Debtor, however, secretly listed only 10% of many assets' values. He diluted the values in this way because, he claimed, Ms. Higinbotham "owned" the other 90% of those assets. Trial Tr., June 22, 2018, (excerpts attached to Reply (ECF No. 32) as Ex. A) at 233:8–237:3.

Now, in this bankruptcy case, the Debtor claims he owns no property at all. At the § 341 meeting, the Debtor testified as follows:

> [Q]: … Sir, earlier we were talking about the value of the co-op in Chicago and there's value listed on the schedules, do you remember that?
>
> MR. HIGINBOTHAM: Yes.
>
> [Q]: Okay. And the value listed on the schedules is $1.3 million or so?
>
> MR. HIGINBOTHAM: The value that's on the schedule is $1.3 million, that's half.

{00130487}　　　　　　　　　　—4—

[Q]: That's half the value?

MR. HIGINBOTHAM: That's half the value, yes.

[Q]: So the other half is supposedly owned by Susan?

MR. HIGINBOTHAM: All of them by Susan, but I'm putting in half for disclosure purposes.

[Q]: When you say it's "all of them by Susan", what do you mean by that?

MR. HIGINBOTHAM: Because I've given her everything, but it's depending on how you want to count it. We're showing it as half.

[Q]: You've given her "everything", what do you mean by that?

MR. HIGINBOTHAM: Everything.

[Q]: All of your property?

MR. HIGINBOTHAM: Yes.

[Q]: You just gave it to her?

MR. HIGINBOTHAM: Yes.

[Q]: When?

MR. HIGINBOTHAM: I don't know the exact date. Within the last three years.

[Q]: Within the last two years?

MR. HIGINBOTHAM: I'd have to check schedules that I can look at. I can't from memory tell you something that I wouldn't want to have to contradict later.

[Q]: Was it within the last five years?

MR. HIGINBOTHAM: Yes.

[Q]: Why did you give her all your property?

MR. HIGINBOTHAM: To keep our marriage together.

[Q]: What do you mean by that?

MR. HIGINBOTHAM: Just something I needed to do.

[Q]: Was she threatening to divorce you?

MR. HIGINBOTHAM: I wouldn't put it that way, you know.

[Q]: Was she going to leave you?

MR. HIGINBOTHAM: I think I was concerned that she would, yes. I was—it wasn't in response to a specific statement on her part.

[Q]: So how did this come up? You just decided one day to give her everything?

MR. HIGINBOTHAM: Yes.

[Q]: And no event in particular prompted that?

MR. HIGINBOTHAM: That's correct.

…

[Q]: Okay. So even though Susan owns all of the property you once owned, you still listed all this stuff on your bankruptcy schedules?

MR. HIGINBOTHAM: Yes.

[Q]: Why is that?

MR. HIGINBOTHAM: It's for disclosure purposes to show everything that one might want to count.

[Q]: So by listing it on your bankruptcy schedules, you're not saying that you have an ownership in any of this property, is that what you're telling us today?

MR. HIGINBOTHAM: I'm informing you as to what property out there is an attachment to me. Whether it's ownership, I'll leave it up to the lawyers.

[Q]: So is it your position that you don't own any personal property?

MR. HIGINBOTHAM: Yes.

[Q]: Do you own any real estate?

> MR. HIGINBOTHAM: No. No. Excuse me, we are joint tenants in (inaudible) in the Joliet real estate, but, again, I've also given her everything, so I don't know….

Ex. A, at 38:15–42:2.

Whatever is on his bankruptcy schedules, and whatever his lawyers say, in this case, there is a debtor-in-possession—a decisionmaker, a fiduciary—who does not believe he owns his property. This belief, along with his pattern of hiding assets from his legitimate creditors, vexatiously litigating, and testifying evasively, make the Debtor singularly unfit to fulfill the fiduciary duties of a debtor-in-possession. For example, can creditors seriously rely on the Debtor to examine and object to Ms. Higinbotham's claim when he was part of the scheme to manufacture it? 11 U.S.C. § 704(a)(5) (made applicable by §§ 1106(a)(1), 1107(a)). For these reasons, among others detailed in prior filings by Teekhungam and the children, the motion for stay relief should be granted in full.

### 1.2. The Debtor bears the burden of proof and has not produced any evidence.

The Debtor bears the burden of proof on *all* issues related to the motion for stay relief filed by Teekhungam and the children. 11 U.S.C. § 362(g). That means the Debtor must present evidence that he filed this case in good faith and on each of the *Fernstrom* factors: that the Debtor or the estate will be harmed if the stay is lifted; that Teekhungam and the children will not be harmed if the stay is maintained; and that Teekhungam and the children are not likely to prevail on the merits of their claim. The Debtor has presented argument of counsel, but *no* evidence whatsoever. On this record, the motion for stay relief must be granted.

### 1.3. If the motion is not granted in full, some relief should be granted.

To the extent the Court does not grant full relief to Teekhungam and the children, there is some minimal relief that must be granted. Specifically, the Court should grant relief to allow the state court to rule on the pending motions for sanctions against the Debtor (both of which arise out of his conduct before the state

court), and then to allow the state court appeals to proceed. The state court's judgment will not become final, and the Debtor cannot pursue his appeals until the sanctions motions are resolved. The Debtor has stated that he wants to pursue his appeals so, at a minimum, relief should be granted to allow the sanctions motions and appeals to proceed.

**Wherefore**, Teekhungam and the children respectfully request that the Court terminate the automatic stay as to the child support proceeding and grant such further relief as is appropriate in the circumstances.

| | |
|---|---|
| Dated: January 7, 2019 | Respectfully submitted, |
| | **Wipaporn Teekhungam**, **A.H**, a minor, **A.H.**, a minor, and **A.H.**, a minor |
| | By: /s/ Jeffrey K. Paulsen<br>One of Their Attorneys |

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (847) 239-7248
Fax: (847) 574-8233
Email: wfactor@wfactorlaw.com
       dkebner@deborahebnerlaw.com
       jpaulsen@wfactorlaw.com

## CERTIFICATE OF SERVICE

I, Jeffrey K. Paulsen, an attorney, hereby certify that on January 7, 2019, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Reply* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below and by U.S. mail on all other persons identified on the Service List.

/s/ Jeffrey K. Paulsen

## SERVICE LIST

**Registrants**
(Service via ECF)

| | |
|---|---|
| Bianca E. Ciarroni | bciarroni@freeborn.com, bkdocketing@freeborn.com |
| Michael K. Desmond | mdesmond@fslegal.com, dorisbay@fslegal.com |
| Deborah K. Ebner | dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com, lizd@deborahebnerlaw.com |
| William J. Factor | wfactor@wfactorlaw.com, wfactorlaw@gmail.com, bharlow@wfactorlaw.com, wfactor@ecf.inforuptcy.com, wfactormyecfmail@gmail.com, factorwr43923@notify.bestcase.com |
| Shira R. Isenberg | sisenberg@freeborn.com, bkdocketing@freeborn.com. jhazdra@ecf.inforuptcy.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Jeffrey K. Paulsen | jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com, jpaulsen@ecf.inforuptcy.com |
| Nathan Q. Rugg | Nathan.Rugg@bfkn.com, jean.montgomery@bfkn.com |
| Gregory K. Stern | greg@gregstern.com, steve_horvath@ilnb.uscourts.gov |

**Non-Registrants**
(Service via FedEx Overnight)

Harlow N. Higinbotham
RD No. 2
2002 East Cass St.
Joliet, IL 60432