# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| In re: | Chapter 11 |
|---|---|
| **Harlow N. Higinbotham**, | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

## NOTICE OF MOTION

**Please take notice** that, on **January 31, 2019, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable LaShonda A. Hunt, United States Bankruptcy Judge for the Northern District of Illinois, in Courtroom 719 of the United States Courthouse, at 219 South Dearborn Street, Chicago, Illinois, to present the **Motion of Wipaporn Teekhungam and the Parties' Minor Children to Dismiss the Case**, a copy of which is included herewith and served upon you, at which time and place you may appear.

Dated: January 9, 2019

**Wipaporn Teekhungam**, **A.H**, a minor, **A.H.**, a minor, and **A.H.**, a minor

By: /s/ William J. Factor
One of Their Attorneys

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:    (847) 239-7248
Fax:    (847) 574-8233
Email: wfactor@wfactorlaw.com
       dkebner@deborahebnerlaw.com
       jpaulsen@wfactorlaw.com

{00130517 2}

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham**, | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

**MOTION OF WIPAPORN TEEKHUNGAM AND THE PARTIES'
MINOR CHILDREN TO DISMISS THE CASE**

This motion to dismiss requires the Court to decide whether a chapter 11 debtor that lies under oath repeatedly, devises and implements a scheme to conceal and dispose of assets to defraud his creditors, and files a bankruptcy case that serves no legitimate bankruptcy purpose and, in fact, corrupts the bankruptcy process, acts in bad faith within the meaning of §§ 1112(b) and 1129(a) and should have his case dismissed. Specifically, there can be no dispute that Harlow N. Higinbotham (the "Debtor") lied under oath about the property that he owns and that is property of the estate , colluded with his wife, Susan Higinbotham, to hide assets from his three children who were awarded child support, and admitted to filing this case solely to circumvent a state law that prohibits him from staying execution on a child support judgment; a judgment that he can afford to pay. This case is a textbook example of a bad faith filing, so it should be dismissed. .

### 1. BACKGROUND.

This case arises out of a long-running, multi-continental dispute over the failure of Harlow N. Higinbotham (the "Debtor") to pay child support to Wipaporn Teekhungam and the parties' ten-year-old triplets, A.H., A.H., and A.H.[1] The

---

[1] Teekhungam and the children presented additional details about the history of the dispute to this Court in the state court's post-trial judgment (attached as Ex. A) and

Debtor and Teekhungam met in Thailand in 2001. At the time, the Debtor was married to Susan Higinbotham. The Debtor and Teekhungam continued their relationship, eventually undergoing IVF treatment and having their triplet sons on November 5, 2008. The Debtor provided financial support for Teekhungam and the children during this period.

The Debtor attempted to keep Teekhungam and the children a secret from Ms. Higinbotham, but on or about September 6, 2009, she found out about them. That changed everything. At that point, the Debtor and Ms. Higinbotham began a decade-long scheme to deprive Teekhungam and the children of the financial support to which they were entitled.

After the Debtor stopped supporting the children, Teekhungam filed suit in Thailand for child support. Teekhungam won that suit, and the Debtor appealed all the way to the Supreme Court of Thailand, which affirmed. Despite this, the Debtor refused to comply with the Thai child support order, so Teekhungam registered the judgment in the Circuit Court of Cook County. The Debtor fought that effort too, lodging several appeals when the state court did not rule in his favor.

While the Chicago case proceeded, the Debtor filed a lawsuit in England (where Teekhungam had moved), claiming that Teekhungam had violated an agreement between the parties to keep their relationship private. The Debtor lost that lawsuit, appealed, and lost again. The Debtor also paid for his wife to sue the Debtor and Teekhungam in Thailand under a dissipation theory. Ms. Higinbotham lost that suit, too.

As this legal war played out, the Debtor and Ms. Higinbotham concocted and implemented a scheme to conceal assets and thus to make them unavailable to satisfy his child support obligations. As the Illinois state court later found after

---

in their motion for stay relief (ECF No. 10), reply (ECF No. 32), and supplemental brief (ECF No. 47).

trial, the Debtor engaged in "an 'illusory' course of conduct designed to remove all of his assets from himself and transfer them to his wife, Susan" as part of "an effort to reduce his ability to pay child support." Ex. A, at 13.

The scheme between Ms. Higinbotham and the Debtor has multiple elements and transactions. Among other things, the Debtor transferred a mansion in Joliet that he owned solely in his name into tenancy by the entirety. He gave half his shares in a multi-million-dollar Chicago cooperative to her. And he executed fake promissory notes in her favor, transferred millions of dollars to her, and purported to give her all of his property.

In a "promissory note" dated September 27, 2009, the Debtor promised to pay Ms. Higinbotham $4 million, at 15% interest, on demand, collateralized by "all of my art, stamps, coins, jewelry, and other tangible assets owned by me as well as 10,000 shares of ITW and future bonus income." Promissory Note (attached as Ex. B).[2]

The Debtor and Ms. Higinbotham later signed a handwritten document dated April 10, 2011, regarding "Formal Agreement on Division of Marital Assets." Document dated Apr. 10, 2011 (attached as Ex. C). In that document, the Debtor affirm[ed] the following:

1. A grant which is irrevocable of a 100% interest in the IRA at Fidelity which today is valued at approximately $1.28 million.

2. I pledge a cash gift of sufficient amount to bring the Higinbotham Capital account to $1.0 million, with interest commencing April 11, 2011 at a rate of 7.5%.

3. On payment, this will extinguish the $4 million outstanding note.

---

[2] Although Exhibits B to F and H indicate that they are "Confidential—Subject to Protective Order," the state court protective order was vacated on August 23, 2018.

  4. All future expenditures related to legal matters familiar to both of us will be matched in terms of cash payments to Susan and included as marital assets.

  5. All of the above payments to Susan will be Susan's sole exclusive property and not part of the marital estate.

*Id.*

  The Debtor also signed a handwritten document dated April 13, 2011, regarding "Promissory Note to Susan Higinbotham dated on or about 9/15." Document dated Apr. 13, 2011 (attached as Ex. D). In that document, the Debtor "freely affirm[ed] that I owe Susan Higinbotham $4 million and unpaid interest at $50,000 per month since inception." *Id.*

  The Debtor and Ms. Higinbotham also signed a handwritten document dated September 16, 2011. Document dated Sep. 16, 2011 (attached as Ex. E). In that document, the Debtor stated, "I hereby grant to Susan S. Higinbotham, my wife, all of my worldly possessions, in consideration of her countless hours of devotion to me and our family and her commitment to our marriage now and forever." *Id.*

  The Debtor also signed a handwritten document dated April 8, 2013, regarding "Contract for Advice on Legal Matters." Document dated Apr. 8, 2013 (attached as Ex. F). Ms. Higinbotham is not a lawyer. In the document, the Debtor states:

> This will acknowledge the services that you have been rendering to me on various legal matters of great import to my reputation and future. In addition to the thousands of hours that you have invested in dealing with and managing my attorneys in the US and Thailand, you have provided key insights and invaluable guidance. In compensation for these services rendered, I hereby provide to you this promissory note for ten million US dollars (US $10,000,000) to be paid out of my current and future resources and funds.

*Id.* The $10 million bore no relationship to anything relevant and instead was just "a number [Ms. Higinbotham] suggested and [the Debtor] agreed with." Transcript of § 341 Meeting (excerpts attached as Ex. G), at 24:21–24. No money changed hands. *Id.* at 24:25–25:4.

The Debtor also provided what purports to be an accounting of the $4 million promissory note. *See* Spreadsheet (attached as Ex. H). The spreadsheet, though, does not match the other documents that the Debtor provided, further calling into question the whole series of transactions. The spreadsheet tracks "principal increases" on the note, although the note itself does not provide for principal increases. The spreadsheet also tracks principal increases and "interest payments" from September 27, 2009, to April 5, 2018, even though the note was purportedly extinguished on or about April 10, 2011. The Debtor's "affirmation" of the note on April 13, 2011, does not account for the payments that the spreadsheet indicates that he made before that date. The spreadsheet does not mention the $10 million note at all.

Based on the spreadsheet, the Debtor used the "notes" to transfer more than $2.7 million to Ms. Higinbotham over the past nine years. Of that, he transferred about $2.2 million after supposedly transferring "all his worldly possessions" to her in September 2011.

The Debtor continued his charade in the state court proceeding, where he submitted a financial affidavit that was supposed to fully disclose all his assets. The Debtor, however, secretly listed only 10% of many assets' values. He diluted the values in this way because, he claimed, Ms. Higinbotham "owned" the other 90% of those assets. Trial Tr., June 22, 2018, (excerpts attached as Ex. I) at 233:8–237:3.

In June 2018, after years of litigation, the Illinois state court was able to hold a trial on modification of the child support obligation. On September 14, 2018, the state court entered a judgment in favor of Teekhungam and the children and

against the Debtor. Ex. A. Among other things, the state court made extensive findings about the Debtor's misconduct over the years, and it ordered the Debtor to pay $11,000 in support each month for each of the children and to fund a $1.5 million trust for each of the children. *Id.* at 15–16. On November 5, 2018, the state court fixed the amount of the past-due child support at $1,979,972.09, entered a money judgment against the Debtor, and provided a mechanism for enforcement of the judgment through the previously appointed receiver. Order (attached as Ex. J).

The Debtor filed this bankruptcy case just hours after entry of the November 5 order, with a stated purpose of staying that order. Four days later, Teekhungam and the children filed a motion for stay relief (ECF No. 10), seeking to terminate the stay with respect to the state court proceeding. The Debtor opposed that motion and, as of the filing of this motion, the Court has not ruled on it.

In the latest maneuver, on December 28, 2018, Ms. Higinbotham filed her own divorce petition. Apparently dissatisfied with the way this case is progressing, Ms. Higinbotham calculated that her best option is to create further chaos in this Court by introducing another legal proceeding and more lawyers into this dispute. The Debtor and Ms. Higinbotham have been in lockstep since September 2009, and there is no reason to think that the new divorce case is anything but another collusive attempt to thwart the rights of Teekhungam and the children.

This bankruptcy case is nothing more than an effort to delay and defeat the child support claim of Teekhungam and the children. The Debtor filed this case in bad faith, so it should be dismissed.

## 2. DISCUSSION

A chapter 11 case must be dismissed "for cause." 11 U.S.C. § 1112(b)(1). Cause is not defined in the Bankruptcy Code, but there are several grounds specifically enumerated in § 1112(b)(4). If cause is established, a party opposing relief must first specifically identify "unusual circumstances establishing that converting or

dismissing the case is not in the best interests of creditors and the estate." § 1112(b)(2). "Unusual circumstances" is not defined, but "contemplates conditions that are not common in most chapter 11 case." *In re Aurora Memory Care LLC*, 589 B.R. 631, 638 (Bankr. N.D. Ill. 2018). The opponent must also show that a plan is reasonably likely to be confirmed in a reasonable time. § 1112(b)(2)(A). And the opponent must show that it had a reasonable justification for the act or omission constituting cause and that the act or omission will be cured within a "reasonable period of time." § 1112(b)(2)(B).

Here, cause exists to dismiss this case because the debtor filed it in bad faith, and dismissal it must be, especially in light of Ms. Higinbotham's recent state court antics.

### 2.1. The case should be dismissed because the Debtor filed it in bad faith.

"Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith, and the burden is on the bankruptcy petitioner to establish that its petition has been filed in good faith." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004).

According to Collier's, there are numerous circumstances that constitute bad faith.

> Although the application of the standard necessarily turns on the totality of the circumstances of each individual case, situation in which good faith have bene found to be lacking include those involving (1) filing of false or misleading information, (2) use of bankruptcy as a vehicle to defraud others, (3) the persistent failure to comply with applicable court orders, rules, or procedures (4) use of the bankruptcy process to escape familial obligations, (5) the secretion of property and other efforts to avoid the disclosure of assets, (6) use of the bankruptcy system simply to avoid the consequences of prior misconduct, (7) the filing of a case to avoid an obligation

> under circumstances in which the debtor is not in need of reorganization, (8) the absence of legitimate debt, (9) the absence of any likelihood of rehabilitation, (10) use of bankruptcy as a vehicle to resolve disputes solely between two parties [and] (11) use of the bankruptcy process merely to frustrate the rights of creditors (particularly with respect to single asset cases) or to coerce unfair treatment ….

Collier on Bankruptcy ¶ 1112.07[2] (collecting cases). "In situations like these, although the debtor or some other party might in many instances otherwise proceed to formulate a plan of reorganization, continuing the process is thought to constitute a perversion of the reorganization laws and the court may terminate the proceedings to prevent the abuse." *Id.*

In addition to the above factors, a chapter 11 case is filed in bad faith when the debtor files it to get a free stay pending appeal of a judgment he has the ability to satisfy. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828–29 (9th Cir. 1994). "If the debtor's only purpose for filing the case is to delay (or defeat) a single judgment creditor, and the case has little or no ability to benefit the creditor body as a whole, then the debtor has not filed the Chapter 11 in good faith." *In re Liptak*, 304 B.R. 820, 836–37 (Bankr. N.D. Ill. 2004). *See also In re Schwartz*, 799 F.3d 760, 764 (7th Cir. 2015) (affirming dismissal of chapter 7 case for cause based on "an unjustified refusal to pay one's debts"); *In re Garzon*, 2018 Bankr. LEXIS 3818, at *13–14 (Bankr. N.D. Ill. Dec. 3, 2018) (finding bad faith when debtor filed chapter 13 case "to gain the benefit of the automatic stay, postpone payment of the debt to his ex-wife, and, if he plays his bankruptcy cards right, never pay the debt at all").

Obtaining the protection of the automatic stay cannot be the only purpose of a bankruptcy case. *Garzon*, 2018 Bankr. LEXIS 3818, at *13–14 (*citing In re Tabor*, 583 B.R. 155, 183 (Bankr. N.D. Ill. 2018)); *In re Carrera*, 2016 Bankr. LEXIS 3020, at *22 (B.A.P. 9th Cir. Aug. 16, 2016), *aff'd sub nom. In re Vizconde*, 715 Fed. Appx. 630 (9th Cir. Nov. 29, 2017) (affirming a bankruptcy court's sanctions under

Rule 9011 where a case was filed "'just to buy time to cut a deal,' which the court noted was 'not a proper purpose for filing a bankruptcy case'"); *In re Prometheus Health Imaging, Inc.*, 2015 Bankr. LEXIS 3743, at *15 (B.A.P. 9th Cir. Nov. 2, 2015) ("abuse of the automatic stay or use of other litigation tactics unrelated to reorganization can constitute bad faith").

This case ticks off multiple bad-faith factors.

### 2.1.1. *The Debtor made false and misleading statements under oath.*

Most importantly, the Debtor has made false and misleading statements under oath about the property of the estate. On Schedule A/B, the Debtor was required to list all the assets he owned. Am. Schedules, ECF No. 34, at 1–9. On that schedule, which the Debtor signed under penalty of perjury, the Debtor listed many assets, with a disclosed value of $20,641,520.05. *Id.* But at the § 341 meeting, the Debtor admitted that he disclosed only half of the value of many of the assets. Ex. G at 38:19–39:8. He testified that he listed the assets only "for disclosure purposes," "to inform [parties] as to what property out there is an attachment to me." Ex. G, at 38:25–39:3, 41:18–19. In fact, he claims, he gave all his property to his wife. *Id.* at 39:9–15. He believes that he does not own any personal property and may not own any real property:

> [Q]: So is it your position that you don't own any personal property?
> [A]: Yes.
> [Q]: Do you own any real estate?
> [A]: No. No. Excuse me, we are joint tenants in (inaudible) in the Joliet real estate, but, again, I've also given her everything, so I don't know ….

Ex. G, 41:21–42:2.

These inconsistent statements are part of a pattern: in a statement under oath in state court, he disclosed just 10% of many assets' values to mislead the state court about the scope of his property.

That the Debtor made these false and misleading statement under oath is alone grounds for dismissal, if not worse. But they also show how the Debtor has painted himself into the proverbial corner on the bad faith calculus. If, on one hand, the Debtor really does not own any property, then he has no hope of confirming a chapter 11 plan. Among other problems, he must pay the $6,479,972.09 domestic support obligation he owes to Teekhungam and the children in full on the effective date of any plan. 11 U.S.C. §§ 1129(b)(9)(B), 507(a)(1)(A). With no assets, that is an impossible task.

Conversely, if the full value of the Debtor's assets is considered, there is more than enough to satisfy his child support obligations and still repay his wife and the family trusts (if they are even legitimate creditors). In that event, there would be no need for a bankruptcy proceeding. In either case, the bankruptcy case should be dismissed.

> 2.1.2. *The Debtor is using this case as a vehicle to escape familial obligations and to further his scheme to hide assets from child support creditors.*

As described above and in the state court's September 14 judgment, the Debtor has been engaged in a scheme with his wife since 2009 to remove assets from his name and into hers for the purposes of reducing his ability to pay child support. The Debtor has attempted to transfer everything—from the Joliet mansion, to his brokerage accounts, to "all his worldly possessions"—to Ms. Higinbotham. He has continued this scheme in this case by failing to report the true value of his assets and by claiming he does not own any assets at all. This is not a valid use of bankruptcy, so the case should be dismissed.

### 2.1.3. The Debtor is attempting to avoid the consequences of his prior misconduct.

During the state court proceeding, the Debtor violated a protective order and submitted a false financial affidavit, and Teekhungam and the children are seeking sanctions against him for that misconduct. *See* Mot. for Sanctions (attached as Ex. K); Mot. to Vacate (attached as Ex. L), at 5–8. These motions must be resolved before the state court judgment on child support can be appealed. The Debtor, however, wants the appeals to proceed, but not the sanctions motions, which he thinks "should be resolved through the claims process in the Chapter 11 case." Resp., ECF No. 26, ¶ 27. But the Debtor is seriously misguided on this issue, as the Seventh Circuit has held:

> A litigant should not be allowed to delay the imposition of sanctions indefinitely by the expedient of declaring bankruptcy. Allowing him to do so would not only increase the number of bankruptcy filings but also create incentives for unprofessional conduct in litigation by firms or individuals teetering on the edge of the bankruptcy abyss.

*Alpern v. Leib*, 11 F.3d 689, 690 (7th Cir. 1993) (finding Rule 11 motions excepted from automatic stay under police-power exception of § 362(b)(4)).

By filing this case, the Debtor is attempting to avoid state court sanctioning him for his misconduct. He cannot do that by filing for bankruptcy, so for this reason, too, the case should be dismissed. *Id.*

### 2.1.4. The Debtor's main non-support claims are not legitimate.

The Debtor has one secured debt, and supposedly owes some legal fees and has a few thousand dollars of credit card debt. But other than those, the only real creditors in this case are Teekhungam and the children. As explained above and in the state court's September 14 judgment, the Debtor and his wife manufactured the debt to the wife merely to try to reduce his ability to pay child support. The debt is not legitimate and is not cause for a bankruptcy filing.

The Debtor also schedules multi-million-dollar debts to two family trusts of which he is the trustee and a residual beneficiary. The other beneficiaries of the trusts are the Debtor's siblings. On information and belief, the Debtor "borrowed" the portion of the trusts that he would eventually receive. Cutting through the form of the transaction, that means that any repayment of the "debt" would be a repayment to himself. Again, these are not debts that needs to be addressed with a bankruptcy filing.

Because the Debtor has no significant legitimate debts other than the domestic support obligation to Teekhungam and the children, this case is not filed in good faith and should be dismissed.

### 2.1.5. *The Debtor is using the bankruptcy process to circumvent Illinois law, to frustrate the rights of Teekhungam and the children, and to coerce unfair treatment.*

The legislature of the State of Illinois has determined that child support orders are never stayed pending appeal. "An order requiring maintenance or support of … a minor child or children … shall not be suspended or the enforcement thereof stayed pending the filing and resolution of post-judgment motions or an appeal." 750 Ill. Comp. Stat. 5/413(a). A party is therefore foreclosed from seeking a stay pending appeal of any order or judgment of child support. *In re Marriage of Ackerley*, 775 N.E.2d 1045, 1061 (Ill. App. Ct. 2002). Also, a case is filed in bad faith when the debtor files a bankruptcy petition to get a free stay pending appeal of a judgment he has the ability to satisfy. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828–29 (9th Cir. 1994). This is especially so when its sole purpose is to circumvent a state law that prohibits a stay of a domestic support obligation. *See In re Garzon*, 2018 Bankr. LEXIS 3818, at *13–14 (Bankr. N.D. Ill. Dec. 3, 2018).

Teekhungam and the children have the right to immediate enforcement of their judgments against the Debtor. The Debtor filed this case for the express purpose of obtaining the stay pending appeal that Illinois law explicitly denies him,

frustrating the rights of Teekhungam and the children. He can afford to pay the judgment as he is required by law to do, but instead the Debtor fled to bankruptcy court to stall in hopes that he may never have to pay. This is not good faith, and the case should be dismissed.

**2.2. Dismissal is in the best interests of creditors and the estate.**

If cause is established, a court may dismiss, convert the case to chapter 7, or appoint a chapter 11 trust, whichever is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1).

Here, dismissal is the appropriate action. As discussed above, there is no bankruptcy purpose to the case. The Debtor has only one real, significant creditor, and could satisfy his real obligations outside of bankruptcy. Keeping this case in bankruptcy will serve only to increase administrative expenses, as a trustee and her lawyers will undoubtedly incur fees and costs. The bankruptcy case will undoubtedly be long and contentious, especially now that Ms. Higinbotham has filed a divorce.

Dismissal, in contrast, will allow for a more rapid resolution of the parties' disputes. The state court has already established a mechanism for Teekhungam and the children to enforce their judgment: the third-party receiver will in short order take control of a portion of the Debtor's assets and direct them according to the court's instructions. Once that is done, the Debtor can focus on his remaining debts, if any, without the parties incurring more and more fees on this years-long legal morass. Dismissal is, therefore, the quickest and most efficient way to resolve the claims against the Debtor.

Bankruptcy relief is reserved for honest but unfortunate debtors. Harlow N. Higinbotham is not one of them. He filed this case in bad faith, without any ability or need to confirm a plan, and he cannot be trusted to manage the estate.
**Wherefore**, Teekhungam and the children respectfully request that the Court

dismiss this case and grant such further relief as is appropriate in the circumstances.

Dated: January 9, 2019

Respectfully submitted,

**Wipaporn Teekhungam**, **A.H**, a minor, **A.H.**, a minor, and **A.H.**, a minor

By: /s/ William J. Factor
One of Their Attorneys

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel:   (847) 239-7248
Fax:   (847) 574-8233
Email: wfactor@wfactorlaw.com
       dkebner@deborahebnerlaw.com
       jpaulsen@wfactorlaw.com