IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HARLOW N. HIGINBOTHAM, | ) | Case No. 18 B 31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |

**RESPONSE IN OPPOSITION TO MOTION OF WIPAPORN TEEKHUNGAM'S AND THE PARTIES' MINOR CHILDREN TO DISMISS CASE**

NOW COMES Harlow N. Higinbotham, Debtor and Debtor in Possession, by and through his attorneys, Gregory K. Stern, Dennis E. Quaid, Monica C. O'Brien, and Rachel S. Sandler, and in support of his Response In Opposition To Motion Of Wipaporn Teekhungam And The Parties' Minor Children To Dismiss Case (the "Response"), states as follows:

**I.     Introduction**

1.     There exist no facts to support a finding that the Debtor's Chapter 11 case was filed in bad faith. In the Motion of Wipaporn Teekhungam and the Parties' Minor Children[1] for Relief from Stay (the "Motion"), it is not surprising or unexpected that the Support Creditors' primary focus is on the history of the state court litigation. However, that history is just one of the many factors that are considered in determining whether a case has been filed in good faith.

2.     As was previously stated to this Court, the filing of the instant case was necessary to accomplish the following: **(a)** liquidate the amounts due the Support Creditors as determined by final and non-appealable orders; **(b)** allow the Debtor time to propose a plan of reorganization to pay the Support Creditors and his other creditors from a variety of sources including, but not limited to, the liquidation of estate assets and cash flow from wages and other sources; and **(c)** preserve the assets of the estate until such

---

[1] Wipaporn Teekhungam ("Teekhungam") and the Parties' Minor Children shall be collectively referred to the "Support Creditors."

time as the State Court can issue final orders and an appellate court can review and address the State Court's reversible errors contained in the September 14, 2018 Judgment (the "Judgment").

3. The filing of the instant case is not a part of a scheme or collusion by and/or between the Debtor and Susan Higinbotham ("Susan") and the actions of the Debtor since the filing of the case belie that conclusion. The Debtor's filing of this case was necessary to pursue the above stated goals and a review and analysis of the totality of the circumstances demonstrates that the filing of this case was in good faith.

4. Even if this Court determines that "cause" exists to dismiss this case under 11 U.S.C. §1112(b)(1), the Debtor can demonstrate that dismissal is not warranted under §1112(b)(2) because it is not in the best interest of creditors or the estate; there exists a reasonable likelihood that the Debtor can propose a feasible plan; and none of the enumerated acts under 11 U.S.C. §1112(b)(4)(A) are the basis for finding that cause exits in this case.

5. The Debtor has legitimate reorganizational goals that could only be accomplished through the filing of a Chapter 11 case and should be afforded the opportunity to proceed with the instant case.

## II.    Applicable Case Law

6. Conversion or dismissal is a "drastic measure" and the movant bears the burden of proving that the relief requested is "warranted and not premature." *In re Bovino*, 496 B.R. 492, 499 (Bankr. N.D. Ill. 2013) *citing In re Draiman*, 450 B.R. 777, 826 (Bankr.N.D.Ill.2011).

7. When determining whether to dismiss or convert a case under § 1112, a court is required to apply a burden shifting analysis. *In re Aurora Memory Care, LLC,* 589 B.R. 631, 637 (Bankr. N.D. Ill. 2018) Under that analysis, the moving party bears the initial burden to establish "cause" by a preponderance of the evidence. *In re Woodbrook Assocs.,* 19 F.3d 312, 317 (7th Cir.1994). Once the movant shows "cause," the burden shifts to the debtor to establish the exceptions in § 1112(b)(2). In re Bovino, 496 B.R. at 499

8. While good faith is not a statutory requirement for the filing of a Chapter 11 petition, courts

2

in this Circuit have found that the lack of good faith can constitute "cause" for dismissal of a case under section 1112(b). *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir.1984); *In re Tekena USA, LLC*, 419 B.R. 341, 346 (Bankr.N.D.Ill.2009) (Cox, J.). As with intent, courts look at each bankruptcy filing on a case-by-case basis to determine whether factors indicative of a debtor's good or bad faith are present. *See Tekena USA, LLC*, 419 B.R. at 346; *In re South Beach Securities, Inc.*, 341 B.R. 853, 857 (N.D.Ill.2006) (*citing In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir.2004)) ("Each bankruptcy petition, however, arises under different circumstances and raises particular concerns, requiring a court to examine the debtor's unique situation to determine where 'a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.'").

9. A determination of bad faith in filing a bankruptcy case is made by considering the totality of the circumstances by examining both objective and subjective factors. *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 447 (Bankr. N.D. Ill. 2009); *In re Original IFPC Shareholders, Inc.*, 317 B.R. 738, 750 (Bankr.N.D.Ill.2004). While Congress has provided no assistance as to what factors constitute bad faith, the courts examining the issue have considered varying factors. In *In re South Beach Securities, Inc.*, in determining whether a chapter 11 petition was filed in bad faith, the court considered whether: 1) [T]he debtor has any assets; 2) the debtor has recently transferred assets; 3) the debtor has any employees; 4) the debtor has any cash flow to sustain reorganization; 5) the debtor has any chance of confirming a reorganization plan; 6) the debtor and one of its creditors have reached a standstill in state court litigation; 7) the debtor is trying to delay its creditors or reduce their rights; 8) there are allegations of wrongdoing by the debtor or its principals; or 9) bankruptcy offers the only possibility of preventing the loss of property. 341 B.R. at 856–57.

10. In analyzing a case for bad faith, "courts must be mindful of, and attempt to preserve, the balance of interests fashioned by Congress under Chapter 11 of the Bankruptcy Code, including a policy

of open access to the bankruptcy process. . . . [and] be careful not to deny the protection of the Bankruptcy Code to a debtor whose legitimate efforts at financial rehabilitation may be hidden among derivative benefits (such as the delay of creditors resulting from the automatic stay) that, if viewed alone, might suggest bad faith." *In Matter of Strug-Div., LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007)(citations omitted).

11. In cases where the court finds "cause" to dismiss a Chapter 11 case, 11 U.S.C. §1112(b)(2) limits the court's ability to dismiss that case. Specifically, 11 U.S.C. §1112(b)(2) provides that the court may not dismiss a case under this chapter if (*i*) it "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" and (*ii*) "the debtor or any other party in interest establishes

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
> > (i) for which there exists a reasonable justification for the act or omission; and
> > (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

### IV.     The Debtor's Chapter 11 Case Was Filed in Good Faith

12. In analyzing the factors set forth in the *South Beach* case, the majority of the factors weigh in favor of finding that the instant case was filed in good faith.

13. The first two elements weigh in favor of a finding good faith as the Debtor has substantial assets and has not made any recent transfers, except as set forth herein. The Debtor's Schedules reflect assets totaling $20,641,520.05 and his Statement of Affairs reflect that, with the exception of payments to third party creditors in the 90 days prior to the filing of this case and the transfer of assets in July and August 2018 in the amount of $1,750,000.00 to fund the 503(g) trust and the payment of $150,000.00 to the Receiver in the State Court litigation, the Debtor has made no other recent transfers.

4

14. The third factor is not applicable because the Debtor does not have employees and the fourth and fifth element weigh in favor of finding good faith because the Debtor has sufficient cash flow to fund and sustain a reorganization and there exists a strong likelihood of confirming a plan of reorganization.

15. As of the filing of the instant case, the Debtor had in 2018 received wages from his employment in the amount of $1,075,643.56. In addition to his wages, the Debtor received minimum required distributions from his IRAs totally $56,103.14 and $60,599.38[2], respectively, and annuity and pension payments totaling $23,519.93. This case flow is sufficient to sustain a reorganization.

16. The Debtor is able to propose a feasible plan of reorganization. The key test of good faith in Chapter 11 is whether the debtor has proposed or can propose a legally and economically feasible plan of reorganization. *See, Marsh v. Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) ("The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis."). In determining feasibility, a plan proponent is not required to show that the plan is guaranteed to succeed. *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 961–62 (7th Cir. 1997). Rather, a reasonable assurance of commercial viability is required. *Id*. Based upon the Debtor's multiple sources of income, and his ability to liquidate assets, given sufficient marketing time, the Debtor meets the feasibility test.

17. The Debtor is not attempting to deter or harass the Support Creditors and his actions since filing this case belie that conclusion. The Debtor is aware that his ability to confirm a plan of reorganization depends upon his ability to provide for the payment of the claim of the Support Creditors, in full, of the effective date. See, 11 U.S.C. §1129(a)(B)(ii). In that regard, the Debtor has already liquidated substantial assets and continues that pursuit. These monies will be available to fund the

---

[2] Payment received after the filing of the Petition but prior to 12/31/2018.

administration of this case and the repayment of creditors through a plan of reorganization. Accordingly, there is a strong likelihood that any plan of reorganization filed by the Debtor will be confirmed by this Court.

18. The Debtor admits that the sixth, seventh and eight factors may possibly weigh against him in a bad faith analysis. The Debtor filed the instant case on the same day that the State Court entered the Judgment against him. However, large judgments are a common reason for filing for chapter 11 bankruptcy protection. *See, In re Dilling*, 322 B.R. 353, 362 (Bankr.N.D.Ill.2005) ("Indeed, filing a chapter 11 case because of one large judgment is not at all unusual.")

19. The filing of this case may delay the payments to creditors, but it will not reduce their rights. With respect to the Support Creditors claim, the Debtor is paying current support in the amount of $33,000.00 per month and will be providing adequate protection in accordance with the Order Granting in Part Motion of Wipaporn Teekhungam and the Parties' Minor Children for Relief from Stay (the "Adequate Protection Order"). These ongoing payments and adequate protection serve to protect the interests of the Support Creditors while affording the Debtor the opportunity to proceed with the Chapter 11 process and the filing of a plan of reorganization.

20. With regards to the eighth element, while the Support Creditors allege wrongdoing by the Debtor, including allegations of collusion, concealment of assets, and lying under oath, as discussed more fully below, none of these allegations are supported by the facts. More importantly, there exists no evidence of any wrongdoing by the Debtor as Debtor in Possession herein. Rather, the Debtor has complied with all of his duties and obligations as Debtor in Possession. The Debtor is aware of his fiduciary responsibility to all of his creditors and has wholly complied with that obligation and is best suited to manage this bankruptcy estate. The Debtor's Schedules and Statement of Financial Affairs were timely filed; he appeared and provided testimony at his initial debtor interview and meeting of creditors;

proof of insurance was provided to the United States Trustee; all documents requested by the United States Trustee have been produced to the United States Trustee by the Debtor; a Debtor in Possession account was established; and, monthly operating reports have been filed with the Court.  All of these actions by the Debtor demonstrate that he is acting in good faith in the filing of this Chapter 11 case and the undertaking of his responsibilities as Debtor in Possession.

21. The ninth element weighs in favor of the Debtor as the filing of this case was the only possibility to avoid the Receiver's costly and time consuming liquidation of not only his cash and cash equivalents but also other assets that would have necessarily involved costly and time consuming litigation seeking to force the sale of jointly owned real and personal property.  Another circumstance relevant to whether a bankruptcy case was filed in good faith is whether the filing was necessary. *In re N.R. Guaranteed Ret., Inc.*, 112 B.R. 263, 272 (Bankr.N.D.Ill.1990).

22. The procedural posture of the State Court litigation placed the Debtor in an untenable position.  Despite a motion and repeated requests by the Debtor's attorneys, the State Court has refused to make a finding pursuant to Supreme Court Rule 304(a) which would permit both the enforcement and appeal of the Judgment.

23. Notwithstanding this refusal, the State Court entered the November 5, 2018 Order which authorized and directed the Receiver to collect the entirety of the Retroactive Support Award[3] from the Debtor's assets, violating Supreme Court Rule 304(a) and the controlling Illinois authorities, and placing the Debtor in a position where the Judgment was being enforced against him even though he had no right to appeal the judgment due to the pending and unresolved Motion(s) for Sanctions[4] pending against him.

---

[3] "Retroactive Support Award" shall refer to the $1,979,972.09 retroactive child support arrearage figure confirmed in the November 5, 2018 Order.

[4] The hearing for ruling on the Sanctions Motions scheduled for February 5, 2019, has been continued once again by the State Court and an additional Sanctions Motion has been filed by the Support Creditors

24. The State Court committed reversible error when it improperly assumed jurisdiction to modify the Thailand Judgment and incorrectly calculated the amount of support due to the Support Creditors. *See* 750 ILCS 22/615 (West 2018). The Debtor should not be denied the ability to address these errors through an appeal but the State Court because of its delay is effectively denying him that right.

25. The timing of the Debtor's Chapter 11 filing was a consequence and in direct response to the State Court's orders to enforce the Retroactive Support Award while refusing to make the requisite 304(a) findings necessary to render the Judgment both appealable and enforceable and the Debtor's inability to fund the Retroactive Support Award immediately. The Debtor thus was denied not only the ability to file a notice of appeal through the normal process, but also the ability to orderly liquidate assets to the pay the Judgment. Consequently, like many debtors faced with losing their property, this Debtor sought relief and the imposition of the automatic stay afforded by the Bankruptcy Code.

26. Based on the totality of the circumstances surrounding the filing of the instant case, this Court should find that the Chapter 11 case was filed in good faith and deny the Support Creditors' Motion.

### V. The Support Creditors' Allegations of Bad Faith Are Not Supported By the Facts of This Case.

27. The Support Creditors' Motion relies on the following five (5) arguments to support their allegations of bad faith: (a) the Debtor made false and misleading statements under oath regarding his assets; (b) the Debtor is using the Chapter 11 to avoid his familial obligations and to hide assets from the Support Creditors; (c) the Debtor is attempting to avoid the consequences of his prior misconduct; (d) the Debtor has no other legitimate creditors other than the Support Creditors; and (e) the Debtor is using the bankruptcy process to frustrate the rights of the Support Creditors and coerce an unfair treatment of their claim.

28. The Support Creditors allegations that the Debtor does not own any assets is absurd and directly contradicted by the Schedules A/B filed in this case. The Debtor's responses to questions posed to

8

him at his §341 meeting wherein he states that he gave all of his property to his wife, were based upon a mistaken belief that promises and agreements between himself and his wife made years before the filing of this case were valid and enforceable, especially in the context of a bankruptcy. Neither the Debtor nor his wife are lawyers and they cannot be faulted for not understanding contract law. It is therefore incumbent upon the Debtor's attorney to explain and clarify what transactions are or are not valid and legally enforceable. That is what occurred in this case. Notwithstanding the Debtor's belief regarding his prior promises made to his wife, Susan, he accurately and completely disclosed all of his assets in his Schedules. If the Support Creditors' theory that the Debtor and Susan are engaging in a scheme of collusion and concealment was valid, the Debtor's Schedule A/B would be blank and reflect that the Debtor has no interest in any assets. This did not happen in this case. The fact that the Debtor provided a complete and accurate disclosure of all of his assets serves to prove the falsity of the Support Creditors allegations that the Debtor made false and misleading statements under oath.

29.    Moreover, the Support Creditors' have conveniently failed to attach the portion of the §341 transcript where the attorney for the United States Trustee asked whether creditors could rely upon the disclosures made in Schedules A/B which was answered in the affirmative. Rather, the Support Creditors only attach a portion of the transcript that supports their position but fails to provide this Court with a complete version and understanding of the Debtor's testimony at the §341 meeting.

30.    The Support Creditors' allegation that the Debtor failed to accurately disclose the value of his assets is equally false and troubling, particularly since the attorneys for the Support Creditors regularly represent debtors before this Court and one is a long time member of the interim panel of Chapter 7 trustees in this District. The Debtor assumes that they are more than familiar with and versed in the of the official forms used in this District. On Schedule A/B, with respect to each asset, the form specifically requires the Debtor to disclose the "[c]urrent value of the portion you own?" Unfortunately, the printed form does not

reflect which assets are held jointly or individually. However, in this case, at the §341 meeting, the attorney for the United States Trustee went line by line through the Schedule A/B filed by the Debtor and the Debtor identified which assets were owned jointly or individually. To the extent that the Debtor admitted that "he disclosed only half of the value of many of the assets," he was referring to the assets that he owned jointly with Susan or other third parties wherein he was only required to disclose the value of his fifty per cent (50%) interest. The Support Creditors' position demonstrates either a lack of understanding of the reporting requirements or a deliberate strategy to misstate the facts in an attempt to support a theory that is factually and legally insufficient. There exists no evidence whatsoever to support the allegations that the Debtor has made false or misleading statements under oath in this case and the Support Creditors' arguments to the contrary should not be considered by this Court.

31. The Support Creditors rely on the Debtor's prior promises, agreements, transfers and payments to Susan to support their argument that the Debtor is using this case to avoid his obligation to the Support Creditors and hide assets from them. The Support Creditors' attack of the Debtor's financial transactions with Susan is a red-herring, without legal support, and intended to leave this Court with the impression that the Debtor has and continues to engage in collusion and fraud with Susan. Firstly, the Debtor did not make any payments or transfers to Susan since April 2018. Secondly, and more importantly, the Support Creditors' argument fails because unless the Debtor was insolvent or became insolvent as a result of his transactions with Susan, no payment or transfer to Susan is actionable or recoverable under 11 U.S.C. §§547 and 548. The Support Creditors have vehemently argued to this Court that the Debtor is solvent. To support their theory that this case was filed in bad faith, they argue that the Debtor has sufficient assets "to satisfy his child support obligations and still repay his wife and the family trusts (if they are even legitimate creditors." Motion, Page 10. So the real question becomes, how are the Debtor's transactions with Susan relevant to a consideration of whether this case was filed in bad faith.

The answer is that they are not.

32.     Moreover, if it is ever determined or established that the Debtor was insolvent prior to filing or at the time of relevant payments and/or transfers to Susan, the Debtor will seek the recovery of same either by agreement or through the filing of an adversary proceeding to seek a determination that Susan was the recipient of a preferential payment or a fraudulent transfer actionable and recoverable under 11 U.S.C. §§547 and 548,

33.     The claims of Susan will be treated similarly to all other claims filed in this case. She is required to file a proof of claim setting forth the basis of any unsecured claim against the Debtor. If she is asserting a secured claim against assets of the estate, then she will be required to provide documents supporting the perfection of that security interest. If she fails to provide the requisite support for her claim(s) against the Debtor, the validity of her claim will be resolved by this Court through the claim objection process.

34.     The Debtor did not file the instant case to avoid an adverse ruling on the Support Creditors' sanction motion(s) pending in the State Court litigation. The Debtor has never tried to avoid a ruling on whether the Support Creditors are entitled to sanctions against the Debtor, although the Debtor disputes that they are entitled to sanctions. Rather, this issue was raised in the Debtor's response to the Support Creditors' request for relief from the automatic stay wherein the Debtor questioned whether proceeding with that action constituted a violation of the automatic. Again, the Support Creditors are misstating and mischaracterizing the facts.

35.     There are other creditors in this case besides the Support Creditors and the allegations that the Debtor has "no significant legitimate debts" other than to the Support Creditors is false. Excluding the Support Creditors and debts owed to insiders, including Susan and the E.D. Higinbotham Trust and the H.N. Higinbotham Trust, the Debtor's Schedules reflect secured debts totaling $5,575,666.18 and unsecured debts

totaling $445,322.96. These numbers are significant and represent legitimate debts owed by the Debtor.

36. Given the substantial amounts of attorneys' fees incurred and being incurred by the Support Creditors, including the Guardian Ad Litem and the Receiver, all of which have already been paid by the Debtor, in full, it is incredulous that the Support Creditors would challenge the validity and legitimacy of the attorneys' fees incurred and owed by the Debtor for representation in the State Court litigation.

37. There exist other claimants and interests besides those of the Support Creditors that must be considered in determining whether bad faith exists. Bad faith is not found solely because the debtor has one or a small body of creditors since filing a chapter 11 case after falling on the wrong side of a judgment is not uncommon. *See, In re Dilling*, 322 B.R. at 362 (Bankr.N.D.Ill.2005)(*citing In re Texaco, Inc.*, 254 B.R. 536, 541 (Bankr.S.D.N.Y.2000), where a debtor filed for chapter 11 bankruptcy solely to compromise a $10.5 billion judgment).

38. Finally, the Debtor is not using the filing of this case to frustrate the rights of the Support Creditors or coerce the unfair treatment of their claim. Firstly, the Support Creditors have been receiving current support payments in the amount of $33,000.00 each month from the 503G Trust established for their benefit and support. Secondly, this Court entered its Adequate Protection Order, dated January 10, 2019 (Docket No. 55) wherein the Debtor is required to provide adequate protection in the amount of $2,000,000.00 and obtain life insurance policies in the amount $1,000,000.00 for each of the three minor children with proof of payment of the full annual premium for said policies. This adequate protection being provided to the Support Creditors provides more than sufficient assurances that their interests are being protected during the pendency of this case.

39. There is also no factual basis to support the conclusion that the filing of this case was intended to coerce the unfair treatment of the Support Creditors' claim. 11 U.S.C. §1129(a)(B)(ii) specifically provides that in order to confirm a plan, the Debtor must provide for the payment of the claim of the Support Creditors

in "cash on the effective date of the plan equal to the allowed amount of such claim." Consequently, there is no possibility of the Debtor forcing any type of unfair treatment of the Support Creditors' claim as the Code doesn't allow any other treatment.

40. The Support Creditors have demonstrated that they are prepared to fight and oppose the Debtor's every action in this case and are willing to misstate and mischaracterize the facts to achieve that goal. None of the allegations raised by the Support Creditors support a finding that this case was filed in bad faith, they have failed to meet their burden of establishing that "cause" exits under §1112(b)(1); and, this Court should deny the Motion.

### VI. The Debtor Can Establish The Required Elements Under §1112(b)(2) To Avoid Dismissal of This Case.

41. Assuming, *arguendo*, that the Support Creditors can establish that "cause" exists under §1112(b)(1)(A), the Debtor can avoid the mandatory dismissal of this case as he is able to meet his burden of establishing the elements under §1112(b)(2).

42. This case involves very unusual circumstances and large sums of money. The level of animosity and litigiousness between the parties is extreme which only serves to delay and thwart the Debtor's reorganizational goals. If the Support Creditors could view the Debtor's Chapter 11 filing with a modicum of objectivity, they would realize that they are in a much better position with this case pending than they would be if the case was dismissed and that the dismissal of this case does not serve the "best interests of creditors and the estate." A prime example of this is the filing of the Debtor's Motion For Authority To Liquidate Non-Qualified Deferred Compensation Plans Pursuant To §363 Of The Bankruptcy Code and Shorten and Limit Notice Thereof and Direct Turnover of Proceeds (Docket No. 67) where the Debtor seeks to liquidate non-qualified restricted deferred compensation plans which could never be liquidated by the Receiver or the State Court.

43. If this case is dismissed, the Receiver will be charged with liquidating the Debtor's assets

to pay the entire Judgment in the amount of $6,479,972.09. That will not be an easy task. It will be time consuming and costly. As previously stated in prior pleadings, the Debtor's assets can be categorized into four (4) categories: **(1)** tenancy by the entirety ("TBE") assets; **(2)** assets owned jointly with his non-filing spouse or other related third parties; **(3)** assets owned solely by the Debtor; and **(4)** exempt assets. The assets contained in Categories (1) and (4) are protected and the Support Creditors cannot force their liquidation regardless of whether this case is dismissed. The jointly owned assets in Category 2 cannot be liquidated by the Receiver without the filing of an action against either the Debtor's spouse or other third parties who have an interest in these assets. Prosecution of any such actions will be time consuming and costly.

44. However, if this case is not dismissed and the Debtor intends on confirming a plan of reorganization, he will likely have to liquidate TBE assets, exempt assets or jointly owned assets to fund his obligations under a plan. In that case, it will be the burden of the Debtor to effectuate such liquidation and not that of the Receiver. This will result in a much less time consuming and costly process and significantly greater recovery for the estate to fund plan distributions creditors.

45. The requirement under §1112(b)(2)(A), that there is a reasonable likelihood that a plan will be confirmed within the timeframes established in §§1121(e) and 1129(e), "is not the technical one whether the debtor can confirm a plan, but rather, whether the debtor's business prospects justify continuance of the reorganization efforts." *IFPC Shareholders*, 317 B.R. at 742 (citation omitted)

46. As stated above, given the Debtor's ability to generate income, liquidate assets, and his efforts in liquidating substantial assets since the filing of this case, there is a strong likelihood that the Debtor will be able to confirm a plan of reorganizations in a timely fashion. Accordingly, the Debtor has met his burden under §1112(b)(2)(A).

47. The final element necessary to avoid dismissal is for the Debtor to establish that the "cause"

for granting relief under §1112(b)(1) is not one of the enumerated factors under §1112(b)(4)(A). That subsections states that "cause" includes "**(A)** substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." As the factors stated under this subsection were not raised by the Support Creditors in their Motion in support of dismissal, they could not have determinative in the granting of relief under §1112(b)(1).

48. Based upon the foregoing, the Debtor has met his burden of establishing each of the required elements under §1112(b)(2), thereby prohibiting the mandatory dismissal of this case.

### IV. Conclusion

49. This case was filed in good faith and the Debtor is entitled to pursue his reorganizational goals, including the filing of a plan of reorganization. The Support Creditors have wholly failed to meet its burden of establishing "cause" to dismiss this case. Moreover, the Debtor has met his burden of establishing the elements under §1112(b)(2) and that the continuation of this case is in the best interest of all creditors and the estate. Accordingly, this Court should deny the Motion.

**WHEREFORE**, the Debtor, Harlow N. Higinbotham, prays for an order denying the Motion of Wipaporn Teekhungam's and the Parties Minor Children To Dismiss the Case; and, for such other further relief as this Court deems just.

                 /s/ Monica C. O'Brien
                 Monica C. O'Brien, Attorney

Gregory K. Stern (Atty. ID #6183380)
Monica C. O'Brien (Atty. ID #6216626)
Dennis E. Quaid (Atty. ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558