**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Harlow N. Higinbotham, | ) | Case No. 18-31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |
| | ) | |
| | ) | |

**MOTION OF NATIONAL FINANCIAL SERVICES LLC FOR ORDER CONFIRMING THE AUTOMATIC STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND AUTHORIZING, THE EXERCISE OF CLOSEOUT AND SETOFF RIGHTS RELATING TO CERTAIN SECURITIES CONTRACTS AND MARGIN LOANS WITH THE DEBTOR**

National Financial Services LLC ("***NFS***"), by and through its undersigned counsel, hereby moves this Court, pursuant to Federal Rules of Bankruptcy Procedure 4001, 9013 and 9014, for the entry of an Order confirming that the automatic stay does not apply to, or in the alternative, granting NFS and Northern Trust Securities, Inc. ("***NTSI***") relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code and authorizing, the exercise of NFS's and NTSI's rights to close out certain margin loans owing by Harlow N. Higinbotham (the "***Debtor***") and to set off against certain related investment property or proceeds thereof. In support of the Motion, NFS respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.     By this Motion, NFS seeks an order confirming that the filing of the Debtor's bankruptcy petition does not operate as a stay of actions by NFS or NTSI to close out certain margin loans NFS has extended to the Debtor and to set off against related collateral. As set forth below, NFS provided those loans to the Debtor pursuant to certain agreements that are "securities contracts" within the meaning of Section 741(7) of the Bankruptcy Code and in connection with investment accounts the Debtor opened at NTSI. In conjunction with those agreements, the Debtor granted NFS a continuing lien on, among other things, any and all securities, cash and other property held in any accounts maintained by the Debtor at NFS

731703711.1

(collectively, the "*Collateral*"). Because the Debtor granted NFS the right to sell or otherwise dispose of any and all of the Collateral pledged by the Debtor and to apply the proceeds to the margin loans, NFS submits that the "clearing exception" of Section 362(b)(6) of the Bankruptcy Code – which exempts from the stay certain actions to help preserve the financial integrity of the securities markets generally – applies by its terms here.

2. Alternatively, NFS seeks relief from the automatic stay, to the extent applicable, because cause exists pursuant to Section 362(d)(1) of the Bankruptcy Code. Stay relief is proper because authorizing NFS and NTSI to close out the margin loans will inure not only to the benefit of NFS, but also to the Debtor's creditors generally, by eliminating the continuing interest accrual on the Debtor's margin loans once such loans are closed out, as well as by de-levering his portfolio in the potentially (and currently) volatile equity markets. In addition, cause exists because the Debtor has not demonstrated that NFS will be adequately protected on a going-forward basis.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for relief requested herein are sections 105, 362 and 553 of the Bankruptcy Code.

## BACKGROUND

### The Governing Agreements and the Debtor's Margin Loans

4. NFS is a broker/dealer registered with the Securities and Exchange Commission ("*SEC*"), and engages in the business of executing and clearing transactions and carrying the accounts of brokers/dealers (often referred to as "correspondent broker/dealers") and their customers. As a broker/dealer, NFS is subject to margin maintenance requirements established by the SEC, the Federal Reserve Board, the national stock exchanges and its own in-house rules for preservation of capital.

5. One of the correspondent broker/dealers for whom NFS clears is NTSI. Pursuant to that certain Fully Disclosed Clearing Agreement dated as of August 9, 2007 (as amended and

restated, and in effect as of the date hereof, the "**FDCA**"), NTSI engaged NFS to execute and clear transactions and carry accounts on a fully disclosed basis on behalf of NTSI and NTSI's customers (the "**Customers**") that are introduced by NTSI and accepted by NFS.

6. Section V.C of the FDCA provides that NTSI may "establish a margin account for a Customer subject to NFS acceptance." Consistent with the terms of the FDCA, on or about November 28, 2008, the Debtor and Susan Higinbotham (as Customers), NTSI and NFS entered into a Margin Account Agreement (the "***2008 Margin Agreement***"), a copy of which is attached hereto as Exhibit A, relating to the Debtor's brokerage account maintained with Northern Trust Securities bearing account number xx6357 (the "***6357 Account***"). The Debtor also is party to separate margin agreements for two brokerage accounts maintained with Northern Trust Securities bearing account numbers xx8494 and xx1873) (the "***Trust Accounts***", and together with the 6357 Account, the "***Accounts***"), for which the Debtor (as Trustee), NTSI and NFS entered into separate margin agreements dated March 13, 2004 and December 25, 2013, respectively (collectively, the "***Trust Account Margin Agreements***").[1] The 2008 Margin Agreement, the Trust Account Margin Agreements, and the FDCA, together with any other agreements covering the accounts at issue, are referred to herein as the "***Governing Agreements***."

7. Among other things, the Governing Agreements permitted NFS to make margin loans and extend other forms of credit to the Debtor. To secure such loans, the Debtor granted NFS a security interest in and lien on the Collateral, including "any and all securities [and] other investment properties (including investment company securities and securities accounts)… held, carried, and/or maintained by NFS … (iii) in the possession or control of NFS or any of its affiliates for any purpose, including for safekeeping;" *See* 2008 Margin Agreement, at ¶ 11.[2]

---

[1] The cash and securities in such Trust Accounts are not identified as assets of the Debtor on his Schedules of Assets and Liabilities, and, as such, liquidation of the related margin loans would appear not to implicate any property of the estate or stay issues. NFS has, however, included such Trust Accounts in its request for relief hereunder, out of an abundance of caution and in the interest of full disclosure.

[2] The term "Obligations" is broadly defined under the 2008 Margin Agreement to include "any and all indebtedness, liabilities, or other obligations (including unmatured and contingent obligations) now or hereafter owed by [the

(cont'd)

3

The Collateral includes all such property of the Debtor, whether "individually or jointly owned and/or held by [the Debtor] with others." *Id.* [3]

8. In addition, under the 2008 Margin Agreement, the Debtor granted NFS a general lien on all assets of the Debtor held by NFS, including any securities carried for the Debtor's brokerage accounts. *See* 2008 Margin Agreement, at ¶ 4 ("Any credit balances, securities, assets, or related contracts, and all other property in which [the Debtor] may have an interest held by [NFS] or carried for [the Debtor's] brokerage accounts shall be subject to a general lien for the discharge of [the Debtor's] obligations to you. (including unmatured and contingent obligations) ….").

9. In the ordinary course of business and pursuant to the terms of the Governing Agreements, NFS has extended credit to the Debtor in the form of margin loans to finance the purchase of securities by the Debtor.

10. As of March 14, 2019, the Debtor's outstanding indebtedness to NFS for margin loans with respect to the 6357 Account was approximately $5,565,016.44, and for margin loans with respect to the Trust Accounts, approximately $5,118,642.71.

### The Chapter 11 Case

11. On November 5, 2018 (the "***Petition Date***"), the Debtor filed a voluntary chapter 11 petition in this Court.

12. On December 13, 2018, this Court entered an order [Dkt. No. 39] (the "***Sale Order***"), pursuant to which the Debtor (and/or his state-court appointed receiver) were authorized to liquidate various assets identified in the Debtor's Amended Schedules of Assets and Liabilities. The Sale Order did not order the liquidation of any of the securities in the 6357 Account.

---

(… cont'd)

Debtor] to NFS … including, but not limited to, any such indebtedness liabilities, or other obligations arising under this Agreement."

[3] Susan Higinbotham is a co-signer on the 2008 Margin Agreement and co-obligor thereunder.

13. Since the Debtor's chapter 11 filing, NFS has refrained from exercising any rights and remedies with respect to the Accounts, despite its full discretion to foreclose upon, sell or otherwise dispose of any and all of the Collateral pledged by the Debtor and to apply the proceeds toward the outstanding balance of the margin loans.[4]

## BASIS FOR RELIEF REQUESTED

### I. SECTION 362(B)(6) EXEMPTS FROM THE AUTOMATIC STAY NFS'S CLOSEOUT OF THE MARGIN LOANS AND SETOFF OF PROCEEDS THEREOF

14. Section 362(a) of the Bankruptcy Code imposes an automatic stay against certain actions, including "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. §362(a)(7). However, Section 362(b) of the Bankruptcy Code enumerates certain exceptions to the automatic stay. One such exception is the Section 362(b)(6) clearing exception, which provides, in pertinent part, that the stay does not apply to:

> the setoff by … stockbrokers … of any mutual debt and claim under or in connection with … securities contracts, as defined in section 741 of this title, that constitutes the setoff of a claim against the debtor for a margin payment [or] settlement payment … arising out of … securities contracts against cash, securities, or other property held by or due from such … financial institutions … to margin, guarantee, secure, or settle … securities contracts.

11 U.S.C. § 362(b)(6).

15. Here, all the prerequisites for the clearing exception are met. First, NFS is a "stockbroker" as defined by the relevant provisions of the Bankruptcy Code, as NFS is "engaged

---

[4] The governing provision of the 2008 Margin Agreement provides as follows:
> Whenever in your discretion you deem it desirable for your protection (and without the necessity of a margin call), including but not limited to … an instance where a petition in bankruptcy or for me appointment of a receiver is filed by or against me… **you may, without prior demand, render, and without any notice of the time or place of sale, all of which are expressly waived, sell any or all of the securities or related contracts that may be in your possession, at your selection, or which you may be carrying for me, or buy any securities, or related contracts relating thereto of which my brokerage account or brokerage accounts may be short, in order to close out in whole or in part any commitment on my behalf**.

See 2008 Margin Agreement, at ¶ 5 (emphasis added); see also ¶ 14 ("[Y]ou may sell, transfer or assign such assets or property to satisfy a margin deficiency or other obligation whether or not you have made advances with respect to such property.").

5

731703711.1

in the business of effecting transactions in securities (i) for the account of others; or (ii) with members of the general public, from or for such person's own account." 11 U.S.C. § 101(54).

16. Second, the Debtor is a "customer" of NFS. In particular, NFS "deals with [the Debtor] as principal or agent" and has claims against the Debtor "on account of securit[ies] received, acquired, or held by [NFS] in the ordinary course of [its] business as a stockbroker, from or for the securities account or accounts of such entity." 11 U.S.C. § 741(2).

17. Third, the rights of setoff relate to "securities contract[s]" as defined by 11 U.S.C. § 741(7). Section 741(7) of the Bankruptcy Code defines a "securities contract" as a contract "for the purchase, sale, or loan of a security." Here, it cannot be disputed that the Governing Agreements provided for the purchase, sale and lending of securities. *See, e.g.*, Margin Agreement at ¶ 1 ("I [the Debtor] understand NTSI will maintain an account for me at NFS, and NTSI may buy or sell securities or other products according to my instructions.").

18. Fourth, NFS's liquidation of the Debtor's securities would constitute a "set off" of NFS's claim against the Debtor arising out of the Debtor's margin loans from NFS and subsequent "margin payments" as defined by 11 U.S.C. § 741(5). *See, e.g.*, *Blanton v. Prudential-Bache Securities, Inc.*, 105 B.R. 321, 347-48 (Bankr. E.D. Va. 1989) ("The terms margin call and settlement payment are very broadly defined by the Bankruptcy Code" and payments "used to defray settlement of [a broker's] market expenditures on [a customer's] behalf" qualified as margin payments). *See also Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 848 (10th Cir. 1990) (the definition of "margin payment" is extremely broad, and the term includes "any payment to reduce a deficiency in a margin account") (citations omitted).

19. In addition, NFS also meets all the conditions of Bankruptcy Code §553(a), which recognizes and preserves certain setoff rights. *See In re United Airlines, Inc.*, 438 F.3d 720, 730 (7th Cir. 2006) ("Section 553(a) generally permits a creditor to offset, on a dollar-for-dollar basis, a debt it owes to the bankrupt party on a pre-commencement debt that the bankrupt owed to the creditor.") (citations omitted). Although the Bankruptcy Code does not define mutual debts and claims, courts have generally interpreted mutual debts as "due to and from the same

6

person in the same capacity." *Modern Settings Inc. v. Prudential-Bache Sec., Inc.*, 936 F.2d 640, 648 (2d Cir. 1991) (citations omitted); *see also In re Doctors Hosp. of Hyde Park, Inc.*, 337 F.3d 951, 955 (7th Cir. 2003). Here, NFS's claims against the Debtor with respect to the margin loans and the Debtor's claims against NFS with respect to any cash and securities in the accounts are mutual, because those debts and claims are held in the same respective capacities, namely, those of broker/dealer and account customer. And those mutual obligations are also deemed to have arisen before the Petition Date under the terms of the Governing Agreements. *See In re United Airlines, Inc.*, 438 F.3d at 731 (debt arose prepetition when debtor "bound itself to pay, subject to request" in prepetition agreement).[5]

## II. TO THE EXTENT THE AUTOMATIC STAY APPLIES, CAUSE EXISTS FOR RELIEF OF THE STAY

20. As detailed above, NFS submits that the automatic stay by its terms does not apply under the plain language of Section 362(b)(6) of the Bankruptcy Code. However, even if that were not the case, NFS submits that stay relief would be proper under Section 362(d)(1) of the Bankruptcy Code, which provides that a court may grant relief from the stay "[f]or cause, including the lack of adequate protection of an interest in property of [the moving] party in interest." 11 U.S.C. § 362(d)(1).

21. Although the Bankruptcy Code does not define "cause," courts have recognized that "cause" under Section 362(d)(1) must be determined on a case-by-case basis. *See International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991). After the movant makes an initial showing of cause, a debtor bears the burden of proof to demonstrate the absence of cause to grant relief from stay. 11 U.S.C. § 362(g)(2). The legislative history to Section 362(d)(1) notes that "lack of adequate protection of an interest in property of the party requesting relief from the stay is one

---

[5] With respect to the Trust Accounts, if such accounts or the cash and securities therein were considered property of the estate, the same arguments as to the applicability of the Section 362(b)(6) clearing exception would apply and are incorporated by reference.

7

731703711.1

cause for relief, but is not the only cause." H.R. Rep. No. 595, 95th Cong. 1st Sess. 343, reprinted in 1978 U.S.C.C.A.N. 5963, 6300.

22. Here, cause exists to modify the automatic stay because failure to close out the margin loans would not only potentially harm NFS, but also could prejudice the Debtor's other creditors generally, as interest continues to accrue on the margin loans. In addition, the estate bears substantial additional risk of any downward price movement in Debtor's equity holdings in the 6357 Account, given the Debtor's substantial use of leverage in the 6357 Account. *Cf. United States v. Bloom*, 846 F.3d 243, 249 (7th Cir. 2017) (discussing inherent risks in a leveraged trading strategy, including that "if the value of the [leveraged] security fell, losses [would be] incurred from both the asset depreciation and the cost of borrowing").

23. In addition, it is far from certain whether NFS can be adequately protected. In demonstrating a lack of adequate protection, a secured creditor must establish only the following elements: (1) a debt owing from the debtor to the creditor; (2) a security interest held by the creditor that secures the debt at issue; and (3) a decline in the value of the collateral securing the debt, along with the debtor's failure to provide adequate protection of the creditor's interest. *In re Bivens,* 317 B.R. 755, 770 (Bankr. N.D. Ill. 2004) (citations omitted). Each is met here.

24. As set forth above, the Debtor owes substantial amounts to NFS in respect of the margin loans. In addition, NFS's security interest has attached to the investment property it holds and is enforceable against the Debtor under the applicable provisions of the Uniform Commercial Code (as codified in Massachusetts as Mass. Gen. Laws ch. 106, §1-101 et seq. (2013), the "*UCC*"). The relevant provisions of the UCC provide that a security interest is enforceable against the debtor and third parties with respect to the collateral if: (i) value has been given; (ii) the debtor has rights or the power to transfer rights in the collateral; and (iii) one of the following conditions is met: (a) the debtor has authenticated a security agreement that provides a description of the collateral … or (d) the collateral is deposit accounts or investment property and the secured party has control under the UCC pursuant to the debtor's security agreement. UCC §9-203(b).

8

731703711.1

25. Here, NFS meets all prongs of the three-part test under UCC §9-203(b). NFS gave value to the Debtor because it extended credit to the Debtor in the form of margin loans pursuant to the Governing Agreements. The Debtor owned or had the right to grant security interests in the Collateral in the Governing Agreements. (Specifically, in the 2008 Margin Agreement, the Debtor agreed and acknowledged that "[a]ny credit balances, securities, assets, or related contracts, and all other property in which I may have an interest held by you or carried for my brokerage accounts shall be subject to a general lien for the discharge of my obligations to you." 2008 Margin Agreement, at ¶ 4.) And the relevant collateral is investment property and NFS, as the secured party, has control because NFS "has the present ability to have the securities sold or transferred without further action by the transferor." See UCC §8-106, cmt. 7.[6]

26. Once a secured party establishes the foregoing elements relating to Section 362(d)(1), the burden shifts back to the debtor to establish that the secured creditor will be adequately protected. *See* 11 U.S.C. § 362(g). In sustaining such burden, a debtor must demonstrate by competent evidence that adequate protection will be "completely compensatory." *In re Chicago, Missouri & Western Railway Company v. Murray*, 109 B.R. 308, 313 (Bankr. N.D. Ill. 1989). Here, given the potentially protracted nature of the proceedings, as well as the volatility of the equity markets generally, NFS submits that the Debtor cannot make such an evidentiary showing. As a result, NFS submits that cause exists for this Court to grant it relief from the automatic stay.

## **CONCLUSION**

For the foregoing reasons, NFS respectfully requests that this Court enter an order (i) confirming that the filing of the Debtor's bankruptcy petition does not operate as a stay of any action by NFS and/or NTSI to close out the Debtor's margin loans or to set off the proceeds thereof against amounts due and owing NFS; (ii) providing that, to the extent the automatic stay is applicable, NFS and NTSI are granted relief from the automatic stay, and are authorized to

---

[6] Under the UCC, a secured party has control over investment property (including any certificated security, uncertificated security, or security entitlement) as provided in Section 8-106 of the UCC. See UCC §9-106.

9

731703711.1

foreclose upon the Collateral and to apply the proceeds against the margin loans; and (iii) granting such other relief as is just and proper under the circumstances.

Dated: March 18, 2019

Respectfully Submitted,

**NATIONAL FINANCIAL SERVICES LLC**

By: /s/ Sean T. Scott
     One of its Attorneys

Sean T. Scott
Joshua Gross
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

731703711.1

# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Harlow N. Higinbotham, | ) | Case No. 18-31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |
| | ) | |
| | ) | |

## NOTICE OF MOTION

TO:   See attached service list

PLEASE TAKE NOTICE that on April 10, 2019, at 10:00 a.m. prevailing Central time, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable LaShonda A. Hunt, United States Bankruptcy Judge for the Northern District of Illinois, Eastern Division, in Courtroom 719 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, to present the MOTION OF NATIONAL FINANCIAL SERVICES LLC FOR ORDER CONFIRMING THE AUTOMATIC STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND AUTHORIZING, THE EXERCISE OF CLOSEOUT AND SETOFF RIGHTS RELATING TO CERTAIN SECURITIES CONTRACTS AND MARGIN LOANS WITH THE DEBTOR, a copy of which is attached hereto and herewith served upon you.

Dated: March 18, 2019

                                                **NATIONAL FINANCIAL SERVICES LLC**

                                                By: /s/  Sean T. Scott
                                                    One of its Attorneys

Sean T. Scott
Joshua Gross
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 782-0600
Facsimile:  (312) 701-7711

731703711.1

# CERTIFICATE OF SERVICE

      I hereby certify that on this 18th day of March, 2019, I caused true and correct copies of the foregoing NOTICE OF MOTION and MOTION OF NATIONAL FINANCIAL SERVICES LLC FOR ORDER CONFIRMING THE AUTOMATIC STAY DOES NOT APPLY TO, OR IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY AND AUTHORIZING, THE EXERCISE OF CLOSEOUT AND SETOFF RIGHTS RELATING TO CERTAIN SECURITIES CONTRACTS AND MARGIN LOANS WITH THE DEBTOR, to be filed and served through ECF notification upon all parties who receive notice in this matter pursuant to the Court's ECF filing system, or otherwise in accordance with the service information provided hereinbelow.

                                                  By: /s/  Sean T. Scott
                                                        Sean T. Scott

## SERVICE LIST

**Registrants** (service via ECF)

Bradley Block on behalf of Creditor Susan S. Higinbotham
brad.block@bradblocklaw.com

Bianca E Ciarroni on behalf of Interested Party Neal H. Levin, not individually but solely as the Receiver of the Estate of Harlow Niles Higinbotham
bciarroni@freeborn.com, bkdocketing@freeborn.com

Deborah K Ebner on behalf of Creditor A. H., a minor
dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com;lizd@deborahebnerlaw.com

Deborah K Ebner on behalf of Creditor Wipaporn Teekhungam
dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com;lizd@deborahebnerlaw.com

William J Factor on behalf of Creditor Allen & Glassman, Chartered
wfactor@wfactorlaw.com,
wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com

William J Factor on behalf of Creditor A. H., a minor
wfactor@wfactorlaw.com,
wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com

William J Factor on behalf of Creditor Gemma Allen
wfactor@wfactorlaw.com,
wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com

William J Factor on behalf of Creditor Wipaporn Teekhungam
wfactor@wfactorlaw.com,
wfactorlaw@gmail.com;bharlow@wfactorlaw.com;wfactor@ecf.inforuptcy.com;wfactormyecfmail@gmail.com;factorwr43923@notify.bestcase.com

Adam B Goodman on behalf of Interested Party Michael Ian Bender
adam@thegoodmanlawoffices.com

Shira R Isenberg on behalf of Interested Party Neal H. Levin, not individually but solely as the Receiver of the Estate of Harlow Niles Higinbotham
sisenberg@freeborn.com, bkdocketing@freeborn.com;jhazdra@ecf.inforuptcy.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Jeffrey K. Paulsen on behalf of Creditor A. H., a minor
jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com

Jeffrey K. Paulsen on behalf of Creditor Wipaporn Teekhungam
jpaulsen@wfactorlaw.com, bharlow@wfactorlaw.com;jpaulsen@ecf.inforuptcy.com

N. Neville Reid on behalf of Creditor Beermann, LLP
nreid@foxswibel.com, bkdocket@foxswibel.com

Nathan Q. Rugg on behalf of Creditor Northern Trust Securities, Inc.
Nathan.Rugg@bfkn.com, jean.montgomery@bfkn.com

Gregory K Stern on behalf of Debtor 1 Harlow N Higinbotham
greg@gregstern.com, steve_horvath@ilnb.uscourts.gov

David Wentzel on behalf of Debtor 1 Harlow N Higinbotham
dwentzel@wentzellaw.com,
mkozlowski@wentzellaw.com;millie@wentzellaw.com;lew@rosenbloomadvisors.com;vijay@rosenbloomadvisors.com

Brian Wilson on behalf of Creditor Beermann, LLP
bwilson@foxswibel.com, ewatts@foxswibel.com,bkdocket@foxswibel.com

Stephen G Wolfe on behalf of U.S. Trustee Patrick S Layng
steve.g.wolfe@usdoj.gov, jennifer.r.toth@usdoj.gov

**Non-Registrants** (Service via first class mail)
Harlow N. Higinbotham
RD No. 2
2002 East Cass St.
Joliet, IL 60432

3

731703711.1