# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HARLOW N. HIGINBOTHAM, | ) | Case No. 18-31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |

### PLAN OF REORGANIZATION OF HARLOW N. HIGINBOTHAM
### DATED APRIL 9, 2019

Gregory K. Stern, Esq.
Monica C. O'Brien, Esq.
Dennis E. Quaid, Esq.
Rachel S. Sandler, Esq.
GREGORY K. STERN, P.C.
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558

### ATTORNEYS FOR DEBTOR

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HARLOW N. HIGINBOTHAM, | ) | Case No. 18-31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |

## PLAN OF REORGANIZATION FILED BY HARLOW N. HIGINBOTHAM

Harlow N. Higinbotham, Debtor and Debtor In Possession herein ("Debtor"), hereby proposes his Plan of Reorganization (the "Plan" or "Plan of Reorganization"), pursuant to the provisions of Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code").

### SUMMARY

Through his Plan, the Debtor proposes to pay his creditors and fund his Plan from sources including but not limited to income from proceeds from the Estate's Available Cash, cash equivalents, the disposition, liquidation and sale of Personal Property and Real Property, Debtor's personal service income, the proceeds of the liquidation of exempt assets including but not limited to qualified retirement accounts, deferred compensation and savings plans and IRA(s), and litigation claim proceeds. The term of the Plan shall not exceed sixty (60) months and shall commence on the Confirmation Date. No debt shall survive expiration of the Plan.

Commencing on the Effective Date of the Plan, which date shall be the later of December 31, 2019, or the date that the Future Support Award and Retroactive Support Award become final and non-appealable, or such other date as is set forth herein, the Debtor anticipates disbursing payments to his creditors, as follows:

a) **Debtor In Possession Operating Expenses and Claims** – The Debtor has paid all Debtor In Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of his creditors. No Debtor In Possession operating costs, expenses, obligations or claims will survive confirmation, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's business and personal affairs thereafter. Unless otherwise agreed between the parties, any unknown operating costs, expenses or obligations shall be paid on the thirtieth (30th) of the month following the Confirmation Date to the extent that they are known prior thereto and are due pursuant to the established credit terms, or they shall be paid as they become known and due, or as soon as practical thereafter.

b) **Administrative Claims -** Administrative Claims, including Professional Fee Claims owed to Gregory K. Stern and Gregory K. Stern, P.C., and all other professionals

retained by the Debtor as Debtor in Possession, including but not limited to David F. Wentzel, Michael G. DiDomenico, Sean M. Hamann and Lake Toback DiDomenico, Valbridge Property Advisors and Gary K. DeClark, or any other professionals not yet employed, shall be paid, in full, in Cash, on the (1) the Confirmation Date; (2) upon entry by the Bankruptcy Court of an Order Allowing such Administrative Claims or a Professional Fee Claim, or (3) as otherwise agreed by the Administrative Claimant holding the allowed Administrative Claim.

c) **Priority Support Claims** – Priority Support Claims entitled to priority pursuant to §507(a)(1), except Administrative Claims and Priority Tax Claims, consists of the disputed allowed claims of Michael Bender as Trustee of 503(g) Trust, Wipaporn Teekhungam and Winton Anthony Perry, and the claims of Wipaporn Teekhungam on behalf of her Minor Children. Allowed Priority Support Claims shall be paid, in full, on the Effective Date of the Plan.

d) **Priority Tax Claims** – Priority Tax Claims entitled to priority pursuant to §507(a)(8) shall be paid, in full, on the on the 30th of the month following the Effective Date of the Plan. There are no Priority Tax Claims known to the Debtor.

e) **Executory Contracts and Unexpired Leases** – All unexpired leases and contracts which are executory, in whole or in part, and which were originally executed prior to the filing of the Chapter 11 petition, and to which the Debtor is a party, and have not been assumed, assigned, rejected or terminated during the pendency of the Chapter 11 proceedings or pursuant to the provisions of the Plan, shall be deemed rejected, except for the crop lease with Tom Nelson which is being assumed, as of the Confirmation Date of the Plan, in accordance with the provisions and requirements of §§365 and 1123 of the Bankruptcy Code.

f) **Class 1 Claims** – Class 1 claims consist of the allowed secured claims of Northern Trust Securities, Inc. and National Financial Services, LLC. Allowed Class 1 claims shall be paid, in full, through the periodic liquidation of the NTSI Brokerage Account securing the Class 1 Claims. Commencing on the 30th of the month following the Confirmation Date and continuing until the Class 1 Claims are paid, in full, the Debtor shall liquidate securities in the NTSI Brokerage Account in the minimum gross amount of approximately $200,000.00 per month of which one-half (½) will be paid to the Class 1 Claim and the remaining balance will be deposited into the Segregated Account 2. Class 1 Claims are impaired under the Plan.

g) **Class 2 Claims** - Class 2 claims consist of allowed General Unsecured Non-Priority Support Claims (including the disputed Priority Support Claim of Wipaporn Teekhungham and Winton Anthony Perry, and excluding Class 1 Claims, the claims of holders of assumed Executory Contracts and Unexpired Leases, and the Class 3 Claims of Susan Higinbotham). Class 2 allowed claims aggregate $688,336.93 and shall be paid, in full, through four (4) equal payments of $137,667.39 and a fifth (5th) final payment of $137,667.37 on the five (5) anniversaries of the Confirmation Date. Class 2 claims are impaired under the Plan.

h) **Class 3 Claims** – Class 3 claims consist of the Class 3(a) allowed claim of Susan Higinbotham including Marital Claims of $10,366,066.04, the Class 3(b) allowed claim of the E.D. Higinbotham Trust of $1,689,959.00, and the Class 3(c) allowed claim of the H.N. Higinbotham Trust of $4,620,298.00. Allowed Class 3 Claims shall be subordinate to allowed Class 2 General Unsecured Non-Priority Support Claims and shall not receive any distributions under the Plan and shall survive the Plan without impairment of any kind or nature. Class 3 Claims are impaired under the Plan.

## PREAMBLE

On November 5, 2018, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The Debtor has continued in possession of his property, except that Neal H. Levin, Circuit Court Receiver has been excused from complying with 11 U.S.C. § 543(a) or (b); and, has managed his personal and business affairs as Debtor In Possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee, examiner or committee of unsecured creditors has been appointed in this case.

The Debtor's Plan provides for distribution to the holders of allowed claims and interests as is more fully described below.

## ARTICLE I
## DEFINED TERMS
## RULES OF CONSTRUCTION AND INTERPRETATION

The following terms, when capitalized, shall have the meanings specified below, and such meanings shall be equally applicable to the singular and plural forms of such terms. Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of or exhibit to this Plan. The words "herein," "hereof," "hereto," or "hereunder" and similar terms shall refer to this Plan as a whole and not to any particular section of this Plan. Any term used in this Plan not defined herein but defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure shall have the meaning ascribed to that term in the Bankruptcy Code or Federal Rules of Bankruptcy Procedures, as applicable. The headings in this Plan are for convenience only and shall not otherwise affect the provisions of this Plan.

1.1    "Administrative Claim" means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§503(b), 507(b) or, if applicable, §1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Debtor's Estate and operating the business of the Debtor and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under §§330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Professional Fee

Claims") to the extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under §1930, Chapter 123 of Title 28, United States Code.

1.2    "Administrative Claims Bar Date" means the date that is set forth in a notice to be filed on the Bankruptcy Court's docket and served on all creditors and other parties in interest, or any other notice as may be required by the Bankruptcy Court.

1.3    "Allowed" or "Allowed Claim" or "Allowed Interest" means a Claim or Interest: (a) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by a Final Order; (ii) by an agreement between the Holder of such Claim and the Debtor; or, (iii) pursuant to the terms of this Plan.

For purposes of computing distributions under this Plan, the term "Allowed Claim" shall not include interest on such Claim from and after the Petition Date, except as provided in §506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

1.4    "Amended Schedules" means the Debtor's Amended Schedule of Assets and Liabilities filed in this Case on January 10, 2019 [Docket 50].

1.5    "Appeals" means the appeal pending in the Appellate Court of Illinois, First District, Appeal No. 1-19-0572, commenced by the filing of a Notice of Appeal on March 19, 2019 appealing the September 14, 2018 judgment modifying child support and from the November 5, 2018 order adjudicating child support arrearage, and any and all orders leading up to and included in said judgment orders.

1.6    "Asset" means all assets of the Debtor of every kind and nature whatsoever including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash, Causes of Action, accounts receivable, tax refunds, claims of right, interests, Personal Property, Real Property, tangible and intangible, and all proceeds of the foregoing.

1.7    "Available Cash" means the aggregate of all Cash held by the Debtor.

1.8    "Avoidance Actions" means all of the Debtor's claims, demands and causes of action arising under Chapter 5 of the Bankruptcy Code and applicable non-bankruptcy law.

1.9    "Ballot" means the ballot form distributed with the Disclosure Statement and Plan to each holder of a Claim eligible to vote on this Plan in connection with the solicitations of acceptances of this Plan.

1.10    "Bankruptcy Code" means the United States Bankruptcy Code, codified at title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as the same may be amended from time to time.

1.11    "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Illinois having jurisdiction over the Bankruptcy Case.

1.12    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter.

1.13    "Business Day" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

1.14    "Case" means this case entitled *In re Harlow N. Higinbotham,* pending before the United States Bankruptcy Court for the Northern District of Illinois as Case No. 18 - 31185.

1.15    "Cash" means legal tender of the United States of America and equivalents thereof.

1.16    "Causes of Action" means any and all claims, actions, adversary proceedings, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled by the Debtor, disputed or undisputed, legal or equitable, absolute or contingent, that are pending or have accrued or are accruing to the Debtor or the Estate, or that may be pursued derivatively by or on behalf of the Debtor or the Estate, including, without limitation, all rights, claims and causes of action under Chapter 5 of the Bankruptcy Code.

1.17    "Claim" means a claim as defined in §101(5) of the Bankruptcy Code.

1.18    "Claims Objection Deadline" means, the last day for filing objections to Claims or Interests which date shall be the date sixty (60) days after the Confirmation Date.

1.19    "Class" means a category or group of holders of Claims or Interests, means a category or group of holders of Claims designated in Article II hereof pursuant to Bankruptcy Code section 1123(a).

1.20    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Case, which is assumed to be July 31, 2019 for the purposes of this Plan.

1.21    "Confirmation Hearing" means the hearing held by the Bankruptcy Court pursuant to §1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

1.22    "Confirmation Order" means the order of the Bankruptcy Court, confirming this Plan pursuant to §1129 of the Bankruptcy Code.

1.23    "Debtor" means Harlow N. Higinbotham.

1.24    "DIP" means Debtor in Possession.

1.25    "Disbursing Agent" means the Debtor who shall serve as the Disbursing Agent for all payments under the Plan to allowed priority and non-priority unsecured claims.

1.26    "Disclosure Statement" means that certain disclosure statement, including all exhibits and schedules thereto, as or supplemented from time to time, relating to this Plan as approved by order of the Bankruptcy Court.

1.27    "Disposition" (or "Dispose"), means the sale, transfer or other disposition of an Asset such that the entire value of the Asset is received in the form of Cash proceeds unless, the Debtor consents to another form of disposition.

1.28    "Disputed Claim" means every Claim, or portion thereof, other than Professional Fee Claims, which is (a) listed on the Debtor's bankruptcy schedules as disputed; or (b) the subject of an objection, at any time prior to the Claim Objection Deadline, a contested matter or adversary proceeding in the Case, regardless of how such Claim may be listed on the Debtor's schedules.   For the avoidance of doubt, all Claims are hereby considered Disputed Claims unless otherwise expressly determined to be Allowed Claims as set forth in this Plan.

1.29    "Distribution(s)" mean any payment(s) of Cash that this Plan requires to be distributed to Holders of Allowed Claims.

1.30    "Distribution Date" means that date when the Debtor's Cash is sufficient to make a Distribution on a Pro Rata basis on Allowed Unsecured Claims, and the Debtor makes such Distribution on Allowed Unsecured Claims.  The Distribution Date shall not take place until full payment is made on Allowed Administrative Claims, if any.

1.31    "Effective Date" means the later of December 31, 2019, or the date that the Future Support Award and Retroactive Support Award become final and non-appealable.

1.32    "Estate" means the estate of the Debtor created under §541 of the Bankruptcy Code upon commencement of the Case.

1.33    "File", "Filed" or "Filing" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Case.

1.34    "Final Order" means an order or judgment of the Bankruptcy Court or any other court of competent jurisdiction that has not been reversed, vacated or stayed, and as to which (a) the time to appeal or move for re-argument or rehearing has expired, and as to which no appeal, re-argument or rehearing shall be pending, or (b) if an appeal, re-argument or rehearing has been sought, such order or judgment shall have been affirmed by the highest court to which such order or judgment was appealed, or re-argument or rehearing shall have been denied or resulted in no modification of such order or judgment, and the time to take further appeal or move for re-argument or rehearing shall have expired; provided, however, that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or an analogous rule shall not prevent an order from becoming a Final Order.

1.35    "Future Support Award" means that portion of the order entered in the State Court Case on September 14, 2018, in favor of the Support Creditors and against the Debtor that

obligated the Debtor to establish and deposit $1,500,000.00 into each of three (3) 503(g) trusts to fund future support payments to the Support Creditors until each reaches the age of 20.

1.36    "Guardian Ad Litem or GAL" means Michael Bender, the guardian ad litem appointed for the minor children in the State Court Case.

1.37    "Holder" means an entity holding a Claim or Interest.

1.38    "IDOR" means the Illinois Department of Revenue.

1.39    "Impaired" means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of §1124 of the Bankruptcy Code.

1.40    "IRS" means the Internal Revenue Service.

1.41    "Litigation Claims" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or Estate may hold against any person or entity under the Bankruptcy Code or any non-bankruptcy law and other undetermined claims and rights of action.

1.42    "Marital Residence" means the real property commonly known as and located at RD No. 2, 2002 East Cass Street, Joliet, Illinois that is owned by the Debtor and his wife, Susan Higinbotham, in fee simple as husband and wife, tenants by the entirety.

1.43    "National Financial Services, LLC" (or "NFS") means the broker/dealer registered with the Securities and Exchange Commission engaged in the business of executing and clearing transactions and carrying the accounts of brokers/dealers and their customers.

1.44    "Northern Trust Margin Agreement" means the November 28, 2008 margin account agreement relating to the Debtor and Susan Higinbotham's NTSI brokerage account number xxxx6357.

1.45    "Northern Trust Securities, Inc." (or "NTSI") means the broker/dealer for whom NFS clears transactions and carries the accounts of NTSI customers.

1.46    "Northern Trust Securities, Inc. Brokerage Account" (or "NTSI Brokerage Account") means the brokerage account maintained by Debtor and Susan Higinbotham at NTSI

1.47    "Order For Relief" means the order commencing the Case on November 5, 2018.

1.48    "Petition Date" means November 5, 2018, the date on which the Petition was filed by the Debtor commencing the Case.

1.49    "Plan" means this plan of reorganization and all amendments, modifications, supplements, appendices and schedules hereto, in its present form or as the same may be altered or modified from time to time.

1.50   "Priority Support Claims" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a) of the Bankruptcy Code other than an Administrative Claim or a Priority Tax Claim.

1.51   "Priority Tax Claims" means a claim that is entitled to priority pursuant to 11 U.S.C. §502(i) and §507(a)(8).

1.52   "Professional" means any (a) professional employed in the Chapter 11 case pursuant to §§327 or 1103 of the Bankruptcy Code or otherwise and (b) other professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 case pursuant to §503(b)(4) of the Bankruptcy Code.

1.53   "Professional Fee Claim" means an Administrative Claim for professional fees, expenses and other reimbursable costs incurred by retained professionals and arising or asserted under §§330(a), 331, 503 or 1103 of the Bankruptcy Code incurred in the Case on or prior to the Effective Date and entitled to priority under section 507(a)(2) of the Bankruptcy Code and subject to award by the Bankruptcy Court under section 330 of the Bankruptcy Code.

1.54   "Pro Rata Share" means the proportion that an Allowed Claim bears to the aggregate amount of all Claims in the Class to which such Allowed Claim belongs that are not claims which have been disallowed by final order of the Bankruptcy Court or by agreement.

1.55   "Residential Cooperative Unit" means the residential cooperative unit commonly known as and located at 1500 North Lake Shore Drive, Unit 13-C, Chicago, Illinois, that is owned by the Debtor and his wife, Susan Higinbotham as joint tenants.

1.56   "Retained Professional" means any entity: (a) employed in this Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

1.57   "Retroactive Support Award" means that portion of the order entered in the State Court Case on November 5, 2018, confirming the retroactive child support arrearage owing to the Support Creditors in the amount of $1,979,972.09, calculated by multiplying the new monthly support obligation ($33,000) times the number of months from March of 2013 (when the Support Creditors left Thailand and entered England) and the date of entry of the Future Support Award, minus child support already paid by the Debtor during that period pursuant to the Thai Judgment.

1.58   "Rules of Interpretation" and "Computation of Time" for purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule filed or to be filed

means such document or schedule, as it may have been or may be, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in §1021, of the Bankruptcy Code will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a), will apply.

1.59    "Schedules" means the Debtor's Schedule of Assets and Liabilities filed in this Case.

1.60    "Segregated Account 1" means that certain interest bearing account to be established by the Debtor at Northern Trust Bank, First American Bank or Associated Bank and into which the following funds will be deposited pending entry of a Final Non-Appealable Order entered by the United States Bankruptcy Court or such other Court of competent jurisdiction relating to the Retroactive Support Award: (a) $2,000,000.00 from the State Court Receiver's IOLTA Account plus $110,812.99 from the Debtor, totaling $2,110,812.99, representing the Retroactive Support Award balance including accrued interest; and (b) $14,949.79 each month from the Debtor as interest on the Retroactive Support Award.

1.61    "Segregated Account 2" means that certain interest bearing account to be established by the Debtor at the Northern Trust Bank, First American Bank or Associated Bank and into which net proceeds of the periodic liquidation of the NTSI Brokerage Account, after payment of Northern Trust Securities, Inc. and National Financial Services, LLC.'s Class 1 Claims, are to be deposited.

1.62    "State Court Case" means those certain proceedings pending in the Circuit Court of Cook County, Illinois commonly known as *In re: The Parentage Wipaporn Teekhungam, et al. v. Harlow Niles Higinbotham*, and assigned Case No. 11 D 6475, including certain appeals related thereto.

1.63    "State Court Receiver" means Neal H. Levin the receiver appointed in the State Court Case who has been excused from complying with 11 U.S.C. § 543(a) or (b).

1.64    "State Court Receiver's IOLTA Account" means that certain account maintained by the State Court Receiver at the Northern Trust Bank which holds $2,000,000.00 as adequate protection for the Future Support Award and, or the Retroactive Support Award pursuant to bankruptcy court order.

1.65    "Support Claims" means collectively the Future Support Award and the Retroactive Support Award.

1.66    "Thai Judgment" means the order entered on December 21, 2010, by the Thailand Court ordering the Debtor to pay approximately $500.00 per month for the support of each of the three minor children.

1.67   "Unimpaired Claim" or "Unimpaired" means a claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

1.68   "Unsecured Claim" or "Unsecured" means a general unsecured, non-Priority Support Claim.

1.68   "503(g) Trust" or "Existing 503(g) Trust") means that certain 503(g) Trust established pursuant to the August 14, 2018, order entered in the State Court Case to pay the necessary educational, medical and general welfare expenses of the 3 Minor Children, including the litigation expenses incurred on their behalf by Wipaporn, the GAL and their attorneys; and, to pay the regular monthly child support ordered in the State Court Case beginning November 1, 2018.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Debtor In Possession Operating Expenses and Claims, Administrative Claims (including Professional Fee Claims), Priority Support Claims and Priority Tax Claims, are placed in the Classes set forth below. In accordance with §1123(a)(1), of the Bankruptcy Code, Debtor In Possession Operating Expenses and Claims, Administrative Claims, Priority Support Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.1 Unclassified Claims (Not Entitled To Vote On The Plan)

2.1.1   Debtor In Possession Operating Expenses and Claims.  These claims consist of the post-petition expenses, obligations and claims incurred and paid in the ordinary course of the Debtor's personal and financial affairs.

2.1.2   Administrative Claims, pursuant §507(a), including §503(b) and §365(d) claims, excluding Priority Support Claims and Priority Tax Claims, and include, but are not limited to, Professional Fee Claims and United States Trustee Fees.  These claims consist of the Administrative Claims of Gregory K. Stern and Gregory K. Stern, P.C., David F. Wentzel, Michael G. DiDomenico, Sean M. Hamann and Lake Toback DiDomenico, Valbridge Property Advisors and Gary K. DeClark, and other professionals not yet employed, and the quarterly statutory fees owed to the United States Trustee.

2.1.3   Priority Support Claims pursuant to §507(a)(1) and other than Administrative Claims and Priority Tax Claims, consists of the disputed allowed claims of Michael Bender as Trustee of 503(g) Trust, Wipaporn Teekhungam and Winton Anthony Perry, and the disputed support claims of Wipaporn Teekhungam on behalf of her Minor Children arising out of the Thai Judgment.

2.1.4   Priority Tax Claims. - None known as of this date.

2.1.5   Executory Contracts and Unexpired Leases.  Consist of claims arising out of an oral share crop agreement with Tom Nelson.  There are no other known executory contracts or unexpired leases.

2.2      Unimpaired Classes of Claims (Not Entitled To Vote On The Plan) - NONE

2.3      Impaired Classes of Claims (Entitled To Vote On The Plan)

2.3.1   Class 1 – Class 1 Secured Claims consist of the allowed Class 1 claim of Northern Trust Securities, Inc. and National Financial Services, LLC.

2.3.2   Class 2 – Class 2 claims consist of the allowed General Unsecured Non-Priority Support Claims (including the disputed Priority Support Claim of Wipaporn Teekhungham and Winton Anthony Perry, and excluding Class 1 Claims, the claims of holders of assumed Executory Contracts and Unexpired Leases, and the Class 3 Claims of Susan Higinbotham).

2.3.3.   Class 3 – Class 3 claims consist of the allowed General Unsecured Non-Priority Support Claims of Susan Higinbotham Class 3(a), the E.D. Higinbotham Trust Class 3(b), and the H.N. Higinbotham Trust Class 3(c).

## ARTICLE III - TREATMENT OF CLAIMS AND INTERESTS

3.1.1   **Debtor In Possession Operating Expenses and Claims** – The Debtor has paid all Debtor In Possession operating costs, expenses, and obligations as they became due, pursuant to the credit terms established between the Debtor and each of his creditor.  No Debtor In Possession operating costs, expenses, obligations or claims will survive confirmation, other than those operating costs, expenses or obligations and claims which are due in the ordinary course of the Debtor's personal and business affairs thereafter.

3.1.2   **Administrative Claims (including Professional Fee Claims, United States Trustee Fees and excluding Priority Support Claims and Priority Tax Claims)**

All requests for payment of an Administrative Claim that accrued on or before the Confirmation Date that were not otherwise paid in the ordinary course of business must be filed with the Bankruptcy Court and served on the Debtor no later than the Administrative Claims Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Professional

Fee Claims shall be determined by the Bankruptcy Court. The Debtor, in its sole and absolute discretion, may settle Administrative Claims in the ordinary course of his business with approval by the Bankruptcy Court. The Debtor may object to any Administrative Claim no later than thirty (30) days following the Administrative Claims Bar Date or service of a request for payment of any Administrative Claim or Professional Fee Claim. No request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously allowed by Final Order, or for Professional Fee Claims that accrue after the Effective Date, which claims shall be paid by the Reorganized Debtor when billed.

Administrative Claims shall be paid, in full, in Cash, on the (1) Confirmation Date, (2) upon entry by the Bankruptcy Court of an Order Allowing such Administrative Claims or a Professional Fee Claim, or (3) as otherwise agreed by the Administrative Claimant holding the allowed Administrative Claim. Payment by the Debtor on account of such Allowed Claims shall be in full and final satisfaction, settlement, release and discharge of such Allowed Claims against the Debtor, the Estate, or the Assets.

Statutory fees owed by the Debtor to the United States Trustee for time periods prior to the Confirmation Date shall be paid by the Debtor in full to the United States Trustee on or before the Confirmation Date. Statutory fees owed by the Debtor to the United States Trustee for time periods following the Confirmation Date shall be paid by the Debtor on a regular and timely basis until the entry of a Final Order closing the Case, dismissing the Case, or converting the Case to a case under chapter 7 of the Bankruptcy Code.

    3.1.3    **Priority Support Claims** - Priority Support Claims entitled to priority pursuant to §507(a) shall be paid, in full, on the Effective Date. The Holders of Priority Support Claims shall be limited to the Cash payment provided herein except to the extent they hold a general unsecured non-priority Class 2 Claim. The payment of the Priority Support Claims in accordance with this Section 3.1.3 shall be in full and final satisfaction, settlement, release and discharge of such Allowed Priority Support Claim against the Debtor and the Estate. Thereafter, the Holders of such Allowed Priority Support Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, the Estate, or the Assets. Priority Support Claims consist of the disputed allowed claims of Michael Bender as Trustee of 503g Trust; Wipaporn Teekhungam and Winton Anthony Perry in the amount of $212,521.32; and, the disputed support claims of Wipaporn Teekhungam on behalf of her Minor Children as set forth in the Future Support Award in the amount of $4,335,000.00, and the Retroactive Support Award in the aggregate amount of $1,979,972.09.

The treatment of the disputed domestic support claims of Wipaporn Teekhungam on behalf of her Minor Children shall be as follows:

Retroactive Support Award: Until such time that the Retroactive Support Award is paid, in full, it shall accrue interest at the rate of 9% per annum. On the Confirmation Date, the full amount of the Retroactive Support Claim, plus accrued interest[1], totaling $2,110,812.99 (or such greater

---

[1] To the extent the Confirmation Date is extended past July 31, 2019, the Debtor shall be responsible for depositing such additional accrued interest in the Segregated Account 1

amount in the event that the Confirmation Date is after July 31, 2019) shall be deposited into the Segregated Account 1. The source of funding of shall be the $2,000,000.00 from the State Court Receiver's IOLTA account with the additional $110,812.99 to be paid by the Debtor. Beginning with the month after the Confirmation Date, the Debtor shall deposit the amount of $14,949.79 into Segregated Account 1, representing the continued accrual of interest on the Retroactive Support Award.

Future Support Award: Until the Future Support Award is paid, in full, the Debtor and/or the 503(g) trust shall pay current post-petition child support payments. The Future Support Award shall not accrue interest. As security for the payment of the Future Support Award, the Debtor shall grant Wipaporn Teekhungam on behalf of her Minor Children a second priority lien position in and to the NTSI Brokerage Account and a first priority lien position in and to the Segregated Account 2. All payments, from whatever source beginning November 2018 paid to Wipaporn Teekhungam on behalf of her Minor Children shall be set off and credited against and reduce the balance due of the Future Support Award.

Any Priority Support Claim to which an objection has been interposed will be paid in the amount as allowed by Final Non-Appealable Order entered in the State Court Case or by the United States Bankruptcy Court or other Court of competent jurisdiction. The holders of Priority Support Claims shall be limited to the cash payment provided herein and shall neither receive nor retain on account of such Claims, any interest in, claims against, or rights, privileges or powers in respect of the Debtor, or any of the Debtor's assets or property.

3.1.4   **Priority Tax Claims** - Priority Tax Claims entitled to priority pursuant to §507(a)(8) shall be paid, in full, on the 15th of the month following the Effective Date. The Holders of Priority Tax Claims shall be limited to the Cash payment provided herein except to the extent they hold a general unsecured non-priority Class 2 Claim. The payment of the Priority Tax Claims in accordance with this Section 3.1.3 shall be in full and final satisfaction, settlement, release and discharge of such Allowed Priority Tax Claim against the Debtor and the Estate. Thereafter, the Holders of such Allowed Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, the Estate, or the Assets. There are no allowed Priority Tax Claims known to the Debtor.

3.2   **Unimpaired Classes of Claims**. (NONE)

3.3   **Impaired Classes of Claims**. (Entitled to Vote on Plan)

3.3.1   **Class 1 Claims** – Class 1 claims consist of the Class 1 allowed secured claims of Northern Trust Securities, Inc. and National Financial Services, LLC arising out of the Northern Trust Margin Agreement the balance of which is $5,596,095.09 as of March 31, 2019.

Allowed Class 1 Claims shall be paid, in full, through the periodic liquidation of the NTSI Brokerage Account securing Class 1 Claims. Commencing on the 15th of the month after the Confirmation Date and continuing until Class 1 Claims are paid, in full, the Debtor shall liquidate securities in the NTSI Brokerage Account in the minimum gross amount of

approximately $200,000.00 per month (the "Minimum Monthly Liquidation") of which one-half
(½) will be paid to Class 1 Claims and the remaining balance of the Minimum Monthly
Liquidation will be deposited into the Segregated Account 2 to be established at either Northern
Trust Bank, Associated Bank or First American Bank. Of the amount to be deposited into the
Segregated Account 2 the Debtor will be authorized to pay the balance of current post-petition
child support not withheld from the Debtor's wages or paid from the Existing 503(g) Trust (and
such payments with reduce the Future Support Award), and pay up to twenty-five percent (25%)
of the Minimum Monthly Liquidation monthly to the Internal Revenue Service and Illinois
Department of Revenue for estimated capital gain taxes. The remaining balance and funds in the
Segregated Account 2 shall be retained and pledged as security for payment of the Future
Support Award. Except as otherwise provided herein, the Debtor shall be restricted and
prohibited from using funds on deposit in the Segregated Account 2 until such time that the Class
1 Claims and Priority Support Claims are paid, in full.

The Holder of the allowed Class 1 Claim shall retain all security interests and liens held pre-
petition, without the need to file new Financing Statements or other loan documentation. All other
conditions, provisions and terms of the Northern Trust Margin Agreement and other loan
documents shall remain in full force and effect except that the Debtor shall sell or otherwise
dispose of collateral as he sees so fit and in accordance with the provisions hereof. The holders
of the Class 1 Secured Claims shall be limited to the cash payments, retention of its liens, and
other rights as provided herein and shall neither receive nor retain on account of such Claims,
any interest in, claims against, or rights, privileges or powers in respect of the Debtor, or any of
the Debtor's assets or property. Upon receipt by the holder of the Class 1 Claim of one hundred
percent (100%) payment of its allowed claim, the holder shall release its claim and terminate all
liens and security interests held by the holder of said claim. The holder of the allowed Class 1
Claims shall be limited to the cash payment provided herein and shall neither receive nor retain
on account of such Claims, any interest in, claims against, or rights, privileges or powers in
respect of the Debtor, or any of the Debtor's assets or property. Class 1 Claims are impaired
under the Plan.

3.3.2   **Class 2 Claims** – Class 2 claims consist of allowed General Unsecured Non-
Priority Support Claims (including the disputed Priority Support Claim of Wipaporn Teekhungham
and Winton Anthony Perry, and excluding Class 1 Claims, the claims of holders of assumed
Executory Contracts and Unexpired Leases, and the Class 3 Claims of Susan Higinbotham, E.D.
Higinbotham Trust and H.N. Higinbotham Trust. A Summary of Claims which identifies the
allowed Class 2 claims is attached hereto Exhibit A and made a part hereof. Class 2 allowed
claims aggregate $662,314.87.

Payment of Class 2 Claims shall be made in the following manner: Four (4) equal
payments of $137,667.39 and a fifth (5th) final payment of $137,667.37 on the five anniversaries of
the Confirmation Date shall be made to Allowed Class 2 Claims *pro rata* from a fund of
$688,336.93 derived from the Estate's available cash, cash equivalents, the disposition, liquidation
and sale of Personal Property and Real Property, Debtor's personal service income, the proceeds
of the liquidation of exempt assets including but not limited to qualified retirement accounts,
deferred compensation and savings plans and IRA(s), and litigation claim proceeds.

Any claim to which an objection has been interposed will be paid in the amount as allowed by Final Order of the Court within thirty (30) days of the date upon which any such claim objection is resolved by Final Order of the Court. The holders of Class 2 Claims shall be limited to the cash payment provided herein and shall neither receive nor retain on account of such Claims, any interest in, claims against, or rights, privileges or powers in respect of the Debtor, or any of the Debtor's assets or property. Class 2 Claims are impaired under the Plan.

3.3.3  **Class 3 Claims** - Class 3 claims consist of allowed claims (excluding Class 1 and 2 Claims and the claims of holders of assumed Executory Contracts and Unexpired Leases) of Class 3(a) Susan Higinbotham including Marital Claims in the amount of $10,366,066.04, Class 3(b) E.D. Higinbotham Trust in the amount of $1,689,959.00 and Class 3(c) H.N. Higinbotham Trust in the amount of $4,620,298.00. Class 3(a), 3(b) and 3(c) allowed Claims shall be subordinate to allowed Class 2 General Unsecured Non-Priority Support Claims, shall not receive any distributions under the Plan and shall survive the Plan without impairment of any kind or nature. Class 3 Claims are impaired under the Plan.

## ARTICLE IV
## GENERAL PROVISIONS AND PROVISIONS FOR EXECUTION OF THE PLAN

4.1    Plan Modification.

(a)    Alterations, amendments or modifications to this Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Hearing, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code. The Debtor also reserves the right to make such modifications at or prior to any Confirmation Hearing as are necessary to permit this Plan to be confirmed under section 1129 of the Bankruptcy Code.

(b)    A Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended or modified, provided that the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

(c)    After the Confirmation Date and prior to the Effective Date, the Debtor may make technical adjustments and modifications to the Plan without further order of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims.

(d)    The Debtor reserves the right to revoke or withdraw the Plan at any time before entry of a Confirmation Order. In the event (i) the Debtor revokes or withdraws the Plan at any time prior to the Confirmation Date, or (ii) the Confirmation Order is not entered, the Plan shall be deemed to be null and void. In such event, nothing contained in the Plan or the Disclosure Statement shall be deemed to constitute an admission of validity, waiver or release of any Claims by or against the Debtor or any person or to prejudice in any manner the rights of the Debtor or any person in any proceeding involving the Debtor.

4.2     Claimants Duty - All holders of claims or interests receiving a distribution pursuant to the terms and conditions of the Plan shall take such actions as may be reasonably necessary to evidence and effectuate the terms and conditions of the Plan.

4.3     Sale of Assets – The Debtor shall be authorized to dispose, liquidate and sell any and all of his Personal Property and Real Property and the proceeds of any such sale shall be made available to fund the payments required under the Plan,

4.4     Source of Funds - All Cash necessary for the Debtor to make payments of Cash pursuant to the Plan shall be obtained from sources, including but not limited to: (a) the Debtor's Cash and Cash Equivalents on hand; (b) the proceeds from the liquidation and sale by the Debtor of Personal Property and Real Property; (c) Debtor's personal service income; (d) the proceeds of the liquidation of exempt assets including but not limited to qualified retirement accounts, deferred compensation and savings plans and IRA(s), (e) the deposit of $2,000,000.00 held by the State Court Receiver in the State Court Receiver's IOLTA Account pursuant to bankruptcy court order; and, (f) litigation claim proceeds.  The Debtor projects that his cash flow will be sufficient to make the Plan payments.

4.5     Vesting of Estate Property - As of the Confirmation Date, and subject to the terms and conditions of the Plan, the Debtor shall be revested with all of his property, subject only to outstanding liens as provided by this Plan.  The Debtor shall be entitled to manage his affairs without further order of this Court, subject only to the restrictions set forth in this Plan.  On the Confirmation Date the State Court Receiver shall cause $2,000,000.00 in the State Court Receiver's IOLTA Account to be transferred to an interest bearing Segregated Account 1 to be established by the Debtor at the Northern Trust Bank, First American Bank or Associated Bank pending entry of a Final Non-Appealable Order entered by the United States Bankruptcy Court or such other Court of competent jurisdiction relating to the Retroactive Support Award.

## ARTICLE V - ACCEPTANCE OR REJECTION OF THE PLAN

5.1     Classes Entitled to Vote – Class 1, Class 2 and Class 3 are entitled to vote to accept or reject the Plan.

5.2     Cram-down Confirmation of this Plan - The Debtor may request confirmation of the Plan, as it may be modified from time to time, under §1129(b) of the Bankruptcy Code with respect to any Class rejecting the Plan.

## ARTICLE VI - PROVISIONS GOVERNING DISTRIBUTIONS

6.1     Distributions for Claims or Interests Allowed as of the Effective Date - Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of either the Confirmation Date or the Effective Date shall be made on such date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

6.2  <u>Interest on Claims</u> - Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, post petition interest shall not accrue or be paid on any Claims, and no Holder of any other Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim.

6.3  <u>Fractions of Dollars</u> – Notwithstanding any other provision of this Plan, the Debtor, shall not need to distribute funds to any holder of an Allowed Claim when the distribution total is less than $5.00.

6.4  <u>Disbursing Agent</u> - The Debtor shall serve as "Disbursing Agent" for all Distributions required under the Plan to Holders of Allowed Claims.

6.5  <u>Delivery of Distributions</u>.

(a)  Cash Distributions by check shall be mailed to each holder of an Allowed Claim entitled to receive such Distributions under this Plan at the address listed on the Schedules or Amended Schedules, unless a more recent address was provided to the Debtor on the proof of Claim filed by such holder of an Allowed Claim or in writing prior to or after the Effective Date delivered to the Debtor or the Debtor.

(b)  If any Distribution is returned as undeliverable, the Debtor shall not be required to make further Distributions to such holder of an Allowed Claim unless and until the Debtor is notified of such Holder's then current address, at which time all previously undelivered Distributions shall be made to such Holder.

(c)  The Debtor shall have no obligation to make a Distribution to a Holder of an Allowed Claim if the Debtor is not notified of the then-current address of such Holder within ninety (90) days of the date of such Distribution. Any such Distributions unclaimed after ninety (90) days of the date of such Distribution shall be considered unclaimed property under section 347(b) of the Bankruptcy Code.

(d)  Each Holder of an Allowed Claim shall be required to provide to Debtor such holder's federal identification number. No Distribution shall be required to be made absent receipt of such information.

6.6  Compliance With Tax Requirements.

(a)  <u>Withholding Taxes</u>. Any federal or state withholding taxes or other amounts required to be withheld under applicable law shall be deducted and withheld from any Distributions. All Holders of Allowed Claims shall be required to provide any information necessary to effect the withholding of such taxes. Notwithstanding the foregoing, each Holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive responsibility to satisfy and pay any tax obligations imposed on such Holder by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution.

(b)     <u>Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from the Debtor to any person pursuant to the Plan in the United States of America shall not be subject to any stamp tax or similar tax, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation of any of the documents referred to herein without the payment of any such tax or governmental assessment.

6.7     <u>Allocation of Plan Distributions Between Principal and Interest</u> - To the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of principal indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the claim, to the portion of such Claim representing accrued but unpaid interest.

6.10    <u>Means of Cash Payment</u> - Payments of Cash made pursuant to the Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Debtor by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Debtor.

6.11    <u>Distribution Minimum</u> – The Debtor shall not be obligated to make a Distribution of less than $20.00 in Cash.

## ARTICLE VII - EXECUTORY CONTRACTS

7.1     <u>Executory Contracts and Unexpired Leases</u> – On the Petition Date, the Debtor was a party to an oral share crop agreement with Tom Nelson which will be assumed as of the Confirmation Date.

7.2     <u>Contracts and Leases Not Assumed and/or Assigned are Rejected</u> - All unexpired leases and contracts which are executory, in whole or in part, and which were originally executed prior to the filing of the Chapter 11 petition, and to which the Debtor is a party, and have not been assumed, assigned, rejected or terminated during the pendency of the Chapter 11 proceedings or pursuant to the provisions of the Plan, shall be deemed rejected as of the Confirmation Date.

7.3     <u>Bar Date for Rejection Damages</u> - If the rejection of an executory contract or unexpired lease pursuant to this Plan results in damages to the counterparty of such contract or lease, the Holder of the Claim arising out of the rejection of such contract or lease must file a proof of Claim with respect to such amounts with the Bankruptcy Court no later than thirty (30) days after service of notice of the Confirmation Date, which notice prominently shall state that such executory contracts and unexpired leases have been rejected.  If a proof of Claim for such rejection damages is not filed within thirty (30) days after service of notice of the Confirmation Date, such counterparty shall be forever barred from asserting a Claim for such damages.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
## UNLIQUIDATED CLAIMS AND LITIGATION CLAIMS

8.1    Objection Deadline, Prosecution of Objections - Objections to the allowance of claims will be filed with the Court on or before sixty (60) days after the Confirmation Date. The Debtor shall be authorized to, and shall, resolve all Disputed Claims or Disputed Interests by withdrawing or settling such objections thereto, or by litigating to judgment (in the Bankruptcy Court or such other court having jurisdiction) as to the validity, nature and/or amount thereof. Claims first filed on or after the Confirmation Date shall be deemed disallowed and forever barred.

8.2    No Distributions Pending Objection - If any such objection is pending on any Distribution Date, then no distribution shall be made to such claimant until entry of a final and non-appealable Order resolving the claim objection and determining the validity and amount of such claim or interest.  After entry of an Order allowing, in whole or in part, a claim which has been the subject of an objection, the Debtor shall disburse to such Allowed Claims upon entry of a final and non-appealable Order not less than fourteen (14) days following the entry of the Order allowing the claim, to the holder of such allowed claim the appropriate dividend.  Objections not filed within the time periods set forth herein shall be deemed waived and forever barred.

8.3    Contingent and Unliquidated Claims - If any allowed claim contains a contingent and unliquidated amount, then no distribution shall be made to such claimant subject to the following.  The Debtor shall disburse not less than fourteen (14) days following the filing of such "Final Claim" to the holder of such allowed claim the appropriate Plan distribution.  Any "Final Claim" shall be filed no later than one (1) year from the Effective Date of the Plan or such contingent and unliquidated amounts of a claim shall be disallowed and forever barred from receiving distributions under the Plan.

8.4    Causes of Action (Avoidance and Litigation Claims).

(a)    As of the Effective Date, any and all Causes of Action that are pending, that have accrued or that are accruing to the Debtor or the Estate shall vest in the Debtor, and the Debtor shall retain all of the Causes of Action of the Debtor and his Estate, including, without limitation, fraudulent transfer and preferential transfer claims under Chapter 5 of the Bankruptcy Code.

(b)    The Debtor shall have the duty, authority and standing to prosecute such Causes of Action on behalf of and for the benefit of the Estate and the Debtor's creditors, including the authority to compromise, discontinue, abandon or dismiss any or all such Causes of Action without Bankruptcy Court approval; provided, however, that any settlement of a Cause of Action shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.

(c)    Confirmation of this Plan does not release any Cause of Action, and the Confirmation Order shall not have any *res judicata* or collateral estoppel effect on the Debtor's prosecution of any Cause of Action.

8.5    <u>Causes of Action</u> - Pursuant to 11 U.S.C. §1123(b), the Debtor shall be vested with the right to prosecute all known and unknown claims, demands, rights and causes of action that the Debtor or the Debtor's Estate may hold against any Person or Entity.  The Debtor's investigation of litigation claims and actions continues.

8.6    <u>Fees Relating to Causes of Action</u> – After the Effective Date all fees, costs and expenses including but not limited to attorney fees, accountant fees, witness fees, expert witness fees, court reporting fees and filing fees incurred with respect to filing, prosecution and settlement of Causes of Action shall be paid by the Reorganized Debtor.

### ARTICLE IX - CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1    <u>Conditions to Confirmation</u> - The Bankruptcy Court shall not enter the Confirmation Order unless and until the Confirmation Order is reasonably acceptable in form and substance to the Debtor.

9.2    <u>Conditions to Effective Date</u> - As condition precedent to the occurrence of the Effective Date, the Confirmation Order confirming the Plan, as such Plan may have been modified, shall be in full force and effect and shall not have been vacated, modified or stayed, and if it is the subject of an appeal or reconsideration, no stay of the Confirmation Order shall be in effect.

9.3    <u>Secured Claims Retention of Lien</u> - Class 1 Holders of allowed secured claims shall receive fair and equitable treatment with respect to each allowed secured claim provided for by the Plan, as follows: (a) either the holder of such claim has accepted the Plan, and shall receive the treatment specified herein; or (b) the holder of such claim retains the lien securing such claim and the value, as of the Effective Date of the Plan, of property to be distributed under the Plan on account of such claim is not less than the allowed amount of such claim; or, (c) the Debtor has surrendered the property securing such claim to such holder.

9.4    <u>Completion and Consummation of Plan</u> – The Plan shall complete and be consummated upon payment of the first (1st) distribution required by the Plan to Class 2 Claims.

### ARTICLE X - EFFECT OF PLAN CONFIRMATION

10.1    <u>Binding Effect</u> – The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former Holders of Claims and Interests, and their respective successors and assigns.

10.2    <u>Setoffs and Recoupments</u> - Except as otherwise provided in the Plan, the Debtor may, but shall not be required to, set off, counterclaim or recoup against any Claim and the payments or other Distributions to be made pursuant to the Plan in respect of the Claim, claims of any nature that the Estate may have against the holder of the Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any claim that the Estate may have against the holder.  Setoffs, counterclaims or recoupments arising from events after the Petition Date shall reduce the payouts under any Allowed Claim

dollar for dollar. Setoffs, counterclaims or recoupments arising from pre-petition events shall reduce the payout amount of the Allowed Claim proportionately with reduction in the Allowed Claim. If a setoff, counterclaim or recoupment asserted by the Debtor exceeds the amount of any Claim, the Holder of the Claim shall not be entitled to any Distribution under the Plan, and the Debtor reserves its right to recover any excess setoff, counterclaim or recoupment from the holder of such Claim. Neither NFS and, or NTSI shall be allowed to setoff any amounts due under the Northern Trust Margin Agreement unless the collateral securing the Northern Trust Margin Agreement is insufficient under the Northern Trust Margin Agreement. In such event the collateral will be liquidated by NFS and, or NTSI to the extent necessary to bring the collateral base back into compliance under the Northern Trust Margin Agreement.

10.3    Insurance Preservation - Nothing contained in this Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that cover claims against the Debtor.

10.4    Term of Bankruptcy Injunction or Stays - All injunctions or stays provided for in the Bankruptcy Case under §§105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.5    Plan Injunction - As of the Effective Date, in consideration for the obligations of the Debtor under this Plan, each Holder of a Claim shall be deemed to have forever released and waived all Claims, demands, debts, rights, causes of action, remedies or against the Debtor and the Debtor's Estates. Except as otherwise provided by this Plan, as of the Confirmation Date, all persons that hold Claims shall be permanently enjoined from taking any of the following actions against the Debtor, his attorneys, accountants, financial advisors, agents and other professionals, on account of any Claim: (a) commencing or continuing in any manner any action or other proceeding respecting a Claim; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order respecting a Claim; (c) creating, perfecting or enforcing any lien or encumbrance respecting a Claim; (d) asserting a right of setoff, subrogation or recoupment of any kind respecting a Claim, the Assets or other property of the Estate; and (e) commencing or continuing any action that does not comply with or is inconsistent with this Plan. The Court shall have jurisdiction to determine and award damages to Debtor for any violation of such injunction including compensatory damages, professional fees and expenses and exemplary damages for any willful violation of said injunction, provided a copy of this injunction has been served on any party sought to be held in contempt of it.

10.6    Releases by Claim Holders - Except as expressly provided in this Plan, at all times on and after the Confirmation Date, through and including the date of entry of a final decree closing the Case, all persons who have been, are or may be holders of Claims against the Debtor arising prior to the Effective Date shall be enjoined from taking any of the following actions against or affecting the Debtor, the Estate, or the Assets, with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):

(a)    commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtor or its Estate, including, without limitation, all suits, actions and proceedings that are pending as of the Effective Date;

(b)    enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the Estate, or the Assets;

(c)    asserting any right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtor, the Estate, or the Assets; and

(d)    proceeding in any manner in any place whatsoever against the Debtor, the Estate, or the Assets that does not conform to or comply with the provisions of the Plan.

10.7    Any judgment heretofore or hereafter obtained in any court other than the United States Bankruptcy Court, for the Northern District of Illinois, Eastern Division, is null and void as a determination of the personal liability of the Debtor with respect to the following:

(a)    debts dischargeable under 11 U.S.C. §523;

(b)    unless heretofore or hereafter determined by order of this Court to be non-dischargeable, debts alleged to be excepted from discharge under sub-sections (2), (4) and (6) of 11 U.S.C. §523(a); and,

(c)    debts determined by the Court to be discharged.

## ARTICLE XI - RETENTION OF JURISDICTION

Pursuant to §§105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)    Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or interests;

(b)    Resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(c)    Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(d)    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on or after the Effective Date;

(e)    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or

documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(f)     Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to the Plan, or any entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(g)     Upon motion and notice and for good cause shown, the Court may modify the Plan before or after the Confirmation Date pursuant to §1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Confirmation Order or and/or contract, instrument, release or other agreement or document created in connection with the Plan, the or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, if permitted by Court order;

(h)     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan.

(i)     Issue injunctions, enter and implement other orders or take such other actions as shall be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan, the Confirmation Order or the Plan Injunction;

(j)     Hear and determine Litigation Claims;

(k)     Hear and determine matters concerning state, local and federal taxes in accordance with §§346, 505 and 1146 of the Bankruptcy Code;

(l)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated or distributions pursuant to the Plan are enjoined or stayed;

(m)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(n)     Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Bankruptcy Case;

(o)     Hear and determine all matters related to the property of the Estate from and after the Confirmation Date;

(p)     Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and,

(q)     Enter an order closing the Bankruptcy Case.

## ARTICLE XII - MISCELLANEOUS PROVISIONS

12.1     <u>Effectuating Documents and Further Transactions</u> - The Debtor is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan.

12.2     <u>Payment of Statutory Fees</u> - All fees payable pursuant to §1930 of title 28 United States Code shall be paid by the Debtor as and when they become due, until the Bankruptcy Case is closed.

12.3     <u>Severability of Plan Provisions</u> - If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.4     <u>Successors and Assigns</u> - The Plan shall be binding upon and inure to the benefit of the Debtor, and her respective successors and assigns. The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign of such entity.

12.5     <u>Revocation, Withdrawal or Non-Consummation</u> – The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation of the Plan does not occur, then, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person.

12.6    Notice - All notices, requests and demands to or upon the Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered and addressed as follows:

>           Harlow N. Higinbotham
>           RD No. 2
>           2002 East Cass Street
>           Joliet, Illinois 60432
>
>           with a copy to:
>
>           Gregory K. Stern, P.C.
>           53 West Jackson Boulevard
>           Suite 1442
>           Chicago, Illinois 60604

12.7    Governing Law - Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan document, exhibit or schedule to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

12.8    Schedules - All exhibits and schedules to the Plan are incorporated and are a part of the Plan as if set forth in full herein.

12.9    Appeal – The appeal pending in the Appellate Court of Illinois, First District, Appeal No. 1-19-0572, commenced by the filing of a Notice of Appeal on March 19, 2019 appealing the September 14, 2018 judgment modifying child support and from the November 5, 2018 order adjudicating child support arrearage, and any and all orders leading up to and included in said judgment orders shall proceed to its conclusion in the Appellate Court of Illinois, First Judicial District, and, or in any subsequent appeal to the Illinois State Supreme Court.

12.10    Financing – After the Confirmation Date the Reorganized Debtor may seek financing to fund distributions and payments required in this Plan, as long as the financing and any collateral required for said financing is not otherwise inconsistent with any provision or term of this Plan.

**INTENTIONALLY LEFT BLANK**

This Plan of Reorganization has been respectfully submitted on this 9th day of April 2019 by the Debtor.

By: _Harlow N. Higinbotham_
Harlow N. Higinbotham, Debtor

Gregory K. Stern, Esq. (Atty. ID #6183380)
Monica C. O'Brien, Esq. (Atty. ID #6216626)
Dennis E. Quaid, Esq. (Atty. ID #02267012)
Rachel S. Sandler (Atty. ID #6310248)
53 West Jackson Boulevard
Suite 1442
Chicago, Illinois 60604
(312) 427-1558