## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HARLOW N. HIGINBOTHAM, | ) | Case No. 18 B 31185 |
| | ) | |
| Debtor. | ) | Hon. LaShonda A. Hunt |

## SUPPLEMENT TO MOTION TO DISMISS AND
## PRELIMINARY OBJECTION TO DEBTOR'S PLAN

The Debtor's recently filed plan of liquidation (the "***Plan***") asks the Court to endorse an unlawful scheme that does substantial violence to the rights of Movants and to the very essence of the Bankruptcy Code, solely to further a goal – *i.e.,* to obtain a stay pending appeal of Judge Bernstein's child support award -- that has absolutely no connection to the adjustment of debtor/creditor relations or the preservation of going concern value.  The Plan has thus not been proposed in good faith, as required by §1129(a)(3).  When the debtor in *In re S. Beach Sec., Inc.*, 606 F.3d 366, 376 (7th Cir. 2010), proposed a plan of that ilk, Judge Posner called it a "travesty" and that designation applies here, except with even greater potency due to the targeted injury the Plan has on the rights of Movants.[1]

The Plan also violates Illinois law, which is another strike against its confirmation.  Not only does §1129(a)(3) require a finding of good faith, it also bars a court from confirming a plan that has been proposed in violation of law. The Plan

---

[1] In the South Beach case, the only party potentially impacted by the debtor's scheming was the Internal Revenue Service, but they did not even file an objection to the plan.  As discussed herein, the Movants' rights are substantially impacted by the Debtor's Plan. Indeed, the very purpose of the Plan is to cause hardship to Movants.

here is a blatant vehicle to circumvent Illinois' well-settled prohibition upon staying enforcement of child support orders and it also strips Movants of their State law right to seek a modification of the child support awarded to them.

Camouflaged in the vernacular of a delayed "Effective Date", the Plan stalls distributions to Movants until the Debtor decides he has exhausted all appeals.[2] Under the rather mundane assumption that if something "walks like a duck, quacks like a duck and looks like a duck, ...it's a duck," the delayed Effective Date is nothing other than a stay pending appeal. In this respect, the Plan vests in the Debtor the exclusive right to determine when he will honor the State Court orders that have awarded child support and other relief. He will do so when he decides he no longer wants to pursue an appeal. In this respect, he essentially usurps the role of a state court judge. Not a bad outcome for a litigant obsessed with delaying and challenging *ad infinitum* his obligation to pay child support to his three children, but an outcome that cannot be condoned by this Court.

The Plan also pretends that Judge Bernstein never entered any orders awarding child support to the Debtor's children, or that she never made a Rule 304(a) finding that makes such orders final and appealable or that Illinois law vests in a trial court broad discretion to modify child support awards. The Plan repeatedly refers to the subject claims held by Movants as "disputed," even though a final order has been entered fixing such claims. This alone smacks of bad faith.

The defects in the Plan are numerous and fatal to its confirmation and highlight what Movants'[3] have been arguing from the commencement of this

---

[2] Section 1.31 defines the Effective Date "the later of December 31, 2019, or the date that the Future Support Award and Retroactive Support Award become final and non-appealable." Under this definition, the Debtor could stretch the appeal process for years, if he seeks review by the Illinois Appellate Court, the Illinois Supreme Court and the United States Supreme Court.

[3] Wipaporn Teekhungam ("Teekhungam") and the Parties' Minor Children shall be collectively referred to as the "Movants." Judge Bernstein reminded the parties that Wipaporn is not seeking support from the Debtor.

proceeding– this case was filed in bad faith for no legitimate purpose and solely to trample the rights of Movants.  It should thus be dismissed.  The following is but a small sample of some of the Plan's provisions that establish a lack of good faith or that render the Plan nonconfirmable.  Movants will file a further objection to the Plan to the extent the Court does not grant their motion to dismiss.

## I.   ARGUMENT

**A. The Debtor's Plan serves no purpose other than to stay enforcement of the State Court child support orders pending appeal.**

### 1.   The Debtor bears the burden of proof on all of the elements under Section 1129(a), including proving the Plan was propounded in good faith.

"Chapter 11 debtors must show by a preponderance of the evidence that every requirement for plan confirmation set forth in 11 U.S.C. § 1129 have been met." *In re Am. Consol. Transp. Cos.,* 470 B.R. 478, 486 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) (citing *U.S. ex rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654 (B.A.P. 9th Cir. 1994) (citing *In re Rusty Jones, Inc.*, 110 B.R. 362, 373 (Bankr. N.D. Ill. 1990))). "Filing an objection does not shift the burden away from the plan proponent that all requirements have been met." *Id.* (citing *In re Rusty Jones, Inc.*, 110 B.R. at 373.

### 2.   The Plan is not proposed in good faith and fails the Section 1129(a)(3) requirement.

Under 11 U.S.C. 1129(a)(3), a reorganization plan must have been proposed in good faith and not by any means prohibited by law.  11 U.S.C. §1129(a)(3).  *In re Madison Hotel Assocs.,* 749 F.2d 410, 424-25 (7th Cir. 1984) is a seminal case on the good faith requirement under §1129(a)(3).  In *Madison Hotel,* the Seventh Circuit stated that "[t]hough the term 'good faith,' as used in section 1129(a)(3), is not defined in the Bankruptcy Code, *see* 5 L. King, Collier's on Bankruptcy para. 1129.02[3][a] at 1129-14 (15th ed. 1979), the term is generally interpreted to mean that there exists 'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.'" *Id.* ((quoting *In re Nite Lite Inns*, 17 Bankr. 367, 370 (Bankr. S.D. Cal. 1982); *In re Coastal Cable*

*T.V., Inc.*, 709 F.2d 762, 764 (1st Cir. 1983); *Matter of Nikron, Inc.*, 27 Bankr. 773, 778 (Bankr. E.D. Mich. 1983)).

*M*ore recently, the Seventh Circuit again visited the good faith requirement under § 1129(a)(3) in *In re S. Beach Sec., Inc.*, 606 F.3d 366, 376 (7th Cir. 2010), where it held that "[t]o be in good faith a plan of reorganization must have a true purpose and fact-based hope of either 'preserving [a] going concern' or 'maximizing property available to satisfy creditors.'" *Id.* (quoting *Bank of America National Trust & Savings Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999) (citing *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir. 1984))).

### a. This case, like *South Beach,* abuses the Bankruptcy Code.

The parallels between this case and *South Beach* are notable, instructive and fatal to the confirmation of the Debtor's Plan.  Each case dramatizes a debtor's effort to stretch Chapter 11 far beyond the limits for which it was intended.  In *South Beach,* the debtor, through crafty antics, tried to use chapter 11 to preserve net operating losses of a defunct business.  The Seventh Circuit found such conduct to be a travesty.

In this case, the Debtor, again through crafty antics, is trying to use chapter 11 to obtain a stay pending appeal of a child support order when State law prohibits such a result.  There is thus every reason to believe that, like in *South Beach,* the Seventh Circuit would find such conduct here to be a travesty.

In both cases, the debtor was not seeking to serve a legitimate reorganization goal. Instead, the sole purpose of the filing was to use the protections provided to unfortunate but honest debtors to accomplish a non-bankruptcy objective.  In *South Beach* the debtor's plan transferred all of the debtor's stock to a related entity (Scattered) so that Scattered could then, through an assortment of tax maneuvers,

monetize the net operating losses South Beach had acquired. *Id.* ("the purpose of the bankruptcy is to monetize South Beach's net operating losses.").[4]

In this case, the Debtor is using the provisions under § 1129 and the automatic stay not to obtain a breathing spell, or to fend off a race to the courthouse, or to preserve his assets for all creditors, or to implement an equitable distribution of assets among creditors, but to stiff-arm indefinitely his children from collecting the funds they were awarded.[5]  The Plan makes patently clear the Debtor does not need the protections of bankruptcy "to protect the debtor, creditors and the bankruptcy estate, to preserve the status quo, prevent the estate from being dismembered, and thereby maximize the ultimate distribution to all creditors." *Boyer v. US Bank (In re Case No. 06-12067 Am. Lodging, Inc.),* 397 B.R. 906, 909 (Bankr. N.D. Ind. 2008) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in (1978) U.S. Code Cong. & Ad. News 6296-97.").

The Debtor has the ability to pay his creditors in full and he should do so outside of bankruptcy, as he was doing before Judge Bernstein ruled against him. If the Debtor not invoked title 11 protections to further his obsessive efforts to thwart

---

[4] In *South Beach,* the scheme was described as follows:

> If the plan of reorganization were approved, Scattered would become the owner of South Beach and, wanting to extract a tax benefit from South Beach's net operating losses, would transfer capital to South Beach to enable that company to generate income against which to offset the net operating losses. The result would be to shield income of Scattered from federal tax, because South Beach's income would be Scattered's income since Scattered would be South Beach's sole owner.

*In re S. Beach Sec., Inc.*, 606 F.3d 366, 374 (7th Cir. 2010).

[5] Judge Bernstein already found – and her finding has collateral estoppel effect – that the Debtor's willingness to spend resources to fight his obligation to pay child support is limitless.  Judge Bernstein found that "Harlow is extraordinarily, if not vexatiously, litigious."  *See* Ex. 1 at 13.

his children's rights to child support over the past decade, all creditors in Classes 1 and 2 would have been paid already and would not have been dragged into this proceeding. Instead, the Debtor is seeking to use the Plan, though the delayed Effective Date embodied in the Plan as a sword, and not a shield, in contravention of their very purpose. *Id.* (the stay "is characterized as a shield, not a sword.") (citing *Winters by and Through McMahon v. George Mason Bank*, 94 F.3d 130, 136 (4th Cir. 1996); *In re Globe Inv. and Loan Co. Inc.*, 867 F.2d 556, 560 (9th Cir. 1990)).

> **b.  This case is a travesty because it is a two-party dispute that provides the Debtor with a further platform to harass his children.**

The fact that the Debtor has the ability to pay his creditors in full on the confirmation date, and that he does not need bankruptcy protection, shows the Debtor's case is a two-party dispute -- i.e., between the Debtor and Movants -- that attempts to use the Bankruptcy Code to obtain a stay pending appeal of Judge Bernstein's orders in the hope that such orders will be vacated on appeal.[6]  Under no circumstances does that goal involve the preservation of a going concern or the maximization of property available to satisfy creditors.  That is why this case, like *South Beach*, is a travesty.  *See In re Liptak, 304 B.R. 820 (Bankr. N.D. Ill. 2004)* (case was merely a two-party dispute the debtor filed to gain a strategic advantage in litigation with ex-wife where the debtor had legitimate debts of only $2 million and assets of more than $10 million.); *In re Casey*, 198 B.R. 910, 916-18 (Bankr. S.D. Cal. 1996) (debtor filed in bad faith when, among other things, case was filed after the family court announced a tentative decision and was just about to enter final

---

[6] The Debtor also has done nothing to avoid the transfers of substantial property to Susan Higinbotham.

judgment).[7] *See also In re CBBT, L.P.,* No. 11-30036-H3-11, 2011 Bankr. LEXIS
1727, at *8-9 (Bankr. S.D. Tex. May 9, 2011) (plan was not filed in good faith under
11 U.S.C. §1129(a)(3) where "[t]here is no evidence that any financial exigence,
other than an inability or unwillingness of the principals to make the balloon
payment,  or renegotiate the note on terms less favorable than those identified in
the proposed plan; precipitated the filing of the instant case, or the instant plan"
and case was a two-party dispute).

### 3.    The Plan contains other provisions that are forbidden by law.

#### a.    The delayed Effective Date is an impermissible stay pending appeal that causes the Plan to again violate §1129(a)(3).

The legislature of the State of Illinois has determined that child support
orders are never stayed pending appeal. "An order requiring maintenance or
support of … a minor child or children ... shall not be suspended or the enforcement
thereof stayed pending the filing and resolution of post-judgment motions or an
appeal." 750 Ill. Comp. Stat. 5/413(a). A party is therefore foreclosed from seeking a
stay pending appeal of any order or judgment of child support. *In re Marriage of
Ackerley*, 775 N.E.2d 1045, 1061 (Ill. App. Ct. 2002).

Notwithstanding the foregoing, the Plan provides that the amounts owed to
Movants from orders the State Court entered will not be paid (if at all) until an

---

[7] The Debtor also is precluded from arguing that he needs bankruptcy protection to
ensure payment to his wife.  There already has been a determination that any
obligation he owes to Susan Higinbotham is illusory:

> Harlow commenced an 'illusory' course of conduct designed to
> remove all of his assets from himself and transfer them to his
> wife, Susan. He has produced promissory notes one of which
> transfers all his assets to Susan in exchange for 'legal advice
> and service' she has rendered to him. Susan is not an attorney.
> … He has only created those notes in an effort to reduce his
> ability to pay child support.  Ex. 1 at 13.

indeterminate moment in the future when all appeals of such orders have been exhausted.  Plan at Article 2.[8] As discussed above, this is nothing other than a stay pending appeal.

Illinois' prohibition upon staying child support orders also renders the Plan facially non-confirmable.  Section 1129(a)(3) imposes two requirements for a plan: it must be proposed in good faith and it cannot be proposed "by any means forbidden by law."  Courts hold the phrase "not by any means forbidden by law" also includes State law.  *See In re Manchester Oaks Homeowners Ass'n, No*. 11-10179-BFK, 2014 Bankr. LEXIS 951, at *33-34 n.9 (Bankr. E.D. Va. Mar. 12, 2014) *See also In re Pac. Gas & Elec. Co, 283 B.R. 41, 52 (N.D. Cal. 2002)* ("Moreover, the bankruptcy code contains several provisions making it highly unlikely that reorganization plans contemplating ongoing illegality would be seriously considered by the bankruptcy court, much less confirmed in a plan of reorganization.").

Admittedly, the "not by any means forbidden by law" portion of Section 1129(a)(3) also has to be read in conjunction with Section 1123(a)(5) 's requirement that "notwithstanding any otherwise applicable nonbankruptcy law," the plan shall provide adequate means for its implementation. *Id.*  The "notwithstanding" clause in Section 1123(a)(5) is a preemption of applicable nonbankruptcy law.  However, this preemption is not without limits. *Id.*

In *In re Irving Tanning Co.*, 496 B.R. 644, 660 (1st Cir. B.A.P. 2013), the court recognized three limitations on the preemptive effect of Section 1123(a)(5). *Id.*

---

[8] The Plan provides that:

> Priority Support Claims — Priority Support Claims entitled to priority pursuant to **§507(a)(1)**, except Administrative Claims and Priority Tax Claims, consists of the disputed allowed claims of Michael Bender as Trustee of 503(g) Trust, Wipaporn Teekhungam and Winton Anthony Perry, and the claims of Wipaporn Teekhungam on behalf of her Minor Children. Allowed Priority Support Claims shall be paid, in full, on the Effective Date of the Plan.

First, the statute preempts applicable nonbankruptcy law only to the extent necessary for implementation of the plan. Second, the statute does not preempt laws protecting public health, safety and welfare. Third, the statute "cannot extend to laws defining and protecting the property rights of third parties." 496 B.R. at 664.

Here, the stay pending appeal embodied in the Plan – i.e., the Plan's delayed Effective Date -- cannot be justified under §1123(a)(5).  First, the prohibition on staying child support orders is akin to a law that protects the public welfare. Providing economic support for one's children is a public obligation that implicates public welfare.

Second, the delayed Effective Date is not necessary to implement the Plan, nor is it fair and equitable.   As the Court noted previously, the Debtor has sufficient assets to pay all of his obligations in full on the Plan's confirmation date. In fact, in a form of unfair discrimination, other priority claims (e.g., professional fees) are being paid on the confirmation date and there is no reason, other than to obtain an unlawful stay pending appeal, to not accord the same treatment to child support.

### b. The Plan impermissibly strips Movants of the right to seek a modification of child support.

*T*he Plan also violates settled Illinois law that gives "'[a] trial court … broad discretion in determining the modification of child support,…" *Lavallais v. Irvin (In re I.I.)*, 2016 IL App (1st) 160071, ¶ 52, 410 Ill. Dec. 177, 194, 69 N.E.3d 402, 419 (quoting *McClure v. Haisha*, 2016 IL App (2d) 150291, ¶ 20, 51 N.E.3d 831, 402 Ill. Dec. 79 and citing *In re Marriage of Rogers*, 213 Ill. 2d 129, 135, 820 N.E.2d 386, 289 Ill. Dec. 610 (2004)). *See also* 750 ILCS 5/510(a) (setting forth factors for modifying child support).

In violation of Illinois law, § 3.1.3 of the Plan attempts to prevent Movants from pursuing their right to seek a modification of child support by providing that the distributions under the plan "shall be limited to the Cash payment provided herein except to the extent they hold a general unsecured non-priority Class 2

Claim." *Id.*  In other words, the Plan states that "[t]he payment of the Priority Support Claims in accordance with this Section 3.1.3 shall be in full and final satisfaction, settlement, release and discharge of such Allowed Priority Support Claim against the Debtor and the Estate" and "[t]hereafter, the Holders of such Allowed Priority Support Claims shall neither receive nor retain on account of such Claims any interest in, claims against, or rights, privileges or powers in respect of the Debtor, the Estate, or the Assets." *Id.*

Once again, there is no equitable or rational reason to deny Movants their State law right to seek a modification of child support and the Debtor is using bankruptcy law as an improper attempt to evade any modifications to the amount awarded.  Stripping this right is not needed to implement the Plan.

### c. The delayed Effective Date does not pass muster under the Bankruptcy Code.

The Plan's delayed Effective Date also violates Section 1129(a) because it is not based upon any legitimate rationale or need.  The Plan provides that the Effective Date will not occur until a time in the unforeseeable future when the Debtor determines that all appeals of the State Court orders have been exhausted. Admittedly, some plans of reorganization have effective dates that are a month or two beyond the confirmation date, but such delays are permissible only upon a showing that it "is linked to the happening of a particular event and is no later than is reasonably necessary to accomplish a legitimate purpose such as the determination of administrative expenses or the resolution of objections to claims." *In re Wonder Corp. of America*, 70 B.R. 1018, 1021 (Bankr. C.D. Conn. 1987).

In this case, of course, the Effective Date is not linked to a specific event, but rather is an amorphous concept that is subject to the Debtors sole discretion as to when all appeals have been exhausted.  Furthermore, the delayed Effective Date is not needed to resolve disputed claims.  Movants do not hold disputed claims. Their claims have been allowed.  "Where a state court has issued a final judgment determining and amount a validity of a debt , the judgment must be given preclusive effect in a subsequent bankruptcy proceeding for the purpose of

allowance of the judgment creditor's claim." *In re Hawk*, 595 B.R. 556, 559 (Bankr. C.D. Ill. 2019); *see also In re Cobb*, 92 B.R. 780 (Bankr. N.D. Ill. 1988) (ruling Debtor collaterally estopped from challenging alimony and support liabilities where Debtor attempted to re-litigate issues argued in state court proceeding).

And the Debtor's anticipated contention that the delayed Effective Date is needed to resolve the pending appeals is not sufficient. In *In re Premiere Network Servs.*, No. 04-33402-HDH-11, 2005 Bankr. LEXIS 2298, at *14, *15, *18 (Bankr. N.D. Tex. July 1, 2005), the bankruptcy court rejected an effective date conditioned on the resolution of appeals of the confirmation order because the date's uncertainty would force claimants to subsidize the confirmation plan. *See also  In re Yates Dev. Inc.*, 258 B.R. 36, 42 (Bankr. M.D. Fla. 2000) (ruling that effective date tied to Debtor's appeal  would force creditors to bear all risk of delay and that imposition of that risk rendered the proposed effective date unreasonable.

For all of the foregoing reasons, the Movants request that the Court enter an Order dismissing the captioned chapter 11 case and providing such other relief as is just and proper.

Dated: April 30, 2019

**Wipaporn Teekhungam**, A.H, a minor, **A.H.**, a minor, and **A.H.**, a minor

By: /s/ William J. Factor
One of Their Attorneys

William J. Factor (6205675)
Deborah K. Ebner, Of Counsel (6181615)
Jeffrey K. Paulsen (6300528)
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (847) 878-6976
Fax: (847) 574-8233
wfactor@wfactorlaw.com
dkebner@deborahebnerlaw.com
jpaulsen@wfactorlaw.com