### UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham,** | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

### NOTICE OF MOTION

**Please take notice** that, on **May 15, 2019, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable LaShonda A. Hunt, United States Bankruptcy Judge for the Northern District of Illinois, in Courtroom 719 of the United States Courthouse, at 219 South Dearborn Street, Chicago, Illinois, to present the **Motion for Relief from Stay to Collect Unpaid Child Support**, a copy of which is included here and served upon you.

Dated: May 10, 2019

Michael Bender, GAL for A.H., a minor, A.H., a minor, and A.H., a minor (three children)

By: /s/ *Adam Goodman*
One of His Attorneys

## CERTIFICATE OF SERVICE

I, Adam Goodman, an attorney, hereby certify that on May 10, 2019, pursuant to Section II.B.4 of the Administrative Procedures for the Case Management/Electronic Case Filing System and Fed.R.Civ.P. 5(a), I caused a copy of the foregoing *Notice of Motion* and the accompanying *Motion* to be served electronically through the Court's Electronic Notice for Registrants on all persons identified as Registrants on the Service List below and by U.S. mail on all other persons identified on the Service List.

/s/Adam Goodman

## SERVICE LIST

**Registrants**
(Service via ECF)

| | |
|---|---|
| Deborah K. Ebner | dkebner@deborahebnerlaw.com |
| William J. Factor | wfactor@wfactorlaw.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Jeffrey K. Paulsen | jpaulsen@wfactorlaw.com |
| Gregory K. Stern | greg@gregstern.com |

**Non-Registrants**
(Service via FedEx Overnight)

Harlow N. Higinbotham
RD No. 2
2002 East Cass St.
Joliet, IL 60432

1500 North Lake Shore Drive
Unit 13-C
Chicago, IL 60610

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| **Harlow N. Higinbotham,** | Bankruptcy No. 18-31185 |
| Debtor. | Honorable LaShonda A. Hunt |

### MOTION FOR RELIEF FROM STAY TO COLLECT
### UNPAID CHILD SUPPORT

Michael Bender, Guardian ad Litem for three of the Debtor's minor children ("***Movant***"), asks this Court to modify the automatic stay under 11 U.S.C. § 362(d) to permit the Debtor to use estate property to satisfy a state court child support judgment. In support of this Motion, Movant state as follows:

#### Background

1.     On July 20, 2018, the Honorable Jeanne Cleveland Bernstein (the "***Domestic Relations Judge***") entered an order (the "***Trust Order***"), attached as **Exhibit A**, requiring the Debtor to place $1,750,000.00 into a trust pursuant to sections 501 and 503(g) of the Illinois Marriage and Dissolution of Marriage Act and Section 802(d) of the Illinois Parentage Act.

2.     On July 25, 2018, due to the Debtor's failure to comply with the Trust Order, the Domestic Relations Judge appointed a receiver to collect the required funds, which were subsequently deposited into the IOLTA account of Michael Bender, the *Guardian Ad Litem* appointed (the "***GAL***") for the Debtor's minor children (the "***503(g) Trust***").

3.     On September 14, 2018, the Domestic Relations Judge entered a judgment, attached hereto as **Exhibit B**, in the state court domestic relations case requiring that the Debtor to pay $11,000.00 per month as and for child support for

3

each of the Children and that this monthly sum would be retroactive to April 1, 2013 (the "***Child Support Judgment***").

4.    The GAL paid child support from the 503(g) Trust from November 1, 2018 through March 1, 2019.

5.    On January 11, 2019, this Court entered an order (the "***January 11 Order***") lifting the automatic stay in part to permit the parties' state court domestic relations proceeding to continue.  The January 11 Order provides in relevant part:

> The automatic stay is modified to allow the state court case . . . to proceed on all matters relating to the entry or modification of child support orders, including any resulting appeals, and the determination of any request for sanctions against the Debtor. . . . However, no collection activity on any judgment is allowed against property of the Estate absent prior approval of the U.S. Bankruptcy Court.

[Docket No. 55]

6.    On March 6, 2019, this Court entered an order ruling in relevant part that "[p]ursuant to 11 U.S.C. § 362(b)(2)(C), the filing of the Debtor's Chapter 11 petition on November 5, 2018, did not operate as a stay of any action 'with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute.'" [Docket No. 141]

7.    On March 15, 2019, the Domestic Relations Judge entered a Uniform Order for Support, attached as **Exhibit C**, and instructed the GAL to serve a Notice of Withholding upon the Debtor's employer.

8.    On April 26, 2019, Movant received a check from the State Disbursement Unit in the amount of $6,084.36 and received a second check on May 2, 2019 for the same amount.  Federal law limits the amount that may be withheld from an individual's paycheck to 50% of the individual's weekly disposable earnings.  15 U.S.C. § 167/303(b)(2)(A).

9.     Debtor has stated that he is paid twice a month.  As a result, and absent relief granted in this motion, the Debtor will pay $12,168.72 a month in child support, which is $20,831.28 less per month than the amount specified in the Child Support Judgment.

10.     On April 29, 2019, the *Emergency Motion to Release Funds from Interim 503(g) Trust to Pay Current Child Support* was presented in state court in order to ensure that the parties' minor children would receive their full support amount for the month of April 2019 and going forward.

11.     On that date, the Domestic Relations Judge entered an order providing that the funds needed to satisfy the Debtor's April 2019 support obligations be deducted from the 503(g) Trust. *See* **Exhibit D**.

12.     As noted above, the money being withheld from the Debtor's paycheck is and will continue to be insufficient to cover his obligations under the Child Support Judgment.

13.     On April 9, 2019, the Debtor filed his proposed chapter 11 plan of reorganization. [Docket No. 158]

14.     Exhibits attached the Debtor's disclosure statement provide that the Debtor's average income for the years 2016 and 2017 exceeded $1 million per year. [Docket No. 159]

15.     The financial projections attached to the Debtor's disclosure statement, and attached as **Exhibit E**, indicate that the Debtor's income will be as follows:

April 2019: $67,901.55

May 2019: 107,020.94

June 2019: 1074,020.94

July 2019:  2,107,020.94

5

Following July 2019, the Debtor projects that his income will exceed $200,000 per month through February 2022. The Debtor states these amounts are <u>net</u> of the $12,168.72 monthly withholding for child support.

16.    Movant intend to file a motion to show cause in the state court proceeding based on the Debtor's willful and contumacious refusal to honor his child support obligations. If that motion is granted, the Domestic Relations Judge is likely to require the Debtor to purge his contempt for his failure to pay child support, which will presumably require the use of estate resources.

**1.1.   The automatic stay should be terminated to permit collection of the Debtor's obligations under the Child Support Judgment.**

17.    A creditor is entitled to relief from the automatic stay "for cause." 11 U.S.C. § 362(d). The debtor has the burden to show that cause does not exist. *Id.* § 362(g). "Cause … has no clear definition and is determined on a case-by-case basis." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991) (*quoting In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)).

18.    In determining whether cause exists to lift the automatic stay, courts evaluate whether:

> a) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
>
> b) the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship of the debtor, and
>
> c) the creditor has a probability of prevailing on the merits.

*Id.* (*quoting In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)) (internal alteration marks omitted).

19.    In this case, the debtor and the estate will not be prejudiced if the stay is terminated to allow collection on the Child Support Judgment because the Bankruptcy Code requires payment of those obligations in all circumstances. Indeed, the Debtor must pay all support payments that come due during the

bankruptcy case, or else the case is subject to conversion or dismissal, 11 U.S.C.
§ 1112(a)(4), and any chapter 11 plan cannot be confirmed, *id.* § 1129(a)(14).
Accordingly, the Debtor's chapter 11 estate would benefit from payment of
obligations required to confirm a plan of reorganization. In addition, domestic
support obligations owed to a debtor's children are excepted from discharge under
11 U.S.C. § 523(a). There is nothing to be gained by delaying payment on obligations
that are presently due, owing, and necessary to support the Debtor's minor children.

20.    By contrast, the parties' minor children will continue to suffer hardship
that the Child Support Judgment was intended to alleviate. *See id.*, Child Support
Judgment at 7-8. Wipaporn Teekhungam, the childrens' mother, and the minor
children have little income or assets (in stark contrast to the Debtor's financial
position). *See id.* (stating that increase in child support amounts was necessitated
by facts including that "[t]he boy's [sic] standard of living is so low, the family
receives public assistance.").

21.    Finally, Movant fully expects the Domestic Relations Judge to enter an
order holding the Debtor in contempt for his repeated failure to satisfy his
obligations under the Child Support Judgment. The Domestic Relations Judge has
repeatedly expressed her frustration with the Debtor's numerous attempts to evade
his obligations to support his minor children. *See, e.g.* Trust Order  at 4 ("For
reasons including but not limited to Harlow's continued attempts to deny his
obligations to the children and make legal war on them and their mother, his
determination to outlast and exhaust their lawyers and their mother's legal
representatives with every legal theory no matter how specious, along with his
proactive steps to disinherit these boys . . . this Court was [sic] included the
necessity of these Funds and/or Trusts.")  In addition, the Debtor has simply failed
to, and had not made any attempt to, make up the shortfall in the amounts
garnished from his wages and the amounts due under the Child Support Judgment.

22.    Because the Debtor and the estate would not be prejudiced if the stay is lifted, while the Debtor's minor children would continue to suffer, and the Movant is likely to prevail on the merits, cause exists to terminate the automatic stay.

**1.2.    The Court should waive the 14-day stay.**

23.    An "order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001. Courts routinely waive the 14-day stay of execution on stay relief motions, particularly when good cause is shown. In this case, the battle to obtain and enforce the child support obligations has been long and hard, and there is no reason to further delay payment of those obligations.

*[Remainder of page left intentionally blank]*

**Wherefore**, Movant respectfully requests that the Court terminate the automatic stay as to permit collection of the Debtor's obligations under the Child Support Judgment, including through use of estate resources, and grant such further relief as is appropriate in the circumstances.

Dated: May 10, 2019

Respectfully submitted,

**Michael Bender, GAL for A.H., a minor, A.H., a minor, A.H., a minor (three children)**

By: /s/ *Adam Goodman*
One of Their Attorneys

Adam Goodman (6229333)
Goodman Tovrov Hardy & Johnson LLC
105 West Madison Street, Suite 1500
Chicago, IL 60602
(312) 238-9592 (direct)
(312) 264-2535 (fax)
agoodman@goodtov.com

Form G-4

# REQUIRED STATEMENT
## TO ACCOMPANY MOTIONS FOR RELIEF FROM STAY

All Cases: Debtor(s) _____ Harlow N. Higinbotham _____ Case No. __18-31185__ Chapter __11__

All Cases: Moving Creditor __Michael Bender as Guardian Ad Litem__ Date Case Filed __11 – 5 – 18__

Nature of Relief Sought: ☑ Lift Stay ☐ Annul Stay ☐ Other (describe) _____

Chapter 13: Date of Confirmation Hearing _____ or Date Plan Confirmed _____

Chapter 7: ☐ No-Asset Report Filed on _____
　　　　　☐ No-Asset Report not Filed, Date of Creditors Meeting _____

1. Collateral
   a. ☐ Home
   b. ☐ Car  Year, Make, and Model _____
   c. ☑ Other (describe)_____ Not applicable _____

2. Balance Owed as of Petition Date  $ _____
   Total of all other Liens against Collateral $_____

3. In chapter 13 cases, if a post-petition default is asserted in the motion, attach a payment history listing the amounts and dates of all payments received from the debtor(s) post-petition.

4. Estimated Value of Collateral (must be supplied in *all* cases)  $ _____ Not applicable _____

5. Default
   a. ☐ Pre-Petition Default
   　　Number of months _____  Amount $ _____

   b. ☐ Post-Petition Default
   　i. ☐ On direct payments to the moving creditor
   　　Number of months _____  Amount $ _____

   　ii. ☐ On payments to the Standing Chapter 13 Trustee
   　　Number of months _____  Amount $ _____

6. Other Allegations
   a. ☐ Lack of Adequate Protection  § 362(d)(1)
   　i. ☐ No insurance
   　ii. ☐ Taxes unpaid  Amount $ _____
   　iii. ☐ Rapidly depreciating asset
   　iv. ☐ Other (describe) _____

   b. ☐ No Equity and not Necessary for an Effective Reorganization § 362(d)(2)

   c. ☑ Other "Cause" § 362(d)(1)
   　i. ☑ Bad Faith (describe)_____ Failure to comply with state court orders
   　ii. ☐ Multiple Filings
   　iii. ☑ Other (describe) _____ Domestic support obligations

   d. Debtor's Statement of Intention regarding the Collateral
   　i. ☐ Reaffirm  ii ☐ Redeem  iii. ☐ Surrender  iv. ☐ No Statement of Intention Filed

Date: _____ May 10, 2019 _____　　　　_____ Adam Goodman _____
　　　　　　　　　　　　　　　　　　　　　　Counsel for Movant

(Rev. 12/21/09)

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE: THE PARENTAGE OF:            )
                                    )
WIPAPORN TEEKHUNGAM                 )
                                    )
            Petitioner,             )
and                                 )        No. 11 D 6475
                                    )
HARLOW NILES HIGINBOTHAM,           )        Cal. 64
                                    )
            Respondent.             )

### Section 503(g) of the Illinois Marriage and Dissolution of Marriage Act and Section 802(d) of the Illinois Parentage Act Fund and Trust Terms:

THIS CAUSE coming to be heard on further compliance with the July 20, 2018 and July 25, 2018 Orders, the court being fully advised in the premises, Respondent having filed objections and the Court having heard argument, and having jurisdiction over the parties and subject matter:

THE COURT HEREBY FINDS:

1. Pursuant to Sections 501 and 503(g) of the Illinois Marriage and Dissolution of Marriage Act and 802(d) of the Illinois Parentage Act, the court hereby confirms and details the bases and the terms of Funds and/or Trusts to protect and promote the best interests of the children for the support, maintenance, education, physical and mental health, and general welfare of the minor children.

2. Section 503(g) of the Illinois Marriage and Dissolution of Marriage Act specifically states in part as follows:

    *(g) The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, physical and mental health, and general welfare of any minor, dependent, or incompetent child of the parties…*

3. Section 802(d) of the Illinois Parentage Act specifically states in part as follows:

    *(d) The court, if necessary to protect and promote the best interests of the child, may set aside a portion of the separately held estates of the parties in a separate fund or trust for the support, education, physical and mental health, and general welfare of a minor or mentally or physically disabled child of the parties.*

1

EXHIBIT
tabbies
A

4. That pursuant to Section 503(g) and 802(d) Funds and/or Trusts are necessary to protect and promote the best interest of the subject children and their general welfare.

5. That based on HARLOW HIGINBOTHAM's = testimony during these proceedings regarding his intention and estate planning activities to block the subject children from any inheritance or any rights as a beneficiary in any respect, the Court has evidence the children will not be supported in the instance of HARLOW's death.

6. In fact, his testimony on hearing in June of 2018 included the fact that there is no cap on the amount of fees he would pay in this matter and that he had never considered what his evidenced fee payments of $1,750,000.00 (used to avoid supporting his sons and for the purpose of legally and financially harassing their mother [1]) would mean to the children had it been used for them.

7. The lengthy procedural history[2] of this matter as follows:

   a. In March 2010, the mother commenced proceedings in Thailand seeking an order for child support. At first instance in the First Thai Proceedings, the Court found for the mother and made an order on December 21, 2010 requiring HARLOW to pay a monthly sum. HARLOW sought to appeal that decision. The decision was affirmed by Thailand's appellate court in June 2013. In a judgment dated both July 6, 2015, and January 18, 2016, Thailand's supreme court affirmed the judgment but amended it to require Harlow to provide educational support for his three sons only until they reached the age of majority. On February 5, 2016, the Thai court issued a certificate of case finality in this matter.

   b. That HARLOW ultimately complied with the Child Support Order in October 2013 only after the mother commenced proceedings in Illinois to register and enforce said Child Support Order. The *"Petition to enroll foreign money judgment confirming father and children's relationship..."* was filed in Illinois on June 27, 2011. Later, Wipaporn filed a four-count amended petition, seeking (1) recognition and enrollment of the Thai judgment under principles of comity, (2) modification of the Thai judgment, (3) a *de novo* child support calculation, and (4) damages for breach of contract.

   c. In August 2012, HARLOW moved to dismiss the amended petition, arguing the Thai judgment was not entitled to comity. Specifically, HARLOW argued that

---

[1] $1,750,000 is not even a complete total of what HARLOW has paid since the discovery was not allowed for the years between 2013 and 2015 and his counsel failed to disclose fees paid and owed as required by statute.

[2] Paragraphs 7a-7f are either an exact quotation or paraphrasing of the High Court of the Justice Queen's Bench Division Communications List's Approved Judgment dated July 24, 2018

because he was never married to WIPAPORN, the Thai judgment was contrary to Illinois public policy as expressed in a statutory provision that prevented the donor of semen used in the artificial insemination of a woman other than the donor's wife from being treated in law as if he were the natural father of the resulting child. In March 2013, the circuit court denied HARLOW's motion to dismiss the amended petition with respect only to count I, which requested the extension of comity to the Thai judgment; the circuit court did not rule on the other three counts. Thereafter, the circuit court denied HARLOW's motion to reconsider.

d.   In July 2013, HARLOW filed an answer and affirmative defenses which included, but were not limited to, asserting, *inter alia*, that comity could not be extended to the Thai judgment because WIPAPORN obtained it by fraud and HARLOW was denied a full and fair hearing in Thailand.

e.   WIPAPORN moved to strike and dismiss HARLOW's answer and affirmative defenses. She argued that the Circuit Court's denial of HARLOW's motion to dismiss Count I of the Amended Petition resolved the only legal issue between the parties and res judicata barred HARLOW's pleading. On August 22, 2013, the Circuit Court struck and dismissed HARLOW's answer with prejudice, granted Count I of the Amended Petition by enrolling, based on comity, the Thai Judgment as an Illinois Judgment, and held that there was no just reason to delay enforcement or appeal of its order. Thereafter, the Circuit Court denied HARLOW's Motion to Reconsider.

f.   HARLOW timely appealed, contending that (1) the Thai judgment was not entitled to comity because it directly contradicted Illinois public policy, which prevents sperm donors in certain situations from being legally treated as the natural fathers of children conceived by artificial insemination; and (2) the application of *res judicata* and dismissal of HARLOW's answer was improper because WIPAPORN obtained the Thai judgment by fraud, HARLOW was denied an opportunity to fully litigate his defenses in Thailand, and his appeal of the Thai judgment rendered the extension of comity to that judgment premature.

g.   On August 1, 2016, WIPAPORN was forced to file a Petition for Rule regarding the missed and late payments for support. Then on December 2, 2016, the Appellate Court of Illinois dismissed the appeal regarding the Court's decision to register and enforce the Child Support Order.

h.   Notwithstanding that courts in both Illinois and Thailand have held (at first instance and on appeal) that he is the biological father of the children, HARLOW still stated in his witness statement in the England proceedings: "*there is still insufficient information to determine whether I am [the father]...*". The Court there said in its High Court of the Justice Queen's Bench Division Communications List's

Approved Judgment dated July 24, 2018, *"I cannot resolve whether this is intransigence or self-delusion, but it does not matter..."* and *"for the purposes of these proceedings and between the mother and HARLOW HIGINBOTHAM, the issue of parentage has been authoritatively determined; the triplets are HARLOW's sons."*

i.  During the June 22, 25, and 26, 2018 court appearances, it was revealed by HARLOW's testimony and exhibits admitted into evidence that HARLOW is engaged in a pattern of transferring significant real estate assets, previously solely owned by him, into a tenancy by the entirety with Susan Higinbotham and encumbering his remaining assets with earmarked debt owed to Susan in excess of Ten Million Dollars ($10,000,000.00).

8.  For reasons including but not limited to Harlow's continued attempts to deny his obligations to the children and make legal war on them and their mother, his determination to outlast and exhaust their lawyers and their mother's legal representatives with every legal theory no matter how specious, along with his proactive steps to disinherit these boys, not only from his own estate, but in fact from their potential rightful inheritance from irrevocable trust(s) which would have included them as beneficiaries, this Court was concluded the necessity of these Funds and/or Trusts.

9.  The Sections 503(g) of the Illinois Marriage and Dissolution of Marriage Act and 802(d) Illinois Parentage Act Trust Terms shall be as follows:

   a.  That pursuant to the factors in Sections 501 and 505 of the Illinois Marriage and Dissolution of Marriage Act HARLOW has provided from his estate in the total the amount of $1,750,000.00.

   b.  Michael Bender shall be the Trustee and/or Fund holder of the 503(g)/802(d) Trusts and/or Funds and shall continue to administer the funds pursuant to the terms herein, as previously ordered to hold in his IOLTA account, as ordered to disburse, and as further ordered by this Honorable Court.

   c.  The during the proceedings currently pending in the Illinois' Court, the Trustee/Fund holder shall not release any funds without a prior Court Order requiring same, subject to amendment when the case is concluded. In terms of specifics:

      i.  The funds shall be used for all levels of educational expenses for the children including but not limited to private school tuition and fees, books, supplies, tutors if advised, uniforms, transportation, extracurricular activities, test preparatory courses as well as secondary education expenses

pursuant to Section 513 of the Illinois Marriage and Dissolution of Marriage Act including transportation.

ii. The funds shall be used for medical expenses for the children including but not limited to private health insurance, all out of pocket medical costs including doctor visits, medications, procedures, psychological or mental health services and the like, as well as all dental and any orthodontic needs.

iii. That during the proceedings and from time to time as they deem appropriate Michael Bender and Howard Rosenfeld shall confer and identify and list all requested withdrawals on behalf of the children and related costs in a proposed Order to the Court.

iv. That the regular monthly child support order already in effect shall be paid by Michael Bender from these monies pursuant to the previous and existing court orders and any modified court orders hereafter, with the amount subject to increase upon entry of any current or future modification of the basic monthly support and other child support related costs.

d. The Section 503(g)/802(d) based Funds and/or Trust shall be utilized on behalf of the minor children for their general welfare and needs including the litigation expenses in court-approved interim and prospective fees incurred on the children's behalf by their Mother, by the GAL, and the children's attorney as well as appellate fees.

e. Pursuant to prior order, the funds have been held in Michael Bender's IOLTA account. Within 14 days, Michael Bender is ordered to transfer from his IOLTA account the equivalent of 80,000.00 British Pounds to an interest bearing checking account pending the Court's ruling following the August 2018 trial dates in this matter. Said amount is to be based upon the applicable bank's conversion rate regarding pounds and dollars on the date he requests the transfer. These funds are to be held in said checking account as the initial funds awarded by this Honorable Court to fund a future Trust that will be held until the children complete their college education pursuant to Section 513 of the Illinois Marriage and Dissolution of Marriage Act. The remaining funds are to remain in Michael Bender's IOLTA account until further Court order. In that the cost of education, insurance, medical care, tutoring, university, college, residence, citizenship, visa, litigation, and other fees and expenses for the children's benefit remain undetermined until this Honorable Court rules following the ending of trial in this matter, the remaining funds are to be kept in Michael Bender's IOLTA account until further Court Order.

WHEREFORE the Court does hereby confirm its previous Orders regarding the establishing of monies pursuant to Section 503(g)/802(d) of the Illinois Marriage and Dissolution of Marriage Act/ Parentage Act for the benefit of the parties' three children pursuant to the terms and provisions as set forth herein.

ENTERED: Jeanne Cleveland Bernstein

AUG 1 4 2018

Judge Circuit Court - 1833                    Date

**ALLEN & GLASSMAN, CHARTERED**
Attorneys for Petitioner
150 North Michigan Ave, Suite 3600
Chicago, Illinois 60601
Telephone: 312.853.3000
Facsimile: 312.853.0309
Attorney No.: 37154

6

+IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

IN RE: THE PARENTAGE OF                                    )
                                                           )
WIPAPORN TEEKHUNGAM                                        )
a/k/a Chirathip Teekhunngam,                               )
Individually and on behalf of                              )
ANUCHT a/k/a HARLOW HIGINBOTHAM,                           )
ATHIRAT a/k/a HENRY HIGINBOTHAM,                           )
ANUSIT a/k/a WILLIAM HIGINBOTHAM                           )
                    Petitioner,                            )          No. 11D 6475
                                                           )
and                                                        )
                                                           )
HARLOW NILES HIGINBOTHAM,                                  )
                    Respondent.                            )

### JUDGMENT

**THIS CAUSE** having come on for  hearing on Petitioner  Wipaporn Teekhungam

(hereafter Wipaporn) 's " First Amended Petition to Enroll Foreign Judgment Confirming Father

and Children's Relationship(s), for Enforcement of Thailand Judgment, and Collection of Child

Support, Modification, Recalculation, and for Attorney Fees and for Contract Enforcement."

The Petitioner being represented by Jemma Allen and Michael Levy from the firm of Allen &

Glassman, Chartered.  The Respondent, Harlow Higgenbotham (hereafter Harlow) being

represented by Beerman, LLP.  And in addition, at later stages, by Wetnzel law Offices. The

children were represented by Michael Ian Bender of the Law Offices of Michael Ian Bender

as Guardiam ad Litem and Howard Rosenfeld and Vanessa Hammer, Rosenfeld Hafron

Shapiro & Farmer as attorney for the child. The Receiver was Neal H. Levin, Shira R.

Isenberg and Elizabeth L. Janczak of Freeborn & Peters LLP.



1

The Court, having jurisdiction of the parties and the subject matter and being fully advised;

**FINDS**

## HISTORY OF CASE

. At all times, Harlow was married to his American wife, Susan. Wipaporn and Harlow began a relationship in Bangkok Thailand in 2001, when Wipaporn was 23 and Harlow was 53. Harlow is a graduate of Harvard and received his masters from the University of Chicago. Wipaporn appears to be of working class Thai heritageThereafter, they had approximately a 10 year adulterous relationship. They apparently met on an average of 3 to 4 times a year when Harlow would visit Thailand. At some point, Harlow entered into a Thai religious marriage ceremony with Wipaporn. (There are photographs showing that the ceremony was public and allegedly Harlow gave Wipaporn's father a dowry payment). Harlow did not register the marriage so it was not considered a valid marriage in Thailand The parties exchanged marriage vows. The parties determined that they should have children together. The parties underwent IVF treatment using Harlow's sperm and Wipaporn's eggs. In November 5, 2008 Wipaporn gave birth to the parties triplet sons.

In order to acknowledge his parentage, Harlow sent his passport to Thailand and insisted the three boys be given his family names Henry, William, and Harlow and that they receive United States citizenship.

It appears from e-mails, in evidence, that Harlow promised Wipaporn many things in order to induce her to have children with him, including, but, not limited to; that he would buy her a house, he would send the children to the best private schools, and, he would provide all

2

three with trust funds for their college educations. Harlow sent Wipaporn funds to purchase a

house, a commercial building and some vacant land. He also gave her the use of his credit card.

Sometime in 2009, Harlow appeared to have a change of heart and he stopped supporting

his children, forcing Wipaporn to file a lawsuit against him in Thailand for child support. Harlow

did not personally appear in the Thai court, but, was represented, at all times, by counsel. The

Thai court found Harlow to be the father of the children, as a DNA test had confirmed his

parentage of Harlow, Henry and William.

On December 21, 2010, the Thai Court ordered Harlow to pay a monthly sum for the

support of his children, the equivalent of $500.00 per month for each of the then two year old

triplets. Harlow appealed the Thai court decision, and, when the lower court decision was

affirmed, he appealed to the Supreme Court of Thailand which also affirmed the decision of the

two lower courts.  During this period of time, Harlow did not comply with the Thai order and

refused to pay any child support. Harlow's willful refusal to comply with the Thai court order

compelled Wipaporn to file a cause of action in the Circuit Court of Cook County (where Harlow

is a resident) asking to register the Thai judgment in the Illinois courts for enforcement purposes

(among other requests). The Thai judgment was duly registered in the Illinois court on March 18,

2013. Harlow appealed that order, and, on December 2, 2016, the Appellate Court, First District

of Illinois affirmed the lower court's decision, allowing the registration and finding that the Thai

decision was res judicata,

Wipaporn then moved for the instant Court to modify the child support amount, as the

Thai award was insufficient for support of the three minor children.

3

Shortly thereafter, Harlow filed suit in England against Wipaporn , (where she now resides having married Winton Perry,(hereinafter Winton) a British citizen), claiming she had violated an agreement between the parties to keep their relationship private. There was a finding against Harlow in that lower court, which he appealed to the High Court of Justice, Queen's Bench Division, Media and Communications List.  In a very lengthy and detailed decision, High Court justice the Hon. Nicklin, found against Harlow and denied his appeal.  This court has been informed and Harlow confirmed that he is appealing that decision also.

The instant case proceeded in this court, from time to time, until on its own motion, the court appointed Michael Ian Bender as Guardian Ad Litem. (hereafter GAL) (The court originally appointed him as Child's Representative, but, at the request of Harlow the appointment was modified to that of GAL)  The GAL traveled to England to interview the children, their parents and to observe their living conditions and determine the needs of the children. Upon receiving the GAL report, this court learned of the difficult condition of the children.

The Thai Court had issued a Certificate of finality,  as it is clear that Harlow would not comply with any Thai order (as he had not done so in the past) The British court declined to hear the case. This court determined that there was no other court where the children could be granted the relief they require.

Therefore, the court took jurisdiction for the purpose of modification of child support. This decision was made after hearing about the condition of the children in England, of their needs for medical treatment, tutors and their inability to participate in extracurricular activities due to a lack of resources. The motion also contained a pleading that the court comply with

4

certain immigration requirements in England. (The court announced that the immigration issues would not be heard, as those issues would not factor into the court's decision as to the best interest of the children and would require an interpretation of a foreign statute).

The court cannot consider speculative issues and must decide on current facts. The court allowed Harlow to make an offer of proof as to "some person from England"', who would testify to the fact that Wipaporn was due to be deported. The offer was not in the form of a report and it is unclear to the court who the witness would be, how he/she became aware of the "facts" and when/how this information was obtained. At the close of the offer, Harlow did not move for entry of the offer into the record. During the 9 days of testimony, Harlow continued to raise the issue that Wipaporn was illegally in the United Kingdom and would be deported. The court continued to remind Harlow that the best interests of the children would be the major factor as to child support in the court's decision. Further, Harlow had already been found to be the biological father and therefore, owed the children the obligation of support. Harlow's attorney sought to exclude the GAL from the hearing since the GAL would be a witness. The court, therefore, appointed Howard Rosenfeld as attorney for the children.

During his responses in "testimony" Harlow sua sponte, continually corrected the form of Wipaporn's attorney's questions and stated repeatedly that the triplets were not his children. He stated that his attorneys in Thailand were incompetent and the DNA test inaccurate.

## JURISDICTION

In *Vailas v. Vailas,* 406 Ill.App.3d 32 (1st Dist. 2010), The appellate court noted that UIFSA treats jurisdiction of an action to modify an order that is already in existence differently than an action to establish or enforce an existing order. The Act specifically states that the UIFSA may

5

not be used to acquire personal jurisdiction for a tribunal to modify a child support of another state, unless the requirements of the Act are met.

The appellate court went on to note that, in an action to modify a support order of a foreign state, not only must the courts of this state have personal jurisdiction over the obligor, but the requirements for modification of a foreign state support order as set forth at 750 ILCS 22/201(b) and 22/611 also must be met.

The appellate court noted that, under 750 ILCS 22/611(a), a previously issued child support order may be modified only if, after notice and hearing, the circuit court finds that one of two sets of conditions is met:

1. The order may be modified if

> a. neither the children, nor the petitioner who is an individual, nor Harlow reside in the issuing state;

> b. a petitioner, who is a nonresident of the state, seeks modification; and

> c. the respondent is subject to the personal jurisdiction of the Illinois tribunal.

    In the case at bar, neither the parties nor their children are in Thailand. In fact, Wipaporn and her children moved to Great Britain in 2013 and have been out of Thailand for nearly 6 years. Wipaporn is a nonresident of Illinois, living in Great Britain and Harlow is a resident of Illinois and has filed his appearance and actively participated in the case at bar.

*IRMO Edelman* (2015 IL App (2d) 140847 (2nd Dist.) An agreed order was entered enrolling a foreign judgment (Connecticut dissolution). Both parties and children resided in Illinois. Ex-wife filed in Illinois for contribution to college expenses, to increase child support and establish "adult child support" for a disabled child. Appellate Court affirmed that trial court had jurisdiction to modify child support under the Family Support Act because both parties had resided in Illinois when the Connecticut judgment was enrolled in I., by agreement and mom had sought enrollment in order to "modify and/or enforce" it. The court held that an Illinois tribunal could not modify any aspect of the child support order that may not be modified under the law of the issuing state, including duration. In this matter, pursuant to 611(c) and (d) the law of the issuing state (Connecticut) governed the availability of the relief mom was seeking – college contribution (which was not available pursuant to Connecticut law) and duration of dad's child support obligation. This was true even though the court's authority to modify arose from section 613, as section 611 still applies (see language of 613).

6

Thus the question, does Thai law provide for modification of a child support order? Under Thai law maintenance for child support may be claimed between parent and child when the child entitled to maintenance has been furnished with insufficient support for his condition in life. Title III, Section 1598/38 Thai Civil and Commercial Code

Further when any party can show a change in circumstance or in the means or condition of life of the parties, the Court may cancel, reduce, increase or re-establish the amount of maintenance. Title III, Section 1598/39, Thai Civil and Commercial Code.

This Courts authority to modify child support is found in Section 510 of the IMDMA which states:

*Except as otherwise provided in paragraph (f) of Section 502 and in subsection (b), clause (3) of Section 505.2, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification. An order for child support may be modified as follows:*

*1. Upon a showing of a substantial change in circumstances and...*

## CHANGES IN CIRCUMSTANCES TO JUSTIFY AN INCREASE IN CHILD SUPPORT

The changes in circumstances in the instant cases are:

1. The triplets are 8 years older ( The first support order having been issued when they were approximately 2 years old)
2. Wipaporn has married a British citizen and moved to England.
3. The triplets are in a school at Hayford Park Free School, which does not challenge Hector/Harlow) and does not provide extra necessary help for William.
4. William has developed asthma as well as a serious skin condition, Vitiligo. This condition causes a loss of pigmentation not only on his skin, but, is currently affecting his eyesight. This latter condition is not being properly treated due to the lack of private health care.
5. Wipaporn is prohibited from working due to her status as "overstayer" , in the UK.
6. Wipaporn owned a home in Thailand which she lost due to the high demand of legal fees.
7. Wipaporn owned a car in Thailand which she was forced to sell due to the high cost of legal fees to defend and prosecute actions against Harlow.
8. Wipaporn had health insurance in Thailand, which helped with the various illnesses of the triplets
9. Wipaporn had life insurance in Thailand, which she had to abandon due to the drain on her assets from the ongoing litigation

7

10. There are no funds for the boys to participate in sport clubs
11. Wipaporn is in considerable debt due to her efforts to defend herself and the three boys from Harlow's incessant litigation
12. The boys have never been able to take a vacation due to the inadequate child support award and the fact that Harlow has willfully failed and refused to pay the meager amount ordered by the Thai court until the Illinois court registered the Thai judgment and was then able to require him to pay the ordered amount.
13. The boys are growing quickly which necessitates new shoes every 3-4 months
14. The boys are growing quickly which necessitates more expensive bigger clothes and uniforms for school
15. There are insufficient funds to be able to provide the boys with iPads or tablets for school.
16. There are insufficient funds for the boys to be able to attend summer sports camps
17. The boy's standard of living is so low, the family receives public assistance.

Wipaporn has met her burden of proof that a substantial change in circumstances has occurred justifying an increase in child support.

> *After the threshold question of whether a substantial change in circumstances has occurred is answered, then and only then ay the court determine the amount of the increase in child support. (Fedun v. Kuczek (1987), 155 Ill App.3d 798, 801, 108 Ill.Dec.370, 372, 508 N.E.2d 531,533)*

## CHILD SUPPORT INCREASE

> *After the court finds a substantial change in circumstances under section 410(a) , the same factors are considered in setting the amount of modified child support as were considered in determining the original amount under section 508. Fedun (1987), 155 Ill App.3d 798, 801, 108 Ill.Dec.370, 372, 508 N.E.2d 531,533)*

Modification

750 ILCS 5/510 Modification and termination of provisions for maintenance, support, educational expenses, and property disposition.

(a) except as otherwise provided in paragraph (a) of section 502 and in subsection (b), clause 3 of Section 505.2, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification. An order of child

support may be modified as follows: one upon a showing of substantial change in circumstances...

750 ILCS 5/505 (1) and (2) define the amount of child support to be paid and give guidance to the factors the court should consider in any modification in child support: Paragraph one (1) states that the court shall determine the minimum amount of support by using the following guideline: 32% of the supporting party's net income for three children. Wipaporn does not have any other children and Harlow has now had a child with his wife. However, paragraph two (2) states " The above guidelines shall be applied in each case unless the court finds that a deviation from the guidelines is appropriate after considering the best interest of the child in light of the evidence, including, but not limited to, one or more of the following relevant factors:

> (a) The financial resources and needs of the child;
>
> (b) The financial resources and needs of the parents;
>
> (c) The standard of living the child would have enjoyed has the marriage not be dissolved.
>
> (d) The physical, mental and emotional needs of the child; and
>
> (e) The educational needs of the child.

If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines.

Section (2.5) states that the court, in its discretion, in addition to setting child support, pursuant to the guidelines and factors, may order either or both parents owing a duty of support to a child . . . to contribute to the following expenses, if determined by the court to be reasonable:

9

    (a) Health needs not covered by insurance;

    (b) Child care;

    (c) Education;

    (d) Extracurricular activities.

It is well settled that the trial court's decision to deviate from the statutory guidelines will not be disturbed unless there is an abuse of discretion. In this case, Harlow's monthly income is estimated by the court to be $133,113.84. The court cannot determine his exact income because he provided a handwritten, self-prepared, purported tax return, in which he took deductions for false claims of theft. He also testified that he regularly borrowed from family trusts, of which he is the beneficiary as well as trustee. Such regular "loans" should be incorporated into his income in order to obtain a correct income. Taking his figures from his 2016 return and adding back in $227,629.68 "manufactured" loss which he took and his tax refund of $71,154.18 gives an adjusted net of $1,597,366.11 or $133,113.84 per month. A guideline child support amount for the three boys would therefore be $42,596.42 per month. Harlow argues that there should be a downward deviation from guideline child support and the court should only consider the child's actual expenses. However, that is not the law, as the court must consider all relevant factors in 505. The court believes that sufficient funds to provide for the children can be realized at a below guidelines amount. The court will, therefore, set a child support amount that is below the $42,596.42 monthly child support amount (*In re the marriage of HILL,* 2015 Ill App 2d (140345).

   The Illinois court was able to take jurisdiction to modify the Thai judgment when all the above noted conditions were met and no one resided in Thailand. As of March, 2013, Wipaporn and the triplets left Thailand and moved to the UK.

   Wipaporn testified that she is prohibited from working in the UK because she is an

"overstayer". This was not challenged by Harlow. The triplets' mother and stepfather devote all of their free time and the vast majority of their assets to raising these boys. Wippaporn stays home so that she can help the boys in whatever way is needed, including, but, certainly not limited to; taking them to doctor's appointments, taking them to school, and taking them to the park where, unfortunately, they get to watch other children participate in club activities. (The triplets are unable to participate because of the lack of funds).

It would not be in in the triplets' best interest to change something that has been working so well and declines to obligate Wipaporn to obtain full time employment especially since it would be illegal.

Harlow argues that the court cannot increase child support due to a change of circumstances because he refused to inform the Thai court of his finances, therefore, prohibiting the court from finding that there had been a substantial change in circumstances. The court rejects this argument.

When dealing with a parent who has a high income, the trial court must balance the concerns that (1) child support should not be a windfall and (2) the standard of living that the child would have enjoyed absent dissolution of marriage.  What Harlow has failed to understand is that child support is not solely based on the child's shown needs (*In re the marriage of HILL,* Ibid).


## PRIVATE SCHOOL
*750 ILCS 5/505(2.5) The court, in its discretion, in addition to setting child's support pursuant to the guidelines and factors, may order either or both parents owing a duty of support to a child of the marriage to contribute to the following expenses, if determined by the court to be reasonable:*
*(a). health needs not covered by insurance*

11

(b) *child care ;*
(c) *education; and*
(d). *extracurricular activities.*

As long as Wipaporn is able to be home with the boys, there is no need for daycare. In the event that she is able to return to work, then the court would consider an award of daycare costs from Harlow.

 Wipaporn is asking that Harlow send the boys to private school. She and her husband, Winton testified credibly as to how the boys' education and lives would be improved by attending a private school. The classes are smaller, the curriculum is much broader and the activities are generally more varied. They testified that son Harlow, is a very bright student and is not being challenged at the current school, which allows him to become lazy. They feel that if he goes to a more challenging school, he will excel. Hector is the smallest of the children, having some nutritional problems that keep him from gaining weight. William has a learning disability for which his current school does not provide any support to improve the situation.

Harlow not only attended private boarding school as a youth, he attended Harvard University and the University of Chicago, both very expensive private schools. There does not seem a reason that he should not be required to pay for the triplets' private school tuition especially in light of his earlier promises to do so. Wipaporn testified that her husband, Winton, provided information to the court as to their choice of private school which is known as the Dragon School. Later, Winton testified, credibly, as to how he came up with the cost of the school at $11,000+ per month per child.

It would be in the children's best interest to attend the Dragon school for their education and for Harlow to pay for same; however, the court declines to order private school tuition at this time.

The boys appear to have some interest in extracurricular activities and as they are getting older a reasonable part of their education would be to participate in sports and other out of school activities such as music, playing musical instruments and the like. The court took this into consideration when setting the increased amount in child support.

## 503G TRUST

750 I LCS 5\503 (g). Provides;
*The court if necessary to protect and promote the best interest of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund*

*or trust for the support, maintenance, education, physical and mental health, and general welfare of any minor, dependent or incompetent child of the parties.*

Harlow is extraordinarily, if not vexatiously, litigious. He has appealed the decision finding him to be the father of these children to the Supreme Court of Thailand. He has sued Wipaporn in England concerning a Facebook page that she had up for a couple of months and took down. (He claimed it was an invasion of his privacy). When he lost that case he filed an appeal and he has recently lost that appeal and testified that he has deposited $25,000 with an attorney to take that matter up to the next higher court in Great Britain. When the Illinois court registered the Thai decision for the purposes of enforcing the child support, he appealed that matter. He also lost that appeal.

During the current litigation, he has appealed two separate issues and has asked the Supreme Court of Illinois for a supervisory order. When asked if there was a limit to the amount of funds that he would spend litigating this case in order to preclude having to support his sons, he answered in the negative. In the last day of testimony, he indicated that he would continue to litigate this issue until "he receives justice" which the court took to mean his not being obligated to support his sons.

Harlow has caused amendments to be executed changing the definition of descendants in several trusts of which he is the beneficiary and trustee. Said trusts provide for the remaining corpus to go to his "legitimate" descendants thereby excluding his triplet sons.

In addition, Harlow testified that he has, at the age of 71, had a child with his current wife (Susan is 66) so that he would have a descendent as beneficiary of these trust.

Harlow has commenced an "illusory" course of conduct designed to remove all of his assets from himself and transfer them to his wife, Susan. He has produced several promissory notes one of which transfers all of his assets to Susan in exchange for "legal advice and service" she has rendered to him. Susan is not an attorney. Although the promissory notes are years old, he has done nothing to actually transfer funds to Susan. He has only created those notes in an effort to reduce his ability to pay child support.

It is common for a payor to be required to pay for life insurance in an amount sufficient to provide for the support and education of his/her minor child. Considering the age of the Respondent and the amounts that would have to be covered, it would be prohibitively expenses to require him to provide such a policy.

The court finds that due to his advanced age and his obsessive tendency to deny his parentage of the triplets and refuse to pay support, that should the court fail to establish a 503(g) trust not only would he make no provisions for these children in the event of his

13

demise (thereby engendering further litigation in the probate court) but, would take active steps to insure that the triplets were omitted as his descendants under the original terms of those trusts.

## CREDIBILITY

Wipaporn testified in a clear manner. Her speaking and understanding of verbal English was good, Several times she apologized as her ability to read English was not good. Often she responded to questions that the questioner would have to ask her husband, Winton about numbers on her financial affidavit or where the numbers came from for the estimates on cost of the boys' expenses. She was credible, but, not sophisticated or knowledgeable and so she deferred to her husband, which led the court to an understanding about why, as a very young woman, she would fall victim to a much older wealthy man like Harlow.

Winton testified in a straight forward, matter of fact manner. He was able to clearly explain the numbers on the financial affidavits and how he had estimated the cost of private school. He had a clear understanding of the boys' needs and was able to communicate that information in an understandable manner.  He was credible.

Harlow was not credible; for instance notwithstanding the facts proven and affirmed in the Thai courts he incessantly claimed that the triplets were not his children

In addition, Harlow claimed on his financial affidavit dated 10/26/2017 that Wipaporn had fraudulently referred to herself as his "wife" when he had himself referred to her as his "own true wife" and that the children were legitimated (sic)after a fraudulently obtained court order in Thailand. Harlow chose not to present himself to the Thai court, but, was represented by attorneys.  His original claims were "He had not had a sexual relationship with Wipaporn during her fertility period, followed by his total denial that he had participated in the IVF procedure. That his sperm had been switched in the clinic and that the DNA test was somehow faulty. Harlow was served; he participated thru counsel all the way to the Thai Supreme Court, and later indicated that the Supreme Court in Thailand was correct.

Harlow attempted to disguise the true value of his investment accounts, securities, investment/brokerage accounts, mutual funds and secured or unsecured notes at 10% of their actual value as he "mentally considered the remaining 90% as his American wife's.

In a 4684 Supporting Statement, to his handwritten 2016 tax return, Harlow claimed a $140,000.00 loss through theft because he was the victim of a 3 continent scheme which, over 16 years, involved extortion, blackmail, trickery, identity theft, credit card theft , and

cash theft by Wipaporn, her husband and her Illinois law firm. He further claimed that $1.236 million was <u>adjudicated</u> to be due with over $1 million more in expenses and losses and costs incurred to defend fraudulent claims brought by Ladden & Allen (Wipaporn's Illinois law firm) He went on to state that he has reported these crimes to the Chicago police and the U.S. Department of State. All of these claims are false except for his making false reports to the Chicago police and the State Department, which was apparently true as Harlow also attached a copy of the false police report to the tax return.

WHEREFORE IT IS HEREBY ORDERED:

A. That Respondent shall pay to the Petitioner the sum of $11,000 per month as and for the child support for <u>each</u> of the parties 3 children through the child's minority. Age of majority is 20 years of age. Child support is retroactive to April 1, 2013.

B. That 503(g) trusts shall be set up for each of the children, William, Henry and Harlow within 21 days of entry herein. Harlow shall deposit ONE MILLION FIVE HUNDRED THOUSAND DOLLARS ($1,500,000.) into each of the boys trust funds. The funds will be used for child support, actual private medical and dental insurance payments as well as for extracurricular activities. The trust corpus amounts are slightly less that the full amount Harlow will be required to pay over the years, but, interest should accrue in sufficient amount to cover the differences.

C. Michael Ian Bender and Winton Perry shall be co-trustees of said trusts. Mr. Perry shall continue as co-trustee, so long as Winton is married and cohabiting with Wipaporn and the 3 children. In the event that Winton Perry is no longer eligible to act as trustee, Michael Bender shall select a co-trustee.

D. Counsel for Wipaporn shall tender a proposed 503(g) trust format to the court within 21 days, for its approval.

E. The current 503 (g) trust shall remain in place until all fees and cost have
   been resolved.  Any remaining funds shall be distributed equally into the
   three new trusts as part of the one million five hundred thousand ordered to
   fund the three trusts.

F. That in the unlikely event that the parties should agree that it is in the
   children's best interest to attend  private school, then they will each be
   responsible for one half of all the cost, mandatory or otherwise to allow the
   children to attend said private school.

G. That the parties shall communicate through Our Family Wizard at all times,
   except in cases of emergency. Both shall sign up for that service within 7
   days of entry of this order.

H. That the cost of the college education of the minor children of the parties
   pursuant to 750 ILCS 5/513 is reserved until further order of court, but, shall
   be paid pursuant to the financial ability of the parties, at the time the
   children are  ready to enter college.

I. That the court retains jurisdiction for the purpose of enforcing the instant
   order.

ENTER:

Judge Jeanne Cleveland Bernstein

SEP 14 2018

Circuit Court - 1883

_____
JUDGE

4217 - Continuance - Allowed
4250 - Order, Plaintiff, Defendant or Witness to Appear - Allowed
4253 - Produce Exhibits or Other Records or Documents or Person - Allowed
4284 - Strike or Withdraw Motion or Petition - Allowed
4312 - Finding of Delinquency - Allowed
4324 - Child Support Order Above Statutory Guidelines - Allowed
4325 - Child Support Order Below Statutory Guidelines - Allowed
4386 - Order to Pay Fees - Allowed

4435 - Order on Motion to Provide Medical Insurance - Allowed
4512 - Order Arrearage Set - (amount needed) - Allowed
4567 - Order for Child Support - Allowed
4568 - Order Temporary Maintenance - Allowed
4600 - Order Support Payments Made Direct to Petitioner
4601 - Order Support Payments Made Direct to C.C.C./S.D.U. - Allowed
4604 - Order Support Payments Made Direct to Respondent – Allowed

(Rev. 10/02/15) CCDR N107 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

WIPAPORN TEEKHUNGAM

Petitioner/ ☑ Obligee          ☐ Obligor

v.

HARLOW NILES HIGINBOTHAM

Respondent/ ☐ Obligee          ☑ Obligor

Docket No. 11 D 6475

IV D-No. C _____

Calendar No. 64

☐ Healthcare and Family Services is, or has been, granted leave to intervene.

### UNIFORM ORDER FOR SUPPORT
☐ Initial Order    ☑ Modification    ☐ Enforcement

Definitions:  *Obligor* - An individual who owes a duty to make support payments pursuant to an order for support
*Obligee* - An individual to whom a duty of support is owed or the individual's legal representative
*Payor* - Any payor of income to an obligor
*Unallocated Support* - A total amount for maintenance and child support and not a specific amount for either

THIS MATTER coming to be heard on Petition for  ☐ Rule and/or ☐ Modification ☐ Support ☑ Judgment
The Court Finds:

The Court has jurisdiction of the parties and the subject matter and that due notice was given by
_____ on _____

☑  a.  The net income of the Obligor is $ 84,550.00   per   month   _____        *when bonus is received based on his FA*

☐  b.  The amount of arrearage/judgment as of the date of this order is $ reserved   for child support and
$_____ for maintenance or unallocated support as follows:  $_____ to Obligee,
$_____ to Healthcare and Family Services and/or $_____ to the Petitioning State of
_____

☐  c.  The amount of child support cannot be expressed exclusively as a dollar amount because all or a portion
of the Obligor's net income is uncertain as to source, time of payment or amount.

☐  d.  Retroactive child support is $_____ from _____ to _____.

The ☑ Obligee ☑ Obligee's Attorney ☑ Obligor ☑ Obligor's Attorney ☐ Assistant State's Attorney, being present
☐ This matter being an Interstate Case, ☐ Voluntary Acknowledgment of Paternity was signed on _____
It is Ordered: ☑ After hearing ☐ By agreement of the parties ☐ By default that:
HARLOW NILES HIGINBOTHAM _____, Obligor, is to provide:

☐ MAINTENANCE        (Do not complete this section if Unallocated Support is ordered.)

| *Payment Amount:* | | *Payment Frequency:* |
|---|---|---|
| Current Maintenance: | $_____ | ☐ every week ☐ every other week ☐ monthly |
| Arrearage Payment: | $_____ | ☐ twice each month on _____ & _____ |
| Payments Begin: _____ (date) | | ☐ other _____ (date) |

☑ CHILD SUPPORT OR ☐ UNALLOCATED SUPPORT

*Payment Amount:*

| | | *Payment Frequency:* |
|---|---|---|
| Current Child Support Payment or Unallocated Support Payment: | $ 33,000.00 | ☐ every week ☐ every other week ☑ monthly |
| Arrearage/Retroactive Payment: | $ (reserved) | ☑ twice each month on 1st & 2nd *paydays of each month* |
| Other Payment | $_____ | ☐ other _____ (date) |
| Payments Begin: April 1, 2019 (date) | | |
| Judgment in the amount of | $_____ | is entered against the Obligor on the arrears. |
| Interest | $_____ | |

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 1 of 6


EXHIBIT
C

| Uniform Order for Support | (Rev. 10/02/15) CCDR N107 B |
|---|---|

☐ PERCENTAGE AMOUNT OF CHILD SUPPORT (Complete this section only if finding (c) is checked above.)

In addition to the specific dollar amount of support ordered above, current child support shall be paid in the

amount of _____ % of Obligor's _____ payable _____.

The Obligor is further ordered to provide income records sufficient to determine and enforce the percentage amount of child support *within seven (7) days* of receipt of income subject to this percentage assessment, to the ☐ Obligee and ☐ Clerk of the Court.

☐ ADDITIONAL CONDITIONS OR FINDINGS

☐ Child Support payment amount deviates from the amount required by statutory minimum guidelines. The amount of support that would have been required under the guidelines is $_____.

Reasons for deviation: _____

_____

_____

_____

_____

☐ Child Support is based on the needs of the child.

The Child/ren covered by this Order is/are:

| | |
|---|---|
| Harlow Higinbotham | Date of Birth: 11/5/2008 |
| Henry Higinbotham | Date of Birth: 11/5/2008 |
| William Higinbotham | Date of Birth: 11/5/2018 |
| | Date of Birth: |
| | Date of Birth: |
| | Date of Birth: |

☑ PAYMENT ARRANGEMENTS

> **C H E C K   O N L Y   O N E**
>
> ☑ *(Payments must be sent to the STATE DISBURSEMENT UNIT if this box is checked.)*
> A Notice to Withhold Income shall be issued immediately and shall be served on the employer at the address listed in this Order. Payments shall be made payable to the State Disbursement Unit and sent to the State Disbursement Unit at P. O. Box 5400, Carol Stream, Illinois 60197-5400. Payments must include **CASE NUMBER, COUNTY** of the Court issuing this Order, and Obligor's name and social security number. Any subsequent employer may be served with a Notice to Withhold Income without further order of the Court.
>
> ☐ The parties have entered into a written agreement providing for an alternative arrangement for the payment of support that is approved by the Court and attached to this Order, meeting all requirements of, and consistent with, applicable law. An income withholding notice is to be prepared and served only if the Obligor becomes delinquent in paying the order of support. Payments shall be made in accordance with the written agreement of the parties attached hereto. In the event the income withholding notice is served, payments shall be made to the State Disbursement Unit as set forth above.

4386   ☑ In addition to and separate from amounts ordered to be paid as maintenance or child support, the Obligor shall pay a $36 per year Separate Maintenance and Child Support Collection Fee. This sum shall be paid directly to the Clerk of the Circuit Court of Cook County and *not* to the State Disbursement Unit. Please mail payment to: Clerk of the Circuit Court of Cook County, Child Support Division, , Richard J. Daley Center, 50 West Washington Street, Room LL-01, Chicago, Illinois 60602,

Docket No. 11 D 6475 _____     IVD-No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Uniform Order for Support                                                    (Rev. 10/02/15) CCDR N107 C

☑ DELINQUENCY

If the Obligor becomes delinquent in the payment of support after the entry of this Order for Support, the Obligor must pay, in addition to the current support obligation, the sum of (a) $ 6,600.00 ___ for delinquent child support per the payment frequency ordered above for child support, and (b) $_____ for delinquent maintenance or unallocated support per the payment frequency ordered above until the delinquency is paid in full. (This additional amount, the total of (a) and (b), shall not be less than 20% of the total of the current support amount and the amount to be paid for payment of any arrearage stated in the Order for Support.) A support obligation, or any portion of a support obligation which becomes due and remains unpaid for thirty (30) days or more, shall accrue interest at the rate of 9% per annum.

☑ TERMINATION

This obligation to pay child support terminates on  November 5, 2028 _____ unless modified by written order of the Court or unless the child will not graduate from high school until after attaining the age of eighteen (18), then the termination date shall be the earlier of the child's high school graduation or the date on which the child will attain the age of nineteen (19). This termination date does not apply to any arrearage that may remain unpaid on that date.

☑ ARREARAGE PAYMENT

If any arrears or past due support is owed upon termination, the amount being paid immediately preceding termination, including any current support payment, arrearage payment and/or any delinquency, will continue to be collected as an obligation, not as current support, but as a periodic payment toward satisfaction of the unpaid support. All past due support obligations are still subject to any other special collection methods available to Healthcare and Family Services (such as tax refund offsets and bank liens), as provided by law.

☐ MEDICAL INSURANCE

The ☐ Obligor, ☐ Obligee, ☐ Obligor *and* Obligee, shall provide health insurance for the child(ren): ☐ as provided in a previous order entered on _____ ; ☐ enrolling them in any health insurance coverage available through the ☐ Obligor's, ☐ Obligee's, ☐ Obligor's *and* Obligee's, employment or ☐ securing a private health insurance policy, accepted by the Obligor and Obligee or approved by the Court, which names the child(ren) as beneficiary. The Obligor shall provide to the Obligee a copy of the insurance policy and the insurance card within *forty-five (45) days*. The employer or labor union or trade union shall disclose information concerning dependent coverage plans whether or not a court order for medical support has been entered. 750 ILCS 5/505.2

   ☐ The Obligor is liable for _____% of the medical expenses incurred by the minor child(ren) and not covered by insurance.

4284 ☐ The issue of medical insurance is withdrawn.

*It is further ordered that* (except when the Court finds that the physical, mental or emotional health of a party or that of a minor child, or both, would be seriously endangered by disclosure of the party's address:)

The Obligor shall give written notice to the Clerk of the Court, and if a party is receiving child and spouse services under Article X of the Illinois Public Aid Code, to Healthcare and Family Services, within *seven (7) days*, of:

   • any new residential mailing address or telephone numbers;
   • the name, address and telephone number of any new employer, and;
   • the policy name and identifying number(s) of health insurance coverage available.

The Obligor shall submit a written report of termination of employment and of new employment, including name and address of the new employer, to the Clerk of the Court and the Obligee *within ten (10) days*. Obligor and Obligee shall advise each other of a change of residence *within five (5) days* except when the Court finds that

   Docket No. 11 D 6475 _____        IVD-No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Uniform Order for Support                                              (Rev. 10/02/15) CCDR N107 D

the physical, mental or emotional health of a party or that of a minor child, or both, would be seriously endangered by disclosure of the party's address. An Obligee receiving payments through income withholding shall notify the Clerk of the Court and the State Disbursement Unit *within seven (7) days*, of change in residence. The Obligor and Obligee shall report to the Clerk of the Court any change of information included in the Child Support Data Sheet (Exhibit 1) *within five (5) business days* of such a change.

☐ UNEMPLOYMENT

   ☐ Respondent is unemployed and is ordered to seek employment. The Respondent must report periodically to the court with a diary listing the name, address, telephone number and contact person of each employer with which s/he has sought employment.

   ☐ Respondent is ordered to report to the Department of Employment Security for job search services or to complete an application with the local Job Training Partnership Act provider for participation in job search, training or work programs.

   ☐ Respondent is unemployed and is ordered to put forth a diligent effort to obtain employment and to cooperate with all instructions of Healthcare and Family Services (HFS). The Respondent is ordered to report immediately to the Healthcare and Family Services' Non-Custodial Parent Services Unit, 36 South Wabash, Chicago, Illinois for assessment and assignment into the court monitored Job Search program or Earnfare program. Upon finding employment, the Respondent shall notify HFS in writing at 36 South Wabash, Chicago, Illinois 60603. *within seven (7) days*. The Respondent must submit the name and address of the employer, the start date, and the rate of pay to the HFS Non-Custodial Parent Services Unit. The Respondent's failure to comply with the requirements of this order may result in the State's Attorney seeking a contempt of court order. (Earnfare requires a $50.00 minimum support order.)

☐ GENETIC TEST REIMBURSEMENT

   ☐ Obligor shall pay $_____ to Healthcare and Family Services (HFS) for a genetic test reimbursement. Payments must be made in lump sum or installments by personal check or money order payable to Healthcare and Family Services and either mailed to: Healthcare and Family Services, Title IV-D Accounting Unit, P. O. Box 19138, Springfield, Illinois 62705-9138, or conveyed as otherwise directed by the Court. Payment must include IV-D number as shown on this order.

This Order does not preclude Healthcare and Family Services from collecting any arrearage established by or which may accrue under this Order for Support by use of the offset provisions of Section 6402(c) of the Internal Revenue Code of 1954, and 15 ILCS 405/10.05(a) as amended. such arrearage shall be considered as "past due" or "due and payable" within the meaning of said statutory provisions. This order does not preclude the placing of a lien on real and personal assets or initiating a proceeding for garnishment, attachment of sequestration pursuant to law and the Code of Civil Procedure.

This order of support supercedes any and all prior orders of support under this case number.

☐ Other: _____
_____
_____
_____
_____
_____

☑ This cause is continued for  **status** _____ to  **April 12, 2019** ____, at _____ m.

☐ without further notice  ☐ without further notice to Petitioner  ☐ without further notice to Respondent

       **FAILURE TO APPEAR MAY RESULT IN ENTRY OF A DEFAULT JUDGMENT.**

Docket No. **11 D 6475** _____  IVD-No. _____

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Page 4 of 6

Uniform Order for Support                                    (Rev. 10/02/15) CCDR N107 E

☐ For Expedited Child Support Cases Only:

Notice of Right to Request a Judicial Hearing:  You have a right to request a Judicial Hearing.  If either party
does not agree to the recommended Order or any part thereof, this case will be transferred for an immediate Judicial
Hearing.

The Order may be vacated or amended within thirty (30) days of its entry.  This Order is not valid until signed by a
judge.

So recommended to this Court by the Hearing Officer this _____ day of _____.


_____
Hearing Officer's Signature


_____          _____
Petitioner/Obligee's Signature               Respondent/Obligor's Signature


_____          _____
Petitioner/Obligee's Attorney's Signature       Respondent/Obligor's Attorney's Signature

The support obligation herein required under this order, or any portion of the obligation, which become due and
remains unpaid for thirty (30) days or more shall accrue simple interest at the rate of 9% per anum.


### FAILURE TO OBEY ANY OF THE PROVISIONS OF THIS ORDER MAY RESULT IN A FINDING OF
### CONTEMPT OF COURT.


_____          _____
Date                                         Judge                    Judge's No.

Associate Judge
David E. Haracz

MAR 15 2019

Circuit Court – 1878

Prepared by:

Atty. Code No: 63030

Name: Caesar & Bender, LLP

Atty. for: GAL

Address: 150 N. Michigan Ave., Suite 2800

City/State/Zip Code: Chicago, Illinois 60601

Telephone: (312) 236-1500


Docket No. 11 D 6475          IVD-No. _____

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Page 5 of 6

Uniform Order for Support                                        (Rev. 10/02/15) CCDR N107 F

WIPAPORN TEEKHUNGAM                         Case No. 11 D 6475
_____
Plaintiff/Petitioner
v.                                          County: Cook

KEVIN QUINN                                 Date: March 11, 2019
_____
Defendant/Respondent

## CHILD SUPPORT DATA SHEET

| OBLIGOR INFORMATION | OBLIGEE INFORMATION |
|---|---|
| Last Name: Higinbotham | Last Name: Teekhungam |
| First Name: Harlow          M.I. N | First Name: Wipaporn          M.I. |
| Complete *Residential* Address:<br>1500 N. Lake Shore Drive., Unit 13C, Chicago, IL 60610 | Complete *Residential* Address:<br>24 Carswell Circle, Heyford Park Oxfordshire OX25 5TY |
| Complete Mailing Address: *(If other than above)*: | Complete Mailing Address: *(If other than above)*: |
| Date of Birth: 11/25/1946 | Date of Birth: 02/06/1977 |
| Driver's License No. (Last 4 digits): | Driver's License No. (Last 4 digits): |
| Home Telephone Number: ( 773  ) 391-9500 | Home Telephone Number: (      ) 01869 233835 |
| Employer(s) Name/Company:<br>NERA Economic Consulting | Employer(s) Name/Company: |
| Employer(s) Address:<br>155 N. Wacker Ave. Suite 1450, Chicago, Illinois 60606 | Employer(s) Address: |
| Employer(s) ID Number: | Employer(s) ID Number: |
| Work Telephone Number: (312  ) 573-2800 | Work Telephone Number: (     ) |

### CHILD(REN) INFORMATION

| | Last | First | Middle Initial | Date of Birth |
|---|---|---|---|---|
| 1. | Higinbotham | Harlow | | 11/5/2008 |
| 2. | Higinbotham | Hector | | 11/5/2008 |
| 3. | Higinbotham | William | | 11/5/2008 |
| 4. | | | | |
| 5. | | | | |

(If more space is needed, attach an additional sheet.)

*If Obligor is not a US citizen, so indicate and provide the Obligor's alien registration number, passport number and home country's social security or national health number.

Docket No. 11 D 6475                        JVD-No. _____

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Order

(Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Wipapam Teakhungam ___ et al

v.

Harlow Higinbotham

No. ___ 11 D 6475

(Line 15)

### ORDER

This matter coming before this Honorable Court on Petitioners "emergency motion to release funds for interim 503(g) trust to pay current child support", Respondent's "motion to reconsider" and Respondent's motion to include sealed documents in record on appeal," due notice given and the Court duly advised in the premises, it is HEREBY ORDERED:

1. The Court makes no emergency finding, but orders the funds for April's support (#33,000) to be taken from the 503(g) trust. The Court makes no finding/ruling on any issue of reimbursement or replenishment of the trust at this time Relating to _____

2. The Court denies Respondent's motion to reconsider upon presentment as set forth on the record.

3. Petitioner* is granted 21 days to file her response to Respondent's motion to include sealed document in record on appeal, which is set for hearing on May 23, 2019 @ 11:00 A.M. in 3002. The 5/23/19 9:30 status date is stricken and all matters set for that date are continued to the 11:00 A.M. May 23, 2019 date (for status).

4. With respect to the check issued by Harlow's employer per the withholding order for April the procedure shall be as follows:

   a) The check from SDU in the amount of $6,084.36 shall be sent to Petitioner via overnight mail.

   b) Petitioner shall endorse the check to Michael I. Bender, Attorney at Law.

   c) Michael I. Bender shall deposit the check into his IOLTA account which contains the funds of the existing 503(g) trust.

Attorney No.: 91154

Name: Lake Toback DiDomenico

Atty. for: Respondent - Harlow Higinbotham

Address: 33 N. Dearborn #1720

City/State/Zip: Chicago IL 60602

Telephone: (312) 726-7111

EXHIBIT
D

ENTERED:

Dated: _____

Judge Jeanne Cleveland Bernstein
APR 29 2019
Circuit Court - 1883

Judge _____ Judge's No.

* and the Attorney for the Children

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Case 18-31185   Doc 159-1   Filed 04/09/19   Entered 04/09/19 18:15:07   Desc Exhibit

Cash Flow Projections   Page 1 of 3
PROJECTED STATEMENT OF CASH FLOW

### CASH FLOW FLOW PROJECTIONS AND CLAIMS PAYMENT SCHEDULE

| | Initial | Mar-19 | Apr-19 | May-19 | Jun-19 | Jul-19 | Aug-19 | Sep-19 | Oct-19 | Nov-19 | Dec-19 | Jan-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income:** | | | | | | | | | | | | |
| **Balance in Accounts [a]** | | | | | | | | | | | | |
| DIP Account [b] | | $196,736.43 | | | | | | | | | | |
| 1. Wages and Bonus [net][c] | | | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 | $3,657.62 |
| 2. Retirement Distributions (net) | | | $60,880.61 | $100,000.00 | $100,000.00 | | | | $49,000.00 | $9,400.00 | $9,000.00 | $60,000.00 |
| 3. Pension | | | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 | $3,363.32 |
| 4. Securities Liquidation Proceeds | | | | | | | $200,000.00 | $200,000.00 | $200,000.00 | $200,000.00 | $200,000.00 | $200,000.00 |
| 5. Interest on Accounts[d] | | | | | | | $4,397.53 | $4,437.83 | $4,478.22 | $4,518.70 | $4,559.26 | $4,599.50 |
| 6. Transfer of Funds | | | | $2,000,000.00 | $2,000,000.00 | $2,000,000.00 | | | | | | |
| **Total** | | $196,736.43 | $67,901.55 | $107,020.94 | $107,020.94 | $2,107,020.94 | $207,020.94 | $207,020.94 | $256,020.94 | $215,020.94 | $216,020.94 | $279,189.66 |
| **Disbursements** | | | | | | | | | | | | |
| 1. Household Expenses [e] | | | $30,000.00 | $30,000.00 | $30,000.00 | | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| 2. Current Child Support | | | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 | $20,831.28 |
| 3. Estimated Capital Gains Tax | | | | | | | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 | $50,000.00 |
| Plan Payments | | | | | | | | | | | | |
| Priority Claims - Future Support | | | | | | | | | | | | |
| Priority Claims - Retroactive [f] | | | | | | $2,110,812.99 | | | | | | |
| Interest on Retroactive Claims [g] | | | | | | | $14,949.79 | $14,949.79 | $14,949.79 | $14,949.79 | $14,949.79 | $14,949.79 |
| Class 1 | | | | | | | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 | $100,000.00 |
| Class 2 | | | | | | | | | | | | |
| Class 3 | | | | | | | | | | | | |
| Administrative Claims | | | $193,826.92 | | | $50,000.00 | | | $50,000.00 | | | $50,000.00 |
| **Total Disbursements** | | | $244,658.20 | $50,831.28 | $50,831.28 | $2,211,644.27 | $215,781.07 | $215,781.07 | $265,781.07 | $215,781.07 | $215,781.07 | $265,781.07 |
| **Remaining Balance DIP Acct** | | $196,736.43 | $19,979.78 | $76,169.44 | $132,356.10 | $27,735.77 | $18,975.64 | $10,215.51 | $455.38 | $95.25 | $335.12 | $13,743.71 |
| Balance in Receiver IOLTA Acct | $2,000,000.00 | $2,000,000.00 | $2,000,000.00 | $2,000,000.00 | $2,000,000.00 | | | | | | | |
| Net Balance in NT Securities Acct [h] | $5,973,633.30 | $5,993,545.41 | $6,013,523.90 | $6,033,568.98 | $6,053,680.87 | $6,073,859.81 | $5,994,106.01 | $5,914,086.36 | $5,833,799.98 | $5,753,245.98 | $5,672,423.47 | $5,591,331.55 |
| Balance in Segregated Acct 1 | | | | | | $2,110,812.99 | $2,130,160.31 | $2,149,547.93 | $2,168,975.95 | $2,188,444.44 | $2,207,953.49 | $2,227,503.18 |
| Balance in Segregated Acct 2 | | | | | | $29,168.72 | $58,337.44 | $87,506.16 | $116,674.88 | $145,843.60 | $175,012.32 | $204,181.04 |
| **Balance in all Accounts [a]** | $7,973,633.30 | $8,190,281.84 | $8,033,503.68 | $8,109,738.42 | $8,186,038.97 | $8,241,577.29 | $8,201,579.39 | $8,161,355.96 | $8,119,905.19 | $8,087,629.27 | $8,055,724.39 | $8,036,759.47 |

[a] Excludes balances in exempt retirement accounts and restricted deferred compensation accounts.
[b] March 2019 entry includes Fidelity payment of $132,300.09 received April 5, 2019
[c] Includes child support withholding of $12,168.72 per month
[d] Assumes interest rate segregated account at 2.5% per annum
[e] Estimated based upon average spending per monthly operating reports.
[f] Figure includes accrued interest on Retroactive Support Claim from 11/5/18 - 07/30/19
[g] Statutory interest rate of 9%. Amount to be deposited into Segregated Acct. 1
[h] Balance in NT Securities Acct. less mega margin balance as of 3/31/2019   Assumes annual equity appreciation at 4% net of dividends and margin interest.

Assumes Confirmation Date of July 31, 2019

EXHIBIT A



EXHIBIT E

## CASH FLOW FLOW PROJECTIONS AND CLAIMS PAYMENT SCHEDULE
### PROJECTED STATEMENT OF CASH FLOW

| | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | Oct-20 | Nov-20 | Dec-20 | Jan-21 | Feb-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income:** | | | | | | | | | | | | | |
| **Balance in Accounts [a]** | | | | | | | | | | | | | |
| DIP Account [b] | | | | | | | | | | | | | |
| 1. Wages and Bonus (net)[c] | 15,826.34 | 415,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 |
| 2. Retirement Distributions (net) | 60,000.00 | | | | | | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 3. Pension | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 |
| 4. Securities Liquidation Proceeds | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 |
| 5. Interest on Accounts[d] | 4,640.63 | 4,681.44 | 4,722.34 | 4,763.33 | 4,804.40 | 4,845.55 | 4,886.79 | 4,928.12 | 4,969.53 | 5,011.03 | 5,052.61 | 5,094.28 | 5,136.04 |
| 6. Transfer of Funds | | | | | | | | | | | | | |
| **Total** | 279,189.66 | 619,189.66 | 219,189.66 | 219,189.66 | 219,189.66 | 219,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 |
| | | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | | |
| 1. Household Expenses [e] | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| 2. Current Child Support | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 |
| 3. Estimated Capital Gains Tax | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 4. Plan Payments | | | | | | | | | | | | | |
| Priority Claims - Future Support | | | | | | | | | | | | | |
| Priority Claims - Retroactive [f] | | | | | | | | | | | | | |
| Interest on Retroactive Claims [g] | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 |
| Class 1 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Class 2 | | | | | | 137,687.39 | | | | | | | |
| Class 3 | | | | | | | | | | | | | |
| Administrative Claims | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| | | | | | | | | | | | | | |
| **Total Disbursements** | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 403,468.46 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 |
| | | | | | | | | | | | | | |
| **Remaining Balance DIP Acct** | 27,152.30 | 380,560.89 | 333,969.48 | 287,378.07 | 240,786.66 | 56,527.86 | 59,936.45 | 63,345.04 | 66,753.63 | 70,162.22 | 73,570.81 | 76,979.40 | 80,387.99 |
| | | | | | | | | | | | | | |
| Balance in Receiver IOLTA Acct | | | | | | | | | | | | | |
| Net Balance in NT Securities Acct [h] | 5,509,969.32 | 5,428,335.89 | 5,346,430.34 | 5,264,251.77 | 5,181,799.28 | 5,099,071.94 | 5,016,068.85 | 4,932,789.08 | 4,849,231.71 | 4,765,395.81 | 4,681,280.47 | 4,596,884.73 | 4,512,209.64 |
| Balance in Segregated Acct 1 | 2,247,093.60 | 2,266,724.83 | 2,286,396.97 | 2,306,110.09 | 2,325,864.27 | 2,345,659.61 | 2,365,496.19 | 2,385,374.10 | 2,405,293.42 | 2,425,254.24 | 2,445,256.64 | 2,465,300.71 | 2,485,386.57 |
| Balance in Segregated Acct 2 | 233,349.76 | 282,518.48 | 291,687.20 | 320,855.92 | 350,024.64 | 379,193.36 | 408,362.08 | 437,530.80 | 466,699.52 | 495,868.24 | 525,036.96 | 554,205.68 | 583,374.40 |
| | | | | | | | | | | | | | |
| **Balance in all Accounts [a]** | 8,017,564.98 | 8,338,140.09 | 8,258,483.98 | 8,178,595.85 | 8,098,474.85 | 7,880,452.77 | 7,849,863.57 | 7,819,039.02 | 7,787,978.28 | 7,756,680.51 | 7,725,144.88 | 7,693,370.53 | 7,661,358.60 |

[a] Excludes balances in exempt retirement accounts and restricted deferred compensation accounts.
[b] March 2019 entry includes Fidelity payment of $132,300.09 received April 5, 2019
[c] Includes child support withholding of $11,168.72 per month
[d] Assumes interest rate segregated Account at 2.5% per annum
[e] Estimated based upon average spending per monthly operating reports.
[f] Figure includes accrued interest on Retroactive Support Claim from 11/5/18 - 07/30/19
[g] Statutory interest rate of 9%. Amount to be deposited into Segregated Acct. 1
[h] Balance in NT Securities Acct. less margin balance.   Assumes annual equity appreciation at 4% net of dividends and margin interest.

**CASH FLOW FLOW PROJECTIONS AND CLAIMS PAYMENT SCHEDULE**

**PROJECTED STATEMENT OF CASH FLOW**

| | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | Jan-22 | Feb-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Balance in Accounts [a]** | | | | | | | | | | | | |
| DIP Account [b] | 415,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 |
| **Income:** | | | | | | | | | | | | |
| 1. Wages and Bonus (net)[c] | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 | 15,826.34 |
| 2. Retirement Distributions (net) | | | | | | | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 3. Pension | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 | 3,363.32 |
| 4. Securities Liquidation Proceeds | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 | 200,000.00 |
| 5. Interest on Accounts[d] | 5,177.89 | 5,219.82 | 5,261.84 | 5,303.35 | 5,346.14 | 5,388.43 | 5,430.80 | 5,473.26 | 5,515.81 | 5,558.44 | 5,601.17 | 5,643.98 |
| 6. Transfer of Funds | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Total** | 619,189.66 | 219,189.66 | 219,189.66 | 219,189.66 | 219,189.66 | 219,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 | 269,189.66 |
| | | | | | | | | | | | | |
| **Disbursements** | | | | | | | | | | | | |
| 1. Household Expenses [e] | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 | 30,000.00 |
| 2. Current Child Support | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 | 20,831.28 |
| 3. Estimated Capital Gains Tax | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| 4. Plan Payments | | | | | | | | | | | | |
| Priority Claims - Future Support | | | | | | | | | | | | |
| Priority Claims - Retroactive [f] | | | | | | | | | | | | |
| Interest on Retroactive Claims [g] | | | | | | | | | | | | |
| Class 1 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 | 14,949.79 |
| Class 2 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 |
| Class 3 | | | | | 137,687.39 | | | | | | | |
| Administrative Claims | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 | 50,000.00 |
| | | | | | | | | | | | | |
| **Total Disbursements** | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 403,448.46 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 | 265,781.07 |
| | | | | | | | | | | | | |
| **Remaining Balance DIP Acct** | 433,786.58 | 387,205.17 | 340,613.76 | 294,022.35 | 109,763.55 | 63,172.14 | 66,580.73 | 69,989.32 | 73,397.91 | 76,806.50 | 80,215.09 | 83,623.68 |
| | | | | | | | | | | | | |
| Balance in Receiver IOLTA Acct | | | | | | | | | | | | |
| Net Balance in NT Securities Acct [h] | 4,427,248.37 | 4,342,005.87 | 4,256,479.22 | 4,170,667.49 | 4,084,569.71 | 3,998,184.94 | 3,911,512.23 | 3,824,550.60 | 3,737,299.10 | 3,649,756.77 | 3,561,922.62 | 3,473,795.70 |
| Balance in Segregated Acct 1 | 2,505,514.23 | 2,525,683.84 | 2,545,895.47 | 2,566,149.21 | 2,586,445.14 | 2,606,783.36 | 2,627,163.95 | 2,647,587.00 | 2,668,052.59 | 2,688,560.83 | 2,709,111.78 | 2,729,705.56 |
| Balance in Segregated Acct 2 | 612,543.12 | 641,711.84 | 670,880.56 | 700,049.28 | 729,218.00 | 758,386.72 | 787,555.44 | 816,724.16 | 845,892.88 | 875,061.60 | 904,230.32 | 933,399.04 |
| | | | | | | | | | | | | |
| **Balance in all Accounts [i]** | 7,979,102.30 | 7,896,606.72 | 7,813,869.01 | 7,730,888.32 | 7,509,996.40 | 7,426,527.16 | 7,392,812.35 | 7,358,851.08 | 7,324,642.49 | 7,290,185.69 | 7,255,479.82 | 7,220,523.97 |

[a] Excludes balances in exempt retirement accounts and restricted deferred compensation accounts.

[b] March 2019 entry includes Fidelity payment of $132,300.09 received April 5, 2019

[c] Includes child support withholding of $12,168.72 per month

[d] Assumes interest rate segregated account at 2.5% per annum

[e] Estimated based upon average spending per monthly operating reports.

[f] Figure includes accrued interest on Retroactive Support Claim from 11/5/18 - 07/30/19

[g] Statutory interest rate of 9%. Amount to be deposited into Segregated Acct. 1

[h] Balance in NT Securities Acct less less margin balance    Assumes annual equity appreciation at 4% net of dividends and margin interest.